# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| GLAZ LLC, POSEN INVESTMENTS LP, and KENSOSHA INVESTMENTS LP,<br><br>         Petitioners,<br><br>  – against –<br><br>SYSCO CORPORATION,<br><br>         Respondent. | Index No. _____<br><br>**PETITION TO CONFIRM<br>ARBITRATION AWARD** |

    Petitioners Glaz LLC, Posen Investments LP, and Kenosha Investments LP (collectively "Petitioners") respectfully show and allege:

    1.  Petitioners seek an order from this Court under the Federal Arbitration Act, 9 U.S.C. § 9, confirming the Order on Claimants' Preliminary Injunction Application (the "Preliminary Injunction Award"), dated March 10, 2023, rendered in a New York-seat LCIA Arbitration No: 225609 – *Glaz LLC, Posen Investments LP, and Kenosha Investments LP v. Sysco Corporation*, and entry of judgment thereon pursuant to 9 U.S.C. § 13.

    2.  Petitioner Glaz LLC is a limited liability company duly organized under the laws of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE 19808.

    3.  Petitioner Posen Investments LP is a limited partnership duly organized under the laws of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE 19808.

    4.  Petitioner Kenosha Investments LP is a limited partnership duly organized under the laws of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE 19808.

5. Respondent Sysco Corporation ("Sysco"), one of the world's largest food distributors, is a corporation duly organized and existing under the laws of the State of Delaware, and is headquartered at 1390 Enclave Parkway, Houston, TX 77077.

6. Attached hereto as Exhibit A is a true and correct copy of the Preliminary Injunction Award issued in LCIA Arbitration No: 225609, dated March 10, 2023.

7. The arbitration was conducted pursuant to an arbitration agreement contained in the Second Amended and Restated Capital Provision Agreement ("CPA" or "Agreement") which the parties entered into on December 22, 2020.

8. In a series of transactions beginning in 2019, Petitioners provided Sysco over $140 million in capital in exchange for a portion of the proceeds of Sysco's antitrust claims against major U.S. chicken, beef, pork, and turkey suppliers. During the financial crisis caused by the COVID pandemic, Sysco again turned to Petitioners as a source of much-needed liquidity, using its antitrust claims as collateral. Sysco's antitrust claims are part of sprawling multi-district litigations with hundreds of plaintiffs, dozens of defendants, and related criminal proceedings filed by the U.S. Department of Justice ("DOJ"). These cases have already generated more than $100 million in fines to the DOJ and hundreds of millions of dollars in settlements between several defendants and the class-action and individual plaintiffs.

9. The CPA delineates various rights and obligations for both Petitioners and Sysco pertaining to Petitioners' investment and Sysco's prosecution of the underlying claims. In particular, the CPA left full control of litigation and settlement with Sysco, as is Petitioners' customary practice given the alignment in interest between the parties.

10. Further, Section 5.3(b)(viii) dictates that Sysco "shall not dispose of, transfer, encumber or assign, nor otherwise create, incur, assume, or permit to exist any Adverse Claim

with respect to, all or any portion of such Claim (or any interest therein) or any Proceeds thereof (or any right to such Proceeds)" without the prior written consent of Petitioners. This provision prevents Sysco from assigning away the sole collateral to Petitioners' investment.

11. In violation of this clear prohibition, Sysco began assigning away claims to its customers as early as January 2021 in response to pressure from those customers. In particular, Sysco assigned claims relating to more than ▮▮▮▮ in purchases to ▮▮▮▮▮▮ and nearly ▮▮▮▮ in purchases to ▮▮▮▮▮▮▮▮. Sysco ultimately assigned away nearly 30% of its claims against chicken suppliers, and substantial percentages of its claims against the pork, beef, and turkey suppliers.

12. Sysco did not seek Petitioners' consent to make these assignments and continued doing so even after Petitioners confronted Sysco and made clear that any assignments required their approval. Sysco admitted this breach of the CPA.

13. To settle these flagrant breaches of the CPA, the parties negotiated an Amendment to the CPA, executed on March 31, 2022. Petitioners released all claims against Sysco arising from the unlawful assignments. In exchange, Sysco increased Petitioners' economic stake in the proceeds of the remaining claims. The economic restructuring led to a misalignment of economic incentives whereby Sysco might not be sufficiently incentivized to pursue the antitrust claims zealously. As a result, Petitioners insisted that Sysco assume additional contractual obligations to safeguard the value of the claims. Specifically, Sysco agreed (in § 7(a) and § 7(b)(v) of the Amendment) to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds" and further agreed that it "shall not accept a settlement offer without the [Petitioners']

prior written consent, which shall not be unreasonably withheld." Sysco otherwise retained, and continues to retain, full control of its litigation matters.

14. However, after receiving the release, Sysco threatened to violate Petitioners' contractual rights once again, this time by threatening to execute low-ball settlements with two large defendants without Petitioners' consent. Specifically, Sysco proposed settling its chicken antitrust claims with ███████████████ for ████████ and its chicken, beef, and pork claims against ████████████████████████████████████████████████ ████, for ████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████

15. After Sysco informed Petitioners of these potential settlements, Petitioners objected that these settlement amounts were far too low given the strength of the civil cases against these defendants and other settlements that other food antitrust plaintiffs had achieved. Petitioners informed Sysco that it did not have consent to enter into the agreements and requested additional material information about the proposed settlements.

16. The CPA mandates arbitration of disputes arising out of or relating to the Agreement. Section 29(a) provides:

> Any and all of the following shall (to the exclusion of any other forum except as set forth herein) be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (2014) of the London Court of International Arbitration (the "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference into this clause: any dispute, controversy or claim arising out of or in connection with (i) this Agreement (including this Section 29); (ii) any other Transaction Document; (iii) any relationship or interaction between the Counterparty, on the one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion by any other Person of any right arising out of or in connection with this Agreement (including this Section 29) or any other Transaction Document, including, as to all

such disputes, claims and controversies, any question regarding (x) the existence, arbitrability, validity or termination of this Agreement (including this Section 29) or any other Transaction Document, (y) any relationship or interaction between the above identified parties, or (z) the obligation of any Person to arbitrate any such dispute.

17. Further, Section 29(b) explains that:

[T]he arbitral tribunal (the "Tribunal") shall have the exclusive power to grant any remedy or relief that it deems appropriate, whether provisional or final, including but not limited to emergency relief, injunctive relief and/or any other interim or conservatory measures or other relief permitted by the Rules (collectively, "Conservatory Measures"), and any such measures ordered by the Tribunal shall, to the extent permitted by applicable law, be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction

18. The Agreement also explains that the seat of arbitration shall be New York, New York, and "the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder."

19. When Sysco refused to provide assurance that it would not settle these claims without Petitioners consent, Petitioners filed a Request for Arbitration, an Application for Expedited Formation, and an Application for an Emergency Arbitrator on September 9, 2022. The Request for Arbitration sought a permanent injunction prohibiting Sysco from entering into the agreements without Petitioners' consent.

20. The institution administering the arbitration (the LCIA) granted Petitioners' request for expedited formation and the Tribunal was formed on October 6, 2022. The Panel consisted of J. William Rowley KC, an Independent Arbitrator with Twenty Essex and formerly a Partner and Chairman at McMillan LLP; John J. Kerr Jr., an International Arbitrator with Littleton and formerly a Partner at Simpson Thacher & Bartlett LLP; and Laurence Shore, Of Counsel at BonelliErede-Milan.

21. On December 2, 2022, Sysco provided Petitioners with a near-final settlement agreement with ▮▮▮▮▮▮▮. Sysco also disclosed that it intended to execute the agreement before the end of the year. Petitioners again objected to the terms of the agreement and requested additional information about the proposed settlement. On December 7, 2022, at a case management hearing before the Tribunal, Sysco indicated that unless Petitioners obtained a temporary injunction, it would not voluntarily abstain from executing the proposed settlements without Petitioners' consent.

22. To preserve the subject matter of the dispute and to prevent the irreparable harm that would follow from Sysco executing these agreements, Petitioners moved for a temporary restraining order ("TRO") and preliminary injunction on December 12, 2022, seeking to prohibit Sysco from executing the settlements prior to the Tribunal's determination of the merits of the dispute. The Tribunal granted the TRO on December 14, 2022, after determining that Petitioners "should have the opportunity for their preliminary injunction application to be heard and not mooted." But the Tribunal also provided Sysco with a hearing opportunity on December 22, 2022 to demonstrate "compelling business reasons" why the TRO should be lifted. Sysco declined to do so.

23. The Tribunal then set a briefing schedule on the request for preliminary injunction. The parties submitted hundreds of pages of briefing, witness statements from four fact witnesses, and expert reports from seven experts – including Petitioners' experts Professor Samuel Issacharoff, Professor W. Bradley Wendel, and Professor Bruce A. Green. The Tribunal also granted a document production request by Sysco in connection with Petitioners' opening brief. The Tribunal then held a two-day evidentiary hearing on February 6 and 7, 2023, and

heard live testimony from all four fact witnesses, five of the seven experts, and arguments from counsel.

24. The Tribunal, having duly heard the proofs and the allegations of the parties, issued a 78-page Preliminary Injunction Award on March 10, 2023 on behalf of the majority of the panel. The award prohibits Sysco from entering into the proposed settlements with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ prior to a final determination of the merits of the Arbitration.

25. The Tribunal applied the New York legal standard for preliminary injunctive relief and concluded that Petitioners had adequately demonstrated irreparable harm, a likelihood of success on the merits, and that the balance of the equities favored issuing the injunction.

26. Specifically, the Tribunal explained that absent an injunction, "Sysco will execute the settlement proposals, which would overturn the status quo and permanently deprive [Petitioners] of the ability to seek specific performance of its prior consent contractual right" and that "a settlement that undervalues Sysco's claims would undermine Sysco's settlement position in other cases." Thus, the breach of contract damages that Petitioners could potentially prove at the merits trial "would not constitute adequate compensation for the harm suffered."

27. The Tribunal also concluded that Petitioners had made a sufficient showing that the agreement unambiguously "confers a prior consent or veto right on" Petitioners and "the plain meaning of the text at least indicates that Sysco must first decline to settle if [Petitioners] do[ ] not consent."

28. The Tribunal also preliminarily determined that Petitioners withholding of consent to the settlement was not unreasonable because Petitioners "possessed information indicating that the proposed settlements were low in value compared to other settlements and in view of Sysco's claims against the defendants" and "the ▮▮▮▮▮▮ settlement proposal was below

the floor" that Sysco communicated to Petitioners and Sysco had not "provided a reasonable explanation for going beneath the floor."

29. The Tribunal expressly rejected Sysco's argument that the consent right violated New York public policy. The Tribunal recognized that "[e]very litigant has the autonomy to decide when and whether to settle" and "[e]very litigant also has the autonomy to contract that right away unless there is some legal or ethical barrier to doing so." But there was no such barrier because Petitioners expressly agreed not to interfere with the independent professional judgment of Sysco's counsel and the contractual relationship between Sysco and Petitioners did not disturb the allocation of settlement authority between Sysco and its counsel.

30. Further, the Tribunal explained that "[w]hatever remains of champerty does not appear to pose" a barrier to a claim owner contractually granting a funder a consent right over settlement. The Tribunal agreed that consent-right here would not fall within "the narrow New York law definition of champerty" and there are "no New York court decision[s] holding that a settlement consent right violates New York's champerty statute." Nor had Sysco produced any evidence demonstrating that "settlement control was an animating principle" of New York's champerty statute.

31. Finally, the Tribunal concluded that the balance of the equities favored issuing the preliminary injunction because Petitioners bear the economic risk of the settlements and the cost of continued litigation. Additionally, The Tribunal explained that "as a matter of equity, Sysco's continuing the litigation to maximize proceeds that [Petitioners] largely will receive is consistent with decisions that Sysco previously made and an agreement (the March 2022 Amendment) it entered into as a consequence of those decisions."

32. The Preliminary Injunction Award was delivered to Petitioners on March 10, 2023.

33. To date, Sysco has previously refused to provide assurance that it will comply with the Tribunal's awards absent judicial confirmation. Indeed, on January 4, 2023, after the Tribunal issued the TRO, Sysco stated that "unless and until [Petitioners] elect[] to seek [judicial] confirmation, Sysco's compliance [with the TRO] is purely voluntary and Sysco reserves the right to take whatever future actions may be necessary or appropriate under the circumstances." Such refusal has necessitated this petition.

34. This proceeding has been commenced within one year of the delivery of the Preliminary Injunction Award and the award has not been vacated or modified in any way.[1]

35. No previous application has been made for the relief requested herein.

WHEREFORE, Petitioners respectfully request that this Court:

A. Issue an order pursuant to 9 U.S.C. § 9 confirming the Preliminary Injunction Award;

B. Enter judgment thereon pursuant to 9 U.S.C. § 13.

C. And award Petitioners any such further relief as the Court deems just and proper.

---

[1] On March 8, 2023, Sysco filed a petition to vacate the TRO, Case No. 1:23-cv-01451 (N.D. Ill.), but the Tribunal's Award vacated the TRO, rendering Sysco's petition moot.

Dated: New York, New York
March 10, 2023

Respectfully submitted,

/s/ Thomas E.L. Dewey

Thomas E. L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 3rd Avenue
New York, NY 10017
(212) 943-9000 (Telephone)
(212) 943-4325 (Facsimile)
tdewey@dpklaw.com

Derek T. Ho
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

Elizabeth Snodgrass
THREE CROWNS LLP
Washington Harbour
3000 K Street, N.W., Suite 101
Washington, D.C. 20007
(202) 540-9492 (Telephone)
(202) 350-9439 (Facsimile)
liz.snodgrass@threecrownsllp.com

*Attorneys for Petitioners Glaz LLC, Posen Investments LP, and Kenosha Investments LP*

TO: Jeffrey A. Rosenthal, Esq.
Lina Bensman
CLEARY GOTTLIEB STEEN &
  HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000 (Telephone)
(212) 225-3999 (Facsimile)
jrosenthal@cgsh.com

lbensman@cgsh.com

Christopher P. Moore
CLEARY GOTTLIEB STEEN &
   HAMILTON LLP
2 London Wall Place
London EC2Y 5AU
44 207 614 2200 (Telephone)
cmoore@cgsh.com

*Attorneys for Respondent Sysco Corporation*