# Exhibit C



**null / ALL**
**Transmittal Number: 26558484**
**Date Processed: 03/15/2023**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Walker Essary<br>Sysco Corporation<br>1370 Enclave Pkwy<br>Bldg A<br>Houston, TX 77077-2025 |
| **Electronic copy provided to:** | Barrett Flynn<br>Dawn Becker<br>Eve McFadden<br>Brenda Becerra |

| | |
|---|---|
| **Entity:** | Sysco Corporation<br>Entity ID Number  3338951 |
| **Entity Served:** | Sysco Corporation |
| **Title of Action:** | Glaz LLC vs. Sysco Corporation |
| **Matter Name/ID:** | Glaz LLC vs. Sysco Corporation (13784424) |
| **Document(s) Type:** | Notice and Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | New York County Supreme Court, NY |
| **Case/Reference No:** | 225609 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 03/13/2023 |
| **Answer or Appearance Due:** | 03/27/2023 |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Dewey Pegno & Kramarsky LLP<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 03/13/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

GLAZ LLC, POSEN INVESTMENTS LP, and
KENSOSHA INVESTMENTS LP,

Petitioners,

– against –

SYSCO CORPORATION,

Respondent.

Index No. _____

**PETITION TO CONFIRM
ARBITRATION AWARD**

---

Petitioners Glaz LLC, Posen Investments LP, and Kenosha Investments LP (collectively

"Petitioners") respectfully show and allege:

1.      Petitioners seek an order from this Court under the Federal Arbitration Act, 9

U.S.C. § 9, confirming the Order on Claimants' Preliminary Injunction Application (the

"Preliminary Injunction Award"), dated March 10, 2023, rendered in a New York-seat LCIA

Arbitration No: 225609 – *Glaz LLC, Posen Investments LP, and Kenosha Investments LP v.*

*Sysco Corporation*, and entry of judgment thereon pursuant to 9 U.S.C. § 13.

2.      Petitioner Glaz LLC is a limited liability company duly organized under the laws

of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE 19808.

3.      Petitioner Posen Investments LP is a limited partnership duly organized under the

laws of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE 19808.

4.      Petitioner Kenosha Investments LP is a limited partnership duly organized under

the laws of Delaware, and maintains an address at 251 Little Falls Drive, Wilmington, DE

19808.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 4 of 165

5.      Respondent Sysco Corporation ("Sysco"), one of the world's largest food distributors, is a corporation duly organized and existing under the laws of the State of Delaware, and is headquartered at 1390 Enclave Parkway, Houston, TX 77077.

6.      Attached hereto as Exhibit A is a true and correct copy of the Preliminary Injunction Award issued in LCIA Arbitration No: 225609, dated March 10, 2023.

7.      The arbitration was conducted pursuant to an arbitration agreement contained in the Second Amended and Restated Capital Provision Agreement ("CPA" or "Agreement") which the parties entered into on December 22, 2020.

8.      In a series of transactions beginning in 2019, Petitioners provided Sysco over $140 million in capital in exchange for a portion of the proceeds of Sysco's antitrust claims against major U.S. chicken, beef, pork, and turkey suppliers.  During the financial crisis caused by the COVID pandemic, Sysco again turned to Petitioners as a source of much-needed liquidity, using its antitrust claims as collateral.  Sysco's antitrust claims are part of sprawling multi-district litigations with hundreds of plaintiffs, dozens of defendants, and related criminal proceedings filed by the U.S. Department of Justice ("DOJ").  These cases have already generated more than $100 million in fines to the DOJ and hundreds of millions of dollars in settlements between several defendants and the class-action and individual plaintiffs.

9.      The CPA delineates various rights and obligations for both Petitioners and Sysco pertaining to Petitioners' investment and Sysco's prosecution of the underlying claims.  In particular, the CPA left full control of litigation and settlement with Sysco, as is Petitioners' customary practice given the alignment in interest between the parties.

10.     Further, Section 5.3(b)(viii) dictates that Sysco "shall not dispose of, transfer, encumber or assign, nor otherwise create, incur, assume, or permit to exist any Adverse Claim

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 5 of 165

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/13/2023

with respect to, all or any portion of such Claim (or any interest therein) or any Proceeds thereof (or any right to such Proceeds)" without the prior written consent of Petitioners. This provision prevents Sysco from assigning away the sole collateral to Petitioners' investment.

11.     In violation of this clear prohibition, Sysco began assigning away claims to its customers as early as January 2021 in response to pressure from those customers. In particular, Sysco assigned claims relating to more than ██████ in purchases to ██████████ and nearly ████████ in purchases to ████████████. Sysco ultimately assigned away nearly 30% of its claims against chicken suppliers, and substantial percentages of its claims against the pork, beef, and turkey suppliers.

12.     Sysco did not seek Petitioners' consent to make these assignments and continued doing so even after Petitioners confronted Sysco and made clear that any assignments required their approval. Sysco admitted this breach of the CPA.

13.     To settle these flagrant breaches of the CPA, the parties negotiated an Amendment to the CPA, executed on March 31, 2022. Petitioners released all claims against Sysco arising from the unlawful assignments. In exchange, Sysco increased Petitioners' economic stake in the proceeds of the remaining claims. The economic restructuring led to a misalignment of economic incentives whereby Sysco might not be sufficiently incentivized to pursue the antitrust claims zealously. As a result, Petitioners insisted that Sysco assume additional contractual obligations to safeguard the value of the claims. Specifically, Sysco agreed (in § 7(a) and § 7(b)(v) of the Amendment) to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds" and further agreed that it "shall not accept a settlement offer without the [Petitioners']

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

3 of 11

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 6 of 165

NYSCEF DOC. NO. 1                                                        RECEIVED NYSCEF: 03/13/2023

prior written consent, which shall not be unreasonably withheld." Sysco otherwise retained, and continues to retain, full control of its litigation matters.

14.     However, after receiving the release, Sysco threatened to violate Petitioners' contractual rights once again, this time by threatening to execute low-ball settlements with two large defendants without Petitioners' consent. Specifically, Sysco proposed settling its chicken antitrust claims with ███████████████ for ██████ and its chicken, beef, and pork claims against ███████████████████████████████ ████, for ██████████ ███████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████

15.     After Sysco informed Petitioners of these potential settlements, Petitioners objected that these settlement amounts were far too low given the strength of the civil cases against these defendants and other settlements that other food antitrust plaintiffs had achieved. Petitioners informed Sysco that it did not have consent to enter into the agreements and requested additional material information about the proposed settlements.

16.     The CPA mandates arbitration of disputes arising out of or relating to the Agreement. Section 29(a) provides:

> Any and all of the following shall (to the exclusion of any other forum except as set forth herein) be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (2014) of the London Court of International Arbitration (the "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference into this clause: any dispute, controversy or claim arising out of or in connection with (i) this Agreement (including this Section 29); (ii) any other Transaction Document; (iii) any relationship or interaction between the Counterparty, on the one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion by any other Person of any right arising out of or in connection with this Agreement (including this Section 29) or any other Transaction Document, including, as to all

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 7 of 165

such disputes, claims and controversies, any question regarding (x) the existence, arbitrability, validity or termination of this Agreement (including this Section 29) or any other Transaction Document, (y) any relationship or interaction between the above identified parties, or (z) the obligation of any Person to arbitrate any such dispute.

17.    Further, Section 29(b) explains that:

[T]he arbitral tribunal (the "Tribunal") shall have the exclusive power to grant any remedy or relief that it deems appropriate, whether provisional or final, including but not limited to emergency relief, injunctive relief and/or any other interim or conservatory measures or other relief permitted by the Rules (collectively, "Conservatory Measures"), and any such measures ordered by the Tribunal shall, to the extent permitted by applicable law, be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction

18.    The Agreement also explains that the seat of arbitration shall be New York, New York, and "the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder."

19.    When Sysco refused to provide assurance that it would not settle these claims without Petitioners consent, Petitioners filed a Request for Arbitration, an Application for Expedited Formation, and an Application for an Emergency Arbitrator on September 9, 2022. The Request for Arbitration sought a permanent injunction prohibiting Sysco from entering into the agreements without Petitioners' consent.

20.    The institution administering the arbitration (the LCIA) granted Petitioners' request for expedited formation and the Tribunal was formed on October 6, 2022. The Panel consisted of J. William Rowley KC, an Independent Arbitrator with Twenty Essex and formerly a Partner and Chairman at McMillan LLP; John J. Kerr Jr., an International Arbitrator with Littleton and formerly a Partner at Simpson Thacher & Bartlett LLP; and Laurence Shore, Of Counsel at BonelliErede-Milan.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 8 of 165

21.     On December 2, 2022, Sysco provided Petitioners with a near-final settlement agreement with ▇▇▇▇▇▇. Sysco also disclosed that it intended to execute the agreement before the end of the year. Petitioners again objected to the terms of the agreement and requested additional information about the proposed settlement. On December 7, 2022, at a case management hearing before the Tribunal, Sysco indicated that unless Petitioners obtained a temporary injunction, it would not voluntarily abstain from executing the proposed settlements without Petitioners' consent.

22.     To preserve the subject matter of the dispute and to prevent the irreparable harm that would follow from Sysco executing these agreements, Petitioners moved for a temporary restraining order ("TRO") and preliminary injunction on December 12, 2022, seeking to prohibit Sysco from executing the settlements prior to the Tribunal's determination of the merits of the dispute. The Tribunal granted the TRO on December 14, 2022, after determining that Petitioners "should have the opportunity for their preliminary injunction application to be heard and not mooted." But the Tribunal also provided Sysco with a hearing opportunity on December 22, 2022 to demonstrate "compelling business reasons" why the TRO should be lifted. Sysco declined to do so.

23.     The Tribunal then set a briefing schedule on the request for preliminary injunction. The parties submitted hundreds of pages of briefing, witness statements from four fact witnesses, and expert reports from seven experts – including Petitioners' experts Professor Samuel Issacharoff, Professor W. Bradley Wendel, and Professor Bruce A. Green. The Tribunal also granted a document production request by Sysco in connection with Petitioners' opening brief. The Tribunal then held a two-day evidentiary hearing on February 6 and 7, 2023, and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 1                                                                          RECEIVED NYSCEF: 03/13/2023

heard live testimony from all four fact witnesses, five of the seven experts, and arguments from counsel.

24.     The Tribunal, having duly heard the proofs and the allegations of the parties, issued a 78-page Preliminary Injunction Award on March 10, 2023 on behalf of the majority of the panel.  The award prohibits Sysco from entering into the proposed settlements with ███████ ████████████████████ prior to a final determination of the merits of the Arbitration.

25.     The Tribunal applied the New York legal standard for preliminary injunctive relief and concluded that Petitioners had adequately demonstrated irreparable harm, a likelihood of success on the merits, and that the balance of the equities favored issuing the injunction.

26.     Specifically, the Tribunal explained that absent an injunction, "Sysco will execute the settlement proposals, which would overturn the status quo and permanently deprive [Petitioners] of the ability to seek specific performance of its prior consent contractual right" and that "a settlement that undervalues Sysco's claims would undermine Sysco's settlement position in other cases."  Thus, the breach of contract damages that Petitioners could potentially prove at the merits trial "would not constitute adequate compensation for the harm suffered."

27.     The Tribunal also concluded that Petitioners had made a sufficient showing that the agreement unambiguously "confers a prior consent or veto right on" Petitioners and "the plain meaning of the text at least indicates that Sysco must first decline to settle if [Petitioners] do[] not consent."

28.     The Tribunal also preliminarily determined that Petitioners withholding of consent to the settlement was not unreasonable because Petitioners "possessed information indicating that the proposed settlements were low in value compared to other settlements and in view of Sysco's claims against the defendants" and "the ██████ settlement proposal was below

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been       7 of 11
accepted for filing by the County Clerk.

the floor" that Sysco communicated to Petitioners and Sysco had not "provided a reasonable explanation for going beneath the floor."

29.     The Tribunal expressly rejected Sysco's argument that the consent right violated New York public policy.  The Tribunal recognized that "[e]very litigant has the autonomy to decide when and whether to settle" and "[e]very litigant also has the autonomy to contract that right away unless there is some legal or ethical barrier to doing so."  But there was no such barrier because Petitioners expressly agreed not to interfere with the independent professional judgment of Sysco's counsel and the contractual relationship between Sysco and Petitioners did not disturb the allocation of settlement authority between Sysco and its counsel.

30.     Further, the Tribunal explained that "[w]hatever remains of champerty does not appear to pose" a barrier to a claim owner contractually granting a funder a consent right over settlement.  The Tribunal agreed that consent-right here would not fall within "the narrow New York law definition of champerty" and there are "no New York court decision[s] holding that a settlement consent right violates New York's champerty statute."  Nor had Sysco produced any evidence demonstrating that "settlement control was an animating principle" of New York's champerty statute.

31.     Finally, the Tribunal concluded that the balance of the equities favored issuing the preliminary injunction because Petitioners bear the economic risk of the settlements and the cost of continued litigation.  Additionally, The Tribunal explained that "as a matter of equity, Sysco's continuing the litigation to maximize proceeds that [Petitioners] largely will receive is consistent with decisions that Sysco previously made and an agreement (the March 2022 Amendment) it entered into as a consequence of those decisions."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been       8 of 11
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 11 of 165

32. The Preliminary Injunction Award was delivered to Petitioners on March 10, 2023.

33. To date, Sysco has previously refused to provide assurance that it will comply with the Tribunal's awards absent judicial confirmation. Indeed, on January 4, 2023, after the Tribunal issued the TRO, Sysco stated that "unless and until [Petitioners] elect[] to seek [judicial] confirmation, Sysco's compliance [with the TRO] is purely voluntary and Sysco reserves the right to take whatever future actions may be necessary or appropriate under the circumstances." Such refusal has necessitated this petition.

34. This proceeding has been commenced within one year of the delivery of the Preliminary Injunction Award and the award has not been vacated or modified in any way.[1]

35. No previous application has been made for the relief requested herein.

WHEREFORE, Petitioners respectfully request that this Court:

A. Issue an order pursuant to 9 U.S.C. § 9 confirming the Preliminary Injunction Award;

B. Enter judgment thereon pursuant to 9 U.S.C. § 13.

C. And award Petitioners any such further relief as the Court deems just and proper.

---

[1] On March 8, 2023, Sysco filed a petition to vacate the TRO, Case No. 1:23-cv-01451 (N.D. Ill.), but the Tribunal's Award vacated the TRO, rendering Sysco's petition moot.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 12 of 165

Dated:  New York, New York
        March 10, 2023

Respectfully submitted,

/s/ Thomas E.L. Dewey

Thomas E. L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 3rd Avenue
New York, NY 10017
(212) 943-9000 (Telephone)
(212) 943-4325 (Facsimile)
tdewey@dpklaw.com

Derek T. Ho
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

Elizabeth Snodgrass
THREE CROWNS LLP
Washington Harbour
3000 K Street, N.W., Suite 101
Washington, D.C. 20007
(202) 540-9492 (Telephone)
(202) 350-9439 (Facsimile)
liz.snodgrass@threecrownsllp.com

*Attorneys for Petitioners Glaz LLC, Posen
Investments LP, and Kenosha Investments LP*

TO:    Jeffrey A. Rosenthal, Esq.
       Lina Bensman
       CLEARY GOTTLIEB STEEN &
           HAMILTON LLP
       One Liberty Plaza
       New York, NY 10006
       (212) 225-2000 (Telephone)
       (212) 225-3999 (Facsimile)
       jrosenthal@cgsh.com

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 13 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/13/2023

lbensman@cgsh.com

Christopher P. Moore
CLEARY GOTTLIEB STEEN &
   HAMILTON LLP
2 London Wall Place
London EC2Y 5AU
44 207 614 2200 (Telephone)
cmoore@cgsh.com

*Attorneys for Respondent Sysco Corporation*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

GLAZ LLC, POSEN INVESTMENTS LP, and
KENSOSHA INVESTMENTS LP,

Petitioners,

– against –

SYSCO CORPORATION,

Respondent.

---

Index No. _____

**NOTICE OF PETITION TO
CONFIRM ARBITRATION
AWARD**

PLEASE TAKE NOTICE THAT upon the annexed Petition; the accompanying Affirmation of Derek T. Ho dated March 10, 2023 and all exhibits thereto; the award of the arbitration tribunal in the arbitration proceeding entitled *Glaz LLC, Posen Investments LP, and Kenosha Investments LP v. Sysco Corporation*, LCIA Arbitration No: 225609, London Court of International Arbitration, dated March 10, 2023 and duly delivered to Petitioners that same day; the Petitioners' memorandum of law; and upon all the papers herein, the undersigned will move, at the New York County Courthouse, 60 Centre Street, New York, New York, the Motion Support Office, Room 130, on the 27th day of March, 2023, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order:

1.  Confirming the award of the arbitration tribunal, pursuant to the Federal Arbitration Act, 9 U.S.C § 9, and CPLR 7510 upon the grounds that the situs of the arbitration was New York, New York, and said award was delivered to Petitioners less than one year before this petition and has not been vacated or modified;

2.  Directing judgment to be entered on said award pursuant to 9 U.S.C. § 13 and CPLR 7514; and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 15 of 165

NYSCEF DOC. NO. 2

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

3.      For reasonable attorneys' fees and the costs associated with this petition, and for any other and further relief as the Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that an answer and supporting affidavits, if any, shall be served in accordance with CPLR 2214(b).

PLEASE TAKE FURTHER NOTICE that reply papers, if any, shall be served in accordance with CPLR 2214(b).

Dated:  New York, New York
        March 10, 2023

Respectfully submitted,

*/s/ Thomas E.L. Dewey*

Thomas E. L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 3rd Avenue
New York, NY 10017
(212) 943-9000 (Telephone)
(212) 943-4325 (Facsimile)
tdewey@dpklaw.com

Derek T. Ho
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

Elizabeth Snodgrass
THREE CROWNS LLP
Washington Harbour
3000 K Street, N.W., Suite 101
Washington, D.C. 20007
(202) 540-9492 (Telephone)
(202) 350-9439 (Facsimile)
liz.snodgrass@threecrownsllp.com

*Attorneys for Petitioners Glaz LLC, Posen
Investments LP, and Kenosha Investments LP*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 2                                                                 RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 16 of 165

TO:     Jeffrey A. Rosenthal, Esq.
        Lina Bensman, Esq.
        CLEARY GOTTLIEB STEEN &
            HAMILTON LLP
        One Liberty Plaza
        New York, NY 10006
        (212) 225-2000 (Telephone)
        (212) 225-3999 (Facsimile)
        jrosenthal@cgsh.com
        lbensman@cgsh.com

        Christopher P. Moore, Esq.
        CLEARY GOTTLIEB STEEN &
            HAMILTON LLP
        2 London Wall Place
        London EC2Y 5AU
        44 207 614 2200 (Telephone)
        cmoore@cgsh.com

        *Attorneys for Respondent Sysco Corporation*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)　　　INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 3　　　　　　　　　　　　　　　　　　　　　　　　RECEIVED NYSCEF: 03/10/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

GLAZ LLC, POSEN INVESTMENTS LP, and
KENSOSHA INVESTMENTS LP,

　　　　　　　　　　　　Petitioners,

　　　　　– against –

SYSCO CORPORATION,

　　　　　　　　　　　　Respondent.

Index No. _____

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO CONFIRM ARBITRATION AWARD

Thomas E. L. Dewey
DEWEY PEGNO & KRAMARSKY LLP
777 3rd Avenue
New York, NY 10017
(212) 943-9000 (Telephone)
(212) 943-4325 (Facsimile)
tdewey@dpklaw.com

Derek T. Ho
KELLOGG, HANSEN, TODD,
　FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

Elizabeth Snodgrass
THREE CROWNS LLP
Washington Harbour
3000 K Street, N.W., Suite 101
Washington, D.C. 20007
(202) 540-9492 (Telephone)
(202) 350-9439 (Facsimile)
liz.snodgrass@threecrownsllp.com

*Attorneys for Petitioners Glaz LLC, Posen
Investments LP, and Kensosha Investments LP*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 18 of 165

Petitioners Glaz LLC, Posen Investments LP, and Kenosha Investments LP (collectively "Petitioners") respectfully submit this memorandum of law in support of their petition, pursuant to 9 U.S.C. § 9, to confirm an arbitration award against Respondent Sysco Corporation ("Sysco").

## PRELIMINARY STATEMENT

Petitioners seek confirmation of an arbitral award granting a preliminary injunction (the "Preliminary Injunction Award") to prevent Sysco, during the pendency of the arbitration, from settling certain federal antitrust cases that Sysco has filed against major U.S. chicken, beef, and pork suppliers. *See Glaz LLC, Posen Investments LP, and Kenosha Investments LP v. Sysco Corporation*, Case No. 225609 ("the Arbitration"). Since 2019, Petitioners have provided Sysco over $140 million in capital in exchange for a portion of the proceeds of Sysco's antitrust claims. The parties' relationship is governed by the Second Amended and Restated Capital Provision Agreement ("CPA"). As early as January 2021, Sysco breached the CPA by assigning away several billion dollars in food antitrust claims. To settle Sysco's breach, the parties negotiated an Amendment to the CPA. Petitioners released all claims for breach of contract, and Sysco agreed: (1) to increase Petitioners' economic stake in the remaining claims; and (2) not to settle those claims without Petitioners' prior consent, which was not to be unreasonably withheld.

In September 2022, Sysco informed Petitioners that it planned to settle its food antitrust cases against ██████████████████████████████████████████████████ ████████████ The proposed settlements were substantially lower than what other antitrust plaintiffs had achieved in their cases, including against ███████████. Accordingly, Petitioners withheld their consent. Sysco threatened to settle nonetheless. Because settling without Petitioners' consent would have breached the CPA and threatened irreparable harm, Petitioners immediately initiated the Arbitration to enjoin the proposed settlements. The CPA requires the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 19 of 165

parties to arbitrate any dispute arising out of the agreement, and it authorizes the Tribunal to

issue injunctive relief, including on an interim basis. The CPA expressly provides that interim

injunctive relief constitutes a "final award" enforceable in court.

While the arbitration was pending, Sysco disclosed a near-final agreement with █████

████ that it intended to execute before year-end. In December 2022, Petitioners moved for a

temporary restraining order ("TRO") and a preliminary injunction. The Tribunal – comprised of

three experienced international arbitrators, including one arbitrator appointed by Sysco itself –

promptly and unanimously granted the TRO. Then, after extensive briefing, discovery by Sysco,

and two days of evidentiary hearings in early February 2023, the Tribunal (by a majority) issued

the Preliminary Injunction Award today, March 10, 2023. The Award prohibits Sysco from

entering into the disputed settlements prior to a final determination of the merits. This Court

should promptly confirm that Award, which easily satisfies the highly deferential standard of

review of arbitral awards under the Federal Arbitration Act.

## STATEMENT OF FACTS

Respondent Sysco Corporation is one of the largest food distributors in the world.

(Affirmation of Derek T. Ho (Mar. 10, 2023) ("Ho Aff."), ¶ 3). In 2016, serious allegations

emerged that producers of various animal proteins were engaged in a multi-year price-fixing

scheme. Those allegations resulted in regulatory investigations and criminal prosecutions by the

U.S. Department of Justice ("DOJ") – ████████████████████████████████

██████ (Ho. Aff. ¶¶ 3, 13). The purchasers and consumers of these proteins, including Sysco,

also initiated litigation against numerous U.S. animal protein producers, including █████████

██████████. These cases have been consolidated into four separate federal MDLs, one for

each of the industries involved: the Chicken, Beef, Pork, and Turkey Cases. As one of the

largest purchasers of these proteins, Sysco has substantial antitrust claims against the producers.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.                                                                3 of 13

These cases have already generated more than $100 million in fines to the DOJ and hundreds of millions of dollars in settlements between several defendants and the class-action and individual plaintiffs. (Ho. Aff. ¶ 3).

Sysco used its valuable antitrust claims as collateral to secure $140 million in corporate financing from Petitioners in a series of transactions beginning in 2019. Sysco again sought financing to bolster its liquidity during the COVID pandemic financial crisis. *Id.* In connection with Petitioners' provision of an additional $60 million in capital to Sysco, the parties entered into the operative agreement – the CPA – on December 22, 2020. (Ho Aff. ¶ 4).

The CPA mandates arbitration of disputes arising out of or relating to the Agreement. Section 29(a) provides:

> Any and all of the following shall (to the exclusion of any other forum except as set forth herein) be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (2014) of the London Court of International Arbitration (the "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference into this clause: any dispute, controversy or claim arising out of or in connection with (i) this Agreement (including this Section 29); (ii) any other Transaction Document; (iii) any relationship or interaction between the Counterparty, on the one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion by any other Person of any right arising out of or in connection with this Agreement (including this Section 29) or any other Transaction Document, including, as to all such disputes, claims and controversies, any question regarding (x) the existence, arbitrability, validity or termination of this Agreement (including this Section 29) or any other Transaction Document, (y) any relationship or interaction between the above identified parties, or (z) the obligation of any Person to arbitrate any such dispute.

(Ho Aff. ¶ 5; Exhibit A at 3-4).

The CPA expressly grants an arbitral tribunal the power to issue a preliminary injunction the tribunal determines such relief is appropriate by reference to the applicable arbitration rules:

> [T]he arbitral tribunal (the "Tribunal") shall have the exclusive power to grant any remedy or relief that it deems appropriate, whether provisional or final, including but not limited to emergency relief, injunctive relief and/or any other interim or conservatory measures or other relief permitted by the Rules (collectively, "Conservatory Measures"), and any such measures ordered by the Tribunal shall,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 21 of 165

to the extent permitted by applicable law, be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction

(Ho Aff. ¶ 6; Exhibit A at 4). The applicable LCIA Arbitration Rules 2014 provide that the arbitral tribunal shall have the power "to order on a provisional basis, subject to a final decision in an award, any relief which the Arbitral Tribunal would have power to grant in an award." (Ho Aff. ¶ 7; Exhibit B, Art. 25.1(iii)).

The parties also agreed that the seat of arbitration shall be New York, New York, and that "the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder." (Ho Aff. ¶ 7; Exhibit A at 5). The CPA is generally governed by New York law. (Ho Aff. ¶ 7; Exhibit A at 6-7).

The CPA further delineates various rights and obligations for the parties pertaining to Petitioners' investment and Sysco's prosecution of the underlying claims. In particular, the CPA left full control of the litigation and settlement of claims with Sysco, as is Petitioners' customary practice given the typical alignment of interest between the parties. (Ho Aff. ¶ 8). Further, the CPA prevents Sysco from assigning away any of the claims without Petitioners' prior consent. (Ho Aff. ¶ 9; Exhibit A at 76)

Notwithstanding the clear language of the agreement, and in response to pressure from its customers, Sysco began assigning away its claims to those customers as early as January 2021. (Ho Aff. ¶ 10). In particular, Sysco assigned claims relating to more than ▮▮▮▮▮ in purchases to ▮▮▮▮▮ and nearly ▮▮▮▮▮ in purchases to ▮▮▮▮▮. *Id.* Sysco ultimately assigned away nearly 30% of its claims against chicken suppliers, and a substantial percentage of its claims against pork, beef, and turkey suppliers. *Id.* Sysco did not seek Petitioners' consent prior to making these assignments and continued doing so even after

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

5 of 13

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 3

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 22 of 165

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 03/10/2023

Petitioners confronted Sysco and explained that it could not make assignments without Petitioners' approval. (Ho Aff. ¶ 11). Sysco admitted to this breach of the CPA. *Id.*

Rather than pursue arbitration for Sysco's flagrant breaches of the Agreement, the parties negotiated an Amendment to the CPA. (Ho Aff. ¶ 12). In exchange for Petitioners releasing all claims arising from the assignments, Sysco agreed to give Petitioners an increased economic stake in the proceeds of the remaining claims. (Ho Aff. ¶ 12). This economic restructuring led to a misalignment of economic incentives whereby Sysco might not be sufficiently incentivized to zealously pursue the antitrust claims. (Ho Aff. ¶ 12). As a result, Petitioners insisted that Sysco assume additional contractual obligations to safeguard the value of the claims: Sysco agreed to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds," *and* it agreed that it "shall not accept a settlement offer without the [Petitioners'] prior written consent, which shall not be unreasonably withheld." (Ho Aff. ¶ 12; Exhibit A at 64). Sysco otherwise retained, and continues to retain, full control of the litigation. (Ho Aff. ¶ 12).

In September 2022, Sysco again threatened to violate Petitioners' contractual rights and diminish the collateral, this time by threatening to execute undervalued settlements with ████████████████████ in response to pressure from those suppliers. (Ho Aff. ¶ 13). Sysco proposed settling its chicken claims against ██████ for ████████ and its chicken, beef, and pork claims against ████████████ for ████████. *Id.* ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 3                                                      RECEIVED NYSCEF: 03/10/2023

Petitioners explained that these settlements substantially undervalued Sysco's claims and did not accurately reflect the strength of the cases – the proposals were several multiples lower than other plaintiffs' settlements with ███████. (Ho Aff. ¶ 14). Petitioners informed Sysco that it did not have consent to enter into the settlements and requested additional material information about the proposed settlements. *Id.* Sysco refused to provide assurance that it would not execute these settlements without Petitioners' consent. (Ho Aff. ¶ 15). Petitioners then initiated the Arbitration on September 9, 2022, and sought a permanent injunction prohibiting Sysco from entering into the agreements without Petitioners' consent. *Id.*

On December 2, 2022, while the Arbitration was still pending, Sysco disclosed, for the first time, a near-final settlement agreement with ███████. (Ho Aff. ¶ 17). On December 7, 2022, at a procedural hearing before the Tribunal, Sysco indicated that unless Petitioners obtained an injunction, it intended to execute the settlement with ███████ by the end of the year. *Id.* Petitioners moved for a TRO and a preliminary injunction on December 12, 2022, to prevent Sysco from mooting the dispute. (Ho Aff. ¶ 18). The Tribunal entered the TRO and Sysco declined an opportunity to present reasons for it to be lifted. (Ho Aff. ¶ 18; Exhibit D). The Tribunal then set a briefing and hearing schedule for Petitioners' application for a preliminary injunction. After hundreds of pages of briefing, the Tribunal held two days of evidentiary hearings on February 6 and 7, 2023. (Ho Aff. ¶ 19).

A majority of the Tribunal, comprised of experienced commercial arbitrators, issued a 78-page decision on the application for a preliminary injunction on March 10, 2023, which was delivered to Petitioners that same day. (Ho Aff. ¶ 20; Exhibit A). The Preliminary Injunction Award prohibits Sysco from entering into the proposed settlements without Petitioners' consent prior to a final determination of the merits of the parties' dispute. *Id.* In particular, the Tribunal

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 24 of 165

NYSCEF DOC. NO. 3

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

applied New York law and found that, absent a preliminary injunction, Petitioners would be irreparably harmed. The Tribunal concluded that permitting Sysco to proceed to settlement not only would deprive Petitioners of their prior-consent right, but also would have a "ripple effect" on Sysco's settlements with other defendants. Ho Aff. ¶ 22. As the Tribunal correctly found, "a settlement that undervalues Sysco's claims would undermine Sysco's settlement position in other cases." *Id.*

The Tribunal also found that Petitioners had demonstrated a likelihood of success on the merits. The Tribunal concluded that Petitioners had made a sufficient showing that the CPA unambiguously "confers a prior consent or veto right on" Petitioners, and "the plain meaning of the text at least indicates that Sysco must first decline to settle if [Petitioners do[] not consent." *Id.* ¶ 23

The Tribunal also preliminarily determined "that [Petitioners'] withholding of consent to Sysco's settlement proposals was not unreasonable." *Id.* ¶ 24. The Tribunal rejected Sysco's argument that the CPA, if construed to provide a veto right, violates New York public policy. As the Tribunal recognized, the foundational point is that "[e]very litigant has the autonomy to decide when and whether to settle," but "[e]very litigant also has the autonomy to contract that right away unless there is some legal or ethical barrier to doing so." *Id.* ¶ 25. There was no "legal or ethical barrier" relevant to the parties' dispute, the Tribunal observed, because the CPA explicitly prohibits Petitioners from interfering with the independent professional judgment of Sysco's counsel. *Id.* The Tribunal also concluded that Petitioners' consent right does not fall within "the narrow New York law definition of champerty." *Id.* ¶ 26. The Tribunal found there are "no New York court decision[s] holding that a settlement consent right violates New York's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 25 of 165     INDEX NO. UNASSIGNED

champerty statute," and observed that Sysco failed to produce any evidence demonstrating that "settlement control was an animating principle" of New York's champerty statute. *Id.*

To date, Sysco has refused to provide assurance that it will comply with the Tribunal's awards absent judicial confirmation. Indeed, on January 4, 2023, after the Tribunal issued the TRO, Sysco stated that unless and until Petitioners "elect[] to seek [judicial] confirmation, Sysco's compliance [with the TRO] is purely voluntary and Sysco reserves the right to take whatever future actions may be necessary or appropriate under the circumstances." Such refusal has necessitated this petition for judicial confirmation.

## ARGUMENT

The CPA is a contract "involving commerce" as defined by the Supreme Court, *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-58 (2003), and is subject to the Federal Arbitration Act. Under the FAA, any party to an arbitration may apply to the court for an order confirming the award and "the court *must* grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9 (emphasis added). The Preliminary Injunction Award has not been vacated.[1] As such, this Court is duty bound to confirm the Preliminary Injunction Award and enter judgment upon the award. *See Glob. Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) ("To effectuate the goals of the FAA, there is a strong presumption in favor of confirming arbitration awards.").

The order granting the preliminary injunction constitutes an arbitral award for purposes of confirmation. The parties have agreed that such orders of interim measures "shall be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction." (Ho Aff. ¶ 6; Exhibit A at 4). Courts routinely enforce

---

[1] On March 8, 2023, Sysco filed a petition to vacate the TRO, Case No. 1:23-cv-01451 (N.D. Ill.), but the Tribunal's Award vacated the TRO, rendering Sysco's petition moot.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)                    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 3                                                                        RECEIVED NYSCEF: 03/10/2023

interim arbitral awards under the FAA.  *See, e.g., Ecopetrol S.A. v. Offshore Expl. & Prod. LLC,*

46 F. Supp. 3d 327 (S.D.N.Y. 2014); *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc.,*

127 F. Supp. 2d 482 (S.D.N.Y. 2001); *Compania Chilena De Navegacion Interoceanica, S.A. v.*

*Norton, Lilly & Co.,* 652 F. Supp. 1512 (S.D.N.Y. 1987).  As one district court explained, "if an

arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning

at all, the parties must be capable of enforcing or vacating it at the time it is made." *S. Seas*

*Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mexico City,* 606 F. Supp. 692, 694

(S.D.N.Y. 1985).  Such an award is "an end in itself, for its very purpose is to clarify the parties'

rights in the 'interim' period pending a final decision on the merits." *Id.*  As such it is subject to

confirmation regardless of whether it is formally entitled an "award."  Restatement (Third) U.S.

Law of Int'l Comm. Arb. §1.1 cmt. A ("Whether a writing issued by an arbitral tribunal

constitutes an arbitral award is not controlled by the label given to it by the tribunal.").

Review of an arbitration award is exceedingly narrow, *see D.H. Blair & Co. v.*

*Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (explaining that "confirmation of an arbitration

award is 'a summary proceeding that merely makes what is already a final arbitration award a

judgment of the court'" (citation omitted)), and final arbitration decisions are granted great

deference, *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d

Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision great

deference.").  A confirmation proceeding is not an opportunity to relitigate the merits of the

dispute – an arbitral "award should be enforced, despite a court's disagreement with it on the

merits, if there is a *barely colorable justification* for the outcome reached." *T.Co Metals, LLC v.*

*Dempsey Pipe & Supply, Inc.,* 592 F.3d 329, 339 (2d Cir. 2010) (quotation omitted) (emphasis in

original).  This is especially true here, where the award is only preliminary and the Tribunal has

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.                                                              10 of 13

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 27 of 165

yet to fully weigh the merits of the dispute. The showing necessary to avoid confirmation is

accordingly "very high." *Gottdiener*, 462 F.3d at 110. The Award here was issued after

hundreds of pages of briefing, expert reports, witness statements, and two days of evidentiary

hearings where the Tribunal heard live testimony from all fact witnesses, five out of seven

experts, and heard further arguments from counsel. (Ho Aff. ¶ 19). It plainly meets the

threshold for confirmation.

As is evident from the thoroughly reasoned 78-page Preliminary Injunction Award, in

exercising the power the parties explicitly granted, by reference to relevant principle of New

York law and well-established practice in international arbitration, a majority of an experienced

Tribunal concluded that preliminary injunctive relief was appropriate. (Ho Aff. ¶¶ 20-28;

Exhibit A). The Tribunal considered and rejected Sysco's argument that the settlement-consent

right Sysco voluntarily agreed to was inconsistent with New York law. (Ho Aff. ¶¶ 25-27;

Exhibit A). There is no colorable argument that the Tribunal demonstrated manifest disregard

for the law or that the Arbitration was otherwise conducted in a manner that would warrant

vacatur.

Sysco can point to no public policy grounds for refusing to confirm the award. As the

Supreme Court has instructed, any public policy raised as grounds for refusing to confirm an

award must be "well defined and dominant, and is to be ascertained 'by reference to the laws and

legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace*

*& Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of*

*Am.,* 461 U.S. 757, 766 (1983) (quoting *Muschany v. United States,* 324 U.S. 49, 66 (1945)).

To refuse to confirm an award on grounds of public policy, the court must find that

enforcement of the award violates the United States' "most basic notions of morality and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.                                                              11 of 13

justice." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009)

(citation omitted). As the Tribunal correctly determined, Petitioners' negotiated, prior consent

right does not violate any ethical principle or the New York statute on champerty. Sysco cannot

show that the settlement consent promise it voluntarily made breaches *any* law, of any State,

much less a law that reflects the most basic notions of morality and justice in the United States.

The Court should promptly confirm the Award.

## CONCLUSION

For the foregoing reasons, Petitioners' petition to confirm the Preliminary Injunction

Award should be granted.

Dated:  March 10, 2023                         Respectfully submitted,

                                               */s/ Thomas E.L. Dewey*

                                               Thomas E. L. Dewey
                                               DEWEY PEGNO & KRAMARSKY LLP
                                               777 3rd Avenue
                                               New York, NY 10017
                                               (212) 943-9000 (Telephone)
                                               (212) 943-4325 (Facsimile)
                                               tdewey@dpklaw.com

                                               Derek T. Ho
                                               KELLOGG, HANSEN, TODD,
                                                 FIGEL & FREDERICK, P.L.L.C.
                                               1615 M Street, N.W., Suite 400
                                               Washington, D.C. 20036
                                               (202) 326-7900 (Telephone)
                                               (202) 326-7999 (Facsimile)
                                               dho@kellogghansen.com

                                               Elizabeth Snodgrass
                                               THREE CROWNS LLP
                                               Washington Harbour
                                               3000 K Street, N.W., Suite 101
                                               Washington, D.C. 20007
                                               (202) 540-9492 (Telephone)
                                               (202) 350-9439 (Facsimile)

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 29 of 165   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 3                                                      RECEIVED NYSCEF: 03/10/2023

liz.snodgrass@threecrownsllp.com

*Attorneys for Petitioners Glaz LLC, Posen
Investments LP, and Kenosha Investments LP*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 30 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 03/10/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

GLAZ LLC, POSEN INVESTMENTS LP, and
KENSOSHA INVESTMENTS LP,

                              Petitioners,

              – against –

SYSCO CORPORATION,

                              Respondent.

---

Index No. _____

**AFFIRMATION OF DEREK
T. HO IN SUPPORT OF
PETITION TO CONFIRM
ARBITRATION AWARD**

---

DEREK T. HO, an attorney admitted to practice in the Courts of the State of New York,
affirms as follows under penalties of perjury:

1.      I am a partner at Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., and counsel
for Petitioners Glaz LLC, Posen Investments LP, and Kenosha Investments LP (collectively,
"Petitioners"). I make this affirmation in support of Petitioners' Petition to Confirm Arbitration
Award. The purpose of this affirmation is to put before the Court documents and information
relevant to the petition.

2.      Our firm was counsel to Petitioners in the arbitration proceeding captioned *Glaz
LLC, Posen Investments LP, and Kenosha Investments LP v. Sysco Corporation*, Case
No. 225609, in the London Court of International Arbitration (the "Arbitration").

3.      In a series of transactions beginning in 2019, Petitioners provided Sysco
Corporation ("Sysco" or "Respondent") over $140 million in capital in exchange for a portion of
the proceeds of Sysco's antitrust claims against major U.S. chicken, beef, pork, and turkey
suppliers. Sysco is one of the largest food distributors in the world and Sysco used its litigation
claims to obtain additional corporate financing from Petitioners to bolster its liquidity during the
financial crisis caused by the COVID pandemic. Sysco's antitrust cases are part of sprawling

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 31 of 165

multidistrict litigations with hundreds of plaintiffs, dozens of defendants, and related criminal

proceedings filed by the U.S. Department of Justice ("DOJ"). These cases have already

generated more than $100 million in fines to the DOJ and hundreds of millions of dollars in

settlements between several defendants and the class-action and individual plaintiffs.

4.      On or around December 22, 2020, Petitioners and Respondent entered into the

Second Amended and Restated Capital Provision Agreement ("CPA" or "Agreement") in

connection with Petitioners' provision of an additional $60 million in capital to Sysco.

5.      The CPA mandates arbitration of disputes arising out of, or relating to, the

Agreement. The arbitration agreement is reproduced in the Preliminary Injunction Award

(attached as Exhibit A). Section 29(a) provides:

> Any and all of the following shall (to the exclusion of any other forum except as
> set forth herein) be referred to and finally resolved by arbitration under the LCIA
> Arbitration Rules (2014) of the London Court of International Arbitration (the
> "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference
> into this clause: any dispute, controversy or claim arising out of or in connection
> with (i) this Agreement (including this Section 29); (ii) any other Transaction
> Document; (iii) any relationship or interaction between the Counterparty, on the
> one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion
> by any other Person of any right arising out of or in connection with this Agreement
> (including this Section 29) or any other Transaction Document, including, as to all
> such disputes, claims and controversies, any question regarding (x) the existence,
> arbitrability, validity or termination of this Agreement (including this Section 29)
> or any other Transaction Document, (y) any relationship or interaction between the
> above identified parties, or (z) the obligation of any Person to arbitrate any such
> dispute.

Ex. A at 3.

6.      Further, Section 29(b) dictates that:

> [T]he arbitral tribunal (the "***Tribunal***") shall have the exclusive power to grant any
> remedy or relief that it deems appropriate, whether provisional or final, including
> but not limited to emergency relief, injunctive relief and/or any other interim or
> conservatory measures or other relief permitted by the Rules (collectively,
> "***Conservatory Measures***"), and any such measures ordered by the Tribunal shall,
> to the extent permitted by applicable law, be deemed to be a final award on the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 32 of 165

subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction.

*Id.* at 4.

7.      The applicable LCIA Arbitration Rules (2014) (excerpt attached as Exhibit B) provide that the arbitral tribunal shall have the power "to order on a provisional basis, subject to a final decision in an award, any relief which the Arbitral Tribunal would have power to grant in an award." Ex. B, Art 25.1(iii).  The Agreement also explains that the seat of arbitration shall be New York, New York, and that, notwithstanding that New York law governs the rest of the CPA, "the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder." Ex. A at 5-6.

8.      The CPA also delineates various rights and obligations for both Petitioners and Respondent pertaining to Petitioners' investment and Respondent's prosecution of the underlying claims.  In particular, the CPA left full control of litigation and settlement with Respondent, as is Petitioners' customary practice given the alignment in interest between the parties.

9.      Further, the CPA prevents Respondent from assigning away any of the claims without Petitioners' prior consent.  *See* Ex. A at 76.

10.     In violation of this clear prohibition, Respondent began assigning away claims to its customers as early as January 2021 in response to pressure from those customers.  In particular, Respondent assigned claims relating to more than ██████ in purchases to ██████ Corp. and nearly ██████ in purchases to ████████.  Respondent ultimately assigned away nearly 30% of its claims against chicken suppliers, and substantial percentages of its claims against pork, beef, and turkey suppliers.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 33 of 165

11.    Respondent did not seek Petitioners' consent to make these assignments and continued doing so even after Petitioners confronted Respondent and made clear that any assignments required their approval. Respondent admitted this breach of the CPA.

12.    In light of these flagrant breaches of the CPA, the parties negotiated an Amendment to the CPA. In that amendment, Petitioners released all claims against Respondent arising from the unlawful assignments. In exchange, Respondent increased Petitioners' economic stake in the proceeds of the remaining claims. The economic restructuring led to a misalignment of economic incentives whereby Sysco might not be sufficiently incentivized to pursue the antitrust claims zealously. As a result, Petitioners insisted that Respondent assume additional contractual obligations to safeguard the value of the claims. Specifically, Respondent agreed to "take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds," Ex. A at 64, and further agreed that it "shall not accept a settlement offer without the [Petitioners'] prior written consent, which shall not be unreasonably withheld." *Id.* Respondent otherwise retained, and continues to retain, full control of the litigation matters.

13.    However, after receiving the release, Sysco – lacking any desire to continue litigating and under pressure from its suppliers – threatened to violate Petitioners' contractual rights once again, this time by threatening to execute low-ball settlements with two large defendants without Petitioners' consent. Specifically, Respondent proposed settling its chicken antitrust claims with ███████████████████ for ████████ and its chicken, beef, and pork claims against ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.                                                                4 of 10

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 34 of 165

14.     After these potential settlements were disclosed in late August 2022, Petitioners explained that these settlement amounts were far too low given the strength of the civil cases against these defendants and other known settlements in the market. Petitioners informed Respondent that it did not have consent to enter into the agreements and requested additional material information about the proposed settlements.

15.     When Respondent refused to provide assurance that it would not settle these claims without Petitioners consent, Petitioners filed a Request for Arbitration (attached as Exhibit C), an Application for Expedited Formation, and an Application for an Emergency Arbitrator on September 9, 2022. The Request for Arbitration sought a permanent injunction prohibiting Respondent from entering into the agreements without Petitioners' consent.

16.     The LCIA granted Petitioners' request for expedited formation and the Tribunal was formed on October 6, 2022. The Panel consisted of J. William Rowley KC, an Independent Arbitrator with Twenty Essex and formerly a Partner and Chairman at McMillan LLP, John J. Kerr Jr., an International Arbitrator with Littleton and formerly a Partner at Simpson Thacher & Bartlett LLP, and Laurence Shore, Of Counsel at BonelliErede-Milan.

17.     On December 2, 2022, Respondent provided Petitioners with a near final settlement agreement with ▮▮▮▮▮▮▮. Respondent also disclosed that it intended to execute the agreement before the end of the year. Petitioners objected to the terms of the agreement and again requested additional information about the proposed settlement. On December 7, 2022, at a case management hearing before the Tribunal, Sysco indicated that unless Petitioners obtained

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG    Document 1-3    Filed 03/23/23    Page 35 of 165

NYSCEF DOC. NO. 4

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

a temporary injunction, it would not voluntarily abstain from executing the proposed settlements without Petitioners' consent.

18.     To preserve the subject matter of the dispute and to prevent the harm that would follow from Respondent executing these agreements, Petitioners moved for a temporary restraining order ("TRO") and preliminary injunction on December 12, 2022, seeking to prohibit Respondent from executing the settlements prior to the Tribunal's determination of the merits of the dispute. The Tribunal granted the TRO on December 14, 2022, after determining that Petitioners "should have the opportunity for their preliminary injunction application to be heard and not mooted." Email from L. Shore to Counsel (Dec. 14, 2022) (attached as Exhibit D). But the Tribunal also provided Respondent with a hearing opportunity on December 22, 2022 to demonstrate "compelling business reasons" why the TRO should be lifted. Respondent declined to do so.

19.     The Tribunal then set a briefing schedule on the request for preliminary injunction. The parties submitted hundreds of pages of briefing, witness statements from four fact witnesses, and expert reports from seven experts – including Petitioners' experts Professor Samuel Issacharoff, Professor W. Bradley Wendel, and Professor Bruce A. Green. The Tribunal also granted a document production request by Respondent in connection with Petitioners' opening brief. The Tribunal then held a two-day evidentiary hearing on February 6 and 7, 2023, and heard live testimony from all four fact witnesses, five of the seven experts, and arguments from counsel.

20.     The Tribunal, having been duly sworn, and having duly heard the proofs and the allegations of the parties, issued a 78-page Preliminary Injunction Award on March 10, 2023, on behalf of the majority of the panel. The award prohibits Respondent from entering into the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 4                                                    RECEIVED NYSCEF: 03/10/2023

proposed settlements with ▮▮▮▮▮▮▮▮▮▮▮ prior to a final determination of the

merits of the Arbitration. The award also vacated the Tribunal's prior TRO.

21.    The Tribunal applied the New York legal standard for preliminary injunctive

relief because the seat of the arbitration was New York, the interpretation of the contract was

governed by New York law, and the ultimate merits claim for a permanent injunction would be

decided under New York law. *Id.* at 39-40. The Tribunal, however, rejected Respondent's

argument that a "heightened" standard applied because the preliminary injunction would neither

alter the status quo, nor would it grant Petitioners all the relief requested on the merits in a

manner that could not subsequently be undone. *See id.* at 42-45.

22.    The Tribunal further concluded that Petitioners had adequately shown irreparable

harm. *See id.* at 63. This conclusion rested on three points: (1) "Absent the injunction, Sysco

will execute the settlement proposals, which would overturn the status quo and permanently

deprive [Petitioners] of the ability to seek specific performance of its prior consent contractual

right"; (2) "[a]bsent the injunction, [Petitioners] . . . ha[ve] shown the likelihood of an adverse

ripple effect (assuming an undervalued settlement) on the entire portfolio of protein antitrust

cases in terms of [Petitioners'] interest in the value of those cases, which would include the

involvement of third parties (the JSA defendants, for example)"; and (3) "[a]t the merits trial, the

breach of contract damages that [Petitioners] would conceivably be able to prove would not

constitute adequate compensation for the harm suffered." *Id.* Fundamentally, "a settlement that

undervalues Sysco's claims would undermine Sysco's settlement position in other cases." *Id.* at

61.

23.    The Tribunal also concluded that Petitioners had made a sufficient showing that

the agreement unambiguously "confers a prior consent or veto right on" Petitioners and "the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)
NYSCEF DOC. NO. 4

Case 1:23-cv-02489-PGG    Document 1-3    Filed 03/23/23    Page 37 of 165

INDEX NO. UNASSIGNED
RECEIVED NYSCEF: 03/10/2023

plain meaning of the text at least indicates that Sysco must first decline to settle if [Petitioners]
do[] not consent." *Id.* at 67-68.

24.    The Tribunal also preliminarily determined "that [Petitioners'] withholding of
consent to Sysco's settlement proposals was not unreasonable." *Id.* at 73-74. Specifically, the
Tribunal explained that:  (1) Petitioners "possessed information indicating that the proposed
settlements were low in value compared to other settlements and in view of Sysco's claims
against the defendants"; (2) "█████████ was of limited – if any –value to [Petitioners]"; and
(3) "the █████ settlement proposal was below the floor" that Sysco communicated to
Petitioners and Sysco had not "provided a reasonable explanation for going beneath the floor."
*Id.* at 74.

25.    The Tribunal expressly rejected Respondent's argument that the consent right
violated New York public policy.  The foundational point is that "[e]very litigant has the
autonomy to decide when and whether to settle" but "[e]very litigant also has the autonomy to
contract that right away unless there is some legal or ethical barrier to doing so." *Id.* at 69
(emphasis removed).  The Tribunal first concluded "lawyers' ethical rules do not appear to be
relevant given the language" in the agreement that prohibits Petitioners from interfering with
independent professional judgment of Respondent's counsel.  *Id.*  The Tribunal recognized that
core protection of the rules of professional ethics is that "between a lawyer and client, the client
has the exclusive authority to make settlement decisions," but when the agreement is between a
litigation funder and the claim owner, "there is not the same risk of impact on the lawyer's
fiduciary duties to the client." *Id.* at 69-70 (emphasis and quotations omitted).

26.    Further, the Tribunal explained that "[w]hatever remains of champerty does not
appear to pose" a barrier to a claim owner contractually granting a funder a consent right over

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

8 of 10

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 38 of 165

settlement. *Id.* at 69. The Tribunal agreed that consent-right here would not fall within "the narrow New York law definition of champerty" and there are "no New York court decision[s] holding that a settlement consent right violates New York's champerty statute." *Id.* at 70-71. Nor had Respondent produced any evidence demonstrating that "settlement control was an animating principle" of New York's champerty statute. *Id.* at 70.

27.     Thus, after weighing the evidence presented, "the Tribunal majority conclude[d], on a *prima facie* basis, that [Petitioners] ha[d] shown that it is likely that its interpretation of [the consent-right] . . . would survive a challenge based on champerty or public policy or legal ethics grounds." *Id.* at 71.

28.     Finally, the Tribunal concluded that the balance of equity favored issuing the injunction. *Id.* at 76. The Tribunal noted that Petitioners bear the economic risk of the settlements and the cost of continued litigation. *See id.* The Tribunal discounted Respondent's theory "that an injunction will lead to the disappearance of settlement offers" while recognizing that Petitioners would suffer irreparable harm without an injunction. *Id.* at 77. The Tribunal explained that "as a matter of equity, Sysco's continuing the litigation to maximize proceeds that [Petitioners] largely will receive is consistent with decisions that Sysco previously made and an agreement (the March 2022 Amendment) it entered into as a consequence of those decisions." *Id.* at 76.

29.     The Preliminary Injunction Award was delivered to Petitioners on March 10, 2023.

30.     To date, Respondent has previously refused to provide assurance that it will comply with the Tribunal's awards absent judicial confirmation. Indeed, on January 4, 2023, after the Tribunal issued the TRO, Respondent stated that "unless and until Burford elects to seek

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG    Document 1-3    Filed 03/23/23    Page 39 of 165

NYSCEF DOC. NO. 4                                          RECEIVED NYSCEF: 03/10/2023

[judicial] confirmation, Sysco's compliance [with the TRO] is purely voluntary and Sysco reserves the right to take whatever future actions may be necessary or appropriate under the circumstances." Such refusal has necessitated the Petitioners' Petition to Confirm Arbitration Award, which we respectfully request that the Court grant as promptly as possible.

Dated:  March 10, 2023                    Respectfully submitted,

                                          Derek T. Ho
                                          KELLOGG, HANSEN, TODD,
                                             FIGEL & FREDERICK, P.L.L.C.
                                          1615 M Street, N.W., Suite 400 Washington,
                                          D.C. 20036
                                          (202) 326-7900 (Telephone)
                                          (202) 326-7999 (Facsimile)
                                          dho@kellogghansen.com

                                          *Attorney for Petitioners Glaz LLC, Posen
                                          Investments LP, and Kenosha Investments LP*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 40 of 165

# Exhibit A

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

# LONDON COURT OF INTERNATIONAL ARBITRATION
## CASE NO. 225609

*In the matter of an arbitration under the 2014 LCIA Arbitration Rules between:*

### GLAZ LLC, POSEN INVESTMENTS LP, KENOSHA INVESTMENT LP ("Burford")

<u>Claimants</u>

vs.

### SYSCO CORPORATION ("Sysco")

<u>Respondent</u>

## Order on Claimants' Preliminary Injunction Application (corrected)

**Tribunal**
J. William Rowley KC
John J. Kerr, Jr.
Laurence Shore (Presiding Arbitrator)

*Administrative Secretary*

Letizia Santin

10 March 2023

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 42 of 165

# Table of Contents

| | | |
|---|---|---|
| **I.** | **The Parties** | **1** |
| | I.A    Claimants | 1 |
| | I.B    Respondent | 1 |
| **II.** | **The Arbitral Tribunal ("Tribunal")** | **2** |
| **III.** | **The Arbitration Agreement** | **3** |
| **IV.** | **Seat – Applicable Law – Language** | **6** |
| **V.** | **Procedural History** | **7** |
| **VI.** | **Brief Summary of the Parties' Positions** | **22** |
| | VI.A   Claimants' Application for Interim and Conservatory Measures and for an Immediate Temporary Restraining Order ("Claimants' PI Request") | 22 |
| | VI.B   Respondent's Opposition to Claimants' Application for Interim and Conservatory Measures ("Respondent's Opposition") | 27 |
| | VI.C   Claimants' Reply to Opposition to Claimants' Application for Interim and Conservatory Measures ("Claimants' Reply") | 30 |
| | VI.D   Respondent's Rejoinder to Claimants' Application for Interim and Conservatory Measures ("Respondent's Rejoinder") | 33 |
| **VII.** | **The Tribunal's Analysis and Decision** | **35** |
| | VII.A   The Applicable Preliminary Injunction Standard | 35 |
| | VII.A.1  New York law versus international practice | 36 |
| | VII.A.2  Is the Heightened Standard Applicable? | 40 |
| | VII.A.3  Irreparable Harm | 46 |
| | VII.B   Has The PI Request Satisfied the New York Law Ordinary PI Standard? | 56 |
| | VII.B.1  Has Burford Shown that it will suffer irreparable harm absent the requested injunction? | 56 |
| | VII.B.2  Has Burford Demonstrated a Likelihood of Success on the Merits? | 64 |
| | VII.B.3  Balance of Equities | 74 |
| **VIII.** | **Order** | **77** |

i

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 43 of 165

## I.   The Parties

### I.A   Claimants

1.   Claimants in these proceedings are Glaz LLC, Posen Investments LP, and Kenosha Investments LP (collectively "**Burford**"). They are indirect subsidiaries of Burford Capital Limited, a Guernsey corporation that is publicly traded on the London Stock Exchange and the New York Stock Exchange and is in the business of litigation finance.

2.   Claimants' address is 251 Little Falls Drive, Wilmington (DE 19808).

3.   Claimants are represented in this arbitration by:

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: + 1 202 326 7931
dho@kellogghansen.com
kschumm@kellogghansen.com
cgoodnow@kellogghansen.com

Three Crowns, LLP
Washington Harbour
3000 K Street NW Suite 101
Washington, DC 20007-5109
Tel: +1 202 540 9500
liz.snodgrass@threecrownsllp.com

### I.B   Respondent

4.   Respondent is Sysco Corporation ("**Sysco**"), corporation organized under the laws of Delaware, which operates in the field of distribution of food and related products.

5.   Sysco's address is: 1390 Enclave Parkway, Houston (TX 77077).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

6.      Sysco is one of the plaintiffs currently engaged in a series of complex antitrust litigation against several food suppliers. In 2019, Burford agreed to invest in Sysco's antitrust cases in exchange for a share of the proceeds.

7.      Sysco is represented in this arbitration by:
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Tel: +1 212 225 2000
jrosenthal@cgsh.com
cmoore@cgsh.com
lbensman@cgsh.com
pswiber@cgsh.com

8.      Claimants and Respondent are also referred to individually as a "**Party**" and jointly as the "**Parties.**"

## II.     The Arbitral Tribunal ("Tribunal")

9.      Burford nominated Mr. J. William Rowley KC, whose contact details are:

Twenty Essex
20 Essex Street
London WC2R 3AL (UK)
wrowley@twentyessex.com

10.     Sysco nominated Mr. John J. Kerr Jr., whose contact details are:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017 (USA)
jkerr@stblaw.com

11.     The LCIA appointed Mr. Laurence Shore as Tribunal President. Mr. Shore's contact details are:

BonelliErede
Via Michele Barozzi 1
20122 Milan (ITALY)

2

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

Case 1:22-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 45 of 165

NYSCEF DOC. NO. 5                                                                 RECEIVED NYSCEF: 03/13/2023

laurence.shore@belex.com

12. The Parties have not lodged any objection to any Tribunal member's service on the Tribunal.

13. With the consent of the Parties, the Tribunal engaged an Administrative Secretary to the Tribunal, Ms. Letizia Santin, whose contact details are:

BonelliErede
Via Michele Barozzi 1
20122 Milan, Italy
letizia.santin@belex.com

14. The Parties have not lodged any objection to the Administrative Secretary's services.

## III. The Arbitration Agreement

15. The arbitration agreement is contained in the Second Amended and Restated Capital Provision Agreement signed on 22 December 2020 by Claimants and Respondent ("**CPA**"):

> 29(a) Any and all of the following shall (to the exclusion of any other forum except as set forth herein) be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (2014) of the London Court of International Arbitration (the "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference into this clause: any dispute, controversy or claim arising out of or in connection with (i) this Agreement (including this Section 29); (ii) any other Transaction Document; (iii) any relationship or interaction between the Counterparty, on the one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion by any other Person of any right arising out of or in connection with this Agreement (including this Section 29) or any other Transaction Document, including, as to all such disputes, claims and controversies, any question regarding (x) the existence, arbitrability, validity or termination of this Agreement (including this Section 29) or

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG  Document 1-3  Filed 03/23/23  Page 46 of 165

any other Transaction Document, (y) any relationship or interaction between the above identified parties, or (z) the obligation of any Person to arbitrate any such dispute.

29(b) Except as otherwise specifically provided in this Agreement (including this Section 29) or any other Transaction Document, (i) the arbitral tribunal (the "Tribunal") shall have the exclusive power to grant any remedy or relief that it deems appropriate, whether provisional or final, including but not limited to emergency relief, injunctive relief and/or any other interim or conservatory measures or other relief permitted by the Rules (collectively, "Conservatory Measures"), and any such measures ordered by the Tribunal shall, to the extent permitted by applicable law, be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction; and (ii) prior to the formation or expedited formation of the Tribunal (under Article 5 or 9A of the Rules), the provisions of Article 9B of the Rules shall apply to any request for Conservatory Measures.

29(c) The referral of a dispute to arbitration shall not suspend or interfere with the Counterparty's (or the Payment Agent's) obligation to make timely payment to the Capital Providers of the Capital Providers' Entitlement (or any portion thereof); provided that if the Counterparty disputes its (or the Payment Agent's) obligation hereunder to pay any amount to the Capital Providers, the Counterparty must (or, as applicable, cause the Payment Agent to) (i) commence an arbitral proceeding pursuant to this Section 29 within two (2) Business Days after the date such amount was (but for the dispute) due, (ii) make timely payment to the Capital Providers of any undisputed amounts and (iii) immediately deposit any and all disputed amounts in a dedicated account with the LCIA as fund holder, which amounts shall be released, including any interest thereon, as directed in writing by the Tribunal in any award, order or decision, unless the parties expressly agree otherwise in writing.

29(d) Any request for arbitration or response thereto submitted to the LCIA may be delivered by any means (including email) set forth in Section 18 (Notices) or any other means that is reasonably likely to achieve actual service.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    UNASSIGNED

NYSCEF DOC. NO. 5                                                      RECEIVED NYSCEF: 03/13/2023

29(e) The number of arbitrators shall be three. Subject to Article 8 of the Rules, each party to the arbitration shall nominate one arbitrator and the two arbitrators nominated by the parties shall, within ten (10) days of the nomination of the second party-nominated arbitrator, agree upon and nominate a third arbitrator who shall act as Chairman of the Tribunal. If no agreement is reached within ten days or at all, the LCIA Court shall select and appoint a third arbitrator to act as Chairman of the Tribunal.

29(f) The seat, or legal place, of arbitration shall be New York, New York. Notwithstanding the terms of Section 27 (Governing Law), the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder. The language to be used in the arbitral proceedings shall be English.

29(g) In addition to the confidentiality requirements imposed on the parties by Article 30 of the Rules, each party is obligated to keep confidential the existence and content of any arbitral proceedings initiated hereunder and any rulings or award except (i) to the extent that disclosure may be required of a party to fulfill a legal duty, protect or pursue a legal right, or enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority, (ii) with the consent of all parties, (iii) where needed for the preparation or presentation of a claim or defense in such arbitral proceedings, (iv) where such information is already in the public domain other than as a result of a breach of this clause (g), or (v) by order of the Tribunal upon application of a party.

29(h) In addition to the authority conferred upon the Tribunal by the Rules, the Tribunal shall have the authority to order production of documents in accordance with the IBA Rules on the Taking of Evidence in International Arbitration as current on the date of the commencement of the arbitration. No other form of disclosure or discovery shall be permitted.

29(i) The judgment of any court of appropriate jurisdiction shall be entered upon any award made pursuant to an arbitration conducted pursuant to the terms of this Section 29.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 48 of 165

29(j) Any attempt by the Counterparty, a Capital Provider, or any other Person subject to this Section 29 to seek relief or remedies in any forum that contravenes this Section 29 shall constitute a breach of this Agreement and entitle the non-breaching party to damages, equitable relief, and full indemnification against all costs and expenses incurred in connection therewith.

29(k) The parties, being sophisticated commercial entities with access to counsel, irrevocably waive and forever and unconditionally release, discharge, and quitclaim any claims, counterclaims, defenses, causes of action, remedies and/or rights that they have or may have in the future arising from any doctrine, rule or principle of law or equity that this Agreement or any other Transaction Document, or any of the relationships and transactions contemplated hereby or thereby, (i) are against the public policy of any relevant jurisdiction; (ii) are unconscionable or contravene any laws relating to consumer protection; (iii) are usurious or call for payment of interest at a usurious rate; (iv) were entered into under duress; (v) were entered into as a result of actions by a Capital Provider that violated its obligations of good faith and/or fair dealing; (vi) constitute illegal gambling or the sale of unregistered securities; (vii) constitute malicious prosecution, abuse of process or wrongful initiation of litigation; or (viii) constitute champerty, maintenance, barratry or any impermissible transfer, assignment or division of property or choses in action. The parties specifically agree that any issues concerning the scope or validity of the foregoing waiver shall be within the exclusive jurisdiction of the Tribunal.

## IV.    Seat – Applicable Law – Language

16.    Pursuant to Section 29(f) of the CPA, the seat or legal place of arbitration is New York, New York.

17.    This arbitration is conducted according to the LCIA Rules in force as from 1 October 2014 ("**LCIA Rules**").

18.    Section 28 of the CPA, titled "Governing Law", provides as follows:

> Except as set forth otherwise in Section 29, this Agreement shall be construed in accordance with, and this Agreement

6

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

and all matters arising out of or relating in any way what-soever to this Agreement (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York (without reference to any conflict of law principles or choice of law doctrine that would have the effect of causing this Agreement to be construed in accordance with or governed by the law of any other jurisdiction).

19. Pursuant to Section 29(f) of the CPA, the language of the arbitration is English.


## V.   Procedural History

20. In this section, the Tribunal summarizes the procedural events in the arbitration. This summary does not purport to be an exhaustive listing of the entire procedural chronology or the entire record of communications with the Tribunal. Rather, the Tribunal reports on the major submissions to the Tribunal, as well as the Tribunal's major procedural rulings.

21. Burford commenced this arbitration by submission of its Request for Arbitration, dated 9 September 2022 ("**Request**"), together with Exhibits (1 to 7).[1] In the Request, Claimants nominated Gary Born as co-arbitrator, pursuant to Article 8 of the LCIA Rules. Mr. Born was replaced by Mr. William Rowley KC.

22. Sysco nominated Mr. Kerr as co-arbitrator.

23. On 6 October 2022, the LCIA Court notified the Parties that it had appointed Mr. Rowley KC, Mr. Kerr, and Laurence Shore (presiding arbitrator) to be the Tribunal in this arbitration.

24. On 7 October 2022, Claimants filed an Application for Interim and Conservatory Measures ("**Second PI Request**"), together with Fac-

---

[1] The Request was accompanied by an LCIA Article 9B application ("**Emergency Arbitrator**") and a preliminary injunction request ("**First PI Request**"). The LCIA denied the Article 9B Application and the First PI Request was not pursued.

7

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

tual Exhibits, Legal Authorities, the Witness Statement of Christopher P. Bogart, and the Expert Report of Professor Samuel Issacharoff, accompanied by Exhibits and Appendices.

25. On 12 October 2022, the Parties informed the Tribunal that they were engaged in ongoing discussions to determine the possibility of resolving or narrowing the dispute. Accordingly, they agreed to hold Claimants' Second Application in abeyance and to postpone *sine die* the deadline for Sysco to file its Response to the Request for Arbitration.

26. On 31 October 2022, the Parties informed the Tribunal that their discussions had not led to a resolution of the dispute and requested that the Tribunal resume the proceedings. The Parties also agreed on 7 November 2022 as the deadline for Sysco to file its Response to the Request. Claimants confirmed to hold the Second PI Request in abeyance.

27. On 7 November 2022, Respondent filed its Response and Counterclaim to Claimants' Request for Arbitration ("**Response to the Request**"), together with Factual Exhibits and Legal Authorities.

28. On 23 November 2022, the Tribunal circulated a draft Procedural Order No. 1 and an agenda for a remote Case Management Conference ("**CMC**") to be held on 29 November 2022. The Tribunal further proposed Ms. Letizia Santin to serve as Administrative Secretary of the Tribunal.

29. On 29 November 2022, Respondent's lead counsel, Mr. Jeffrey Rosenthal, informed the Tribunal that, due to unexpected circumstances, he was unable to attend the CMC and asked the Tribunal to adjourn the CMC and provide alternative dates.

30. On the same day, the Tribunal President confirmed the postponement of the CMC and set 7 December 2022 as the new date for the CMC. Further, the Tribunal requested the Parties to exchange their respective procedural calendars and submit them to the Tribunal by noon (NY time) on 6 December 2022. The Tribunal also directed

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.) UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 51 of 165

RECEIVED NYSCEF: 03/13/2023

Respondent to identify the "threshold issues" affecting the procedural calendar (mentioned in Respondent's email of 29 November 2022) by 2 December 2022.

31. On 2 December 2022, in accordance with the Tribunal's directions, Respondent sent a letter to the Tribunal and stated that "*Claimants' claims in this arbitration necessarily will require the adjudication of the merits and value of Sysco's antitrust claims since it is impossible for Burford to establish that it has been harmed (a necessary element for a breach of contract claim) by any settlement Sysco reaches or the extent of such alleged harm without a full hearing on the merits of such claims.*" Respondent thus contended that "*in order to fairly present its defense to Burford's claims in this arbitration, Sysco will need to have the opportunity to use the record in the antitrust cases to rebut any evidence Burford offers regarding the value of Sysco's antitrust claims.*"

32. On 6 December 2022, the Parties sent their comments on draft Procedural Order No. 1 to the Tribunal.

33. The same day, 6 December 2022, Claimants sent a letter to Respondent noting their concerns regarding the draft settlement agreement between Sysco and ███████ and urged Respondent to comply with its contractual obligations arising out of the CPA.

34. On 7 December 2022, a CMC was held by videoconference.

35. On 12 December 2022, Claimants filed a renewed Application for Interim and Conservatory Measures and for an Immediate Temporary Restraining Order, ("**Third PI Request**" and "**TRO Request**"), together with Factual Exhibits (C-1 to C-62), Legal Authorities (CLA-1 to CLA-47), the Witness Statement of Christopher P. Bogart and the Expert Report of Professor Samuel Issacharoff, together with accompanying Appendices.

36. The same day, 12 December 2022, Respondent filed a letter opposing Claimants' Third PI Request and TRO Request, accompanied by Exhibits 1 to 11.

37. On 13 December 2022, Claimants filed a reply to Respondent's 12 December letter.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 52 of 165

38.     On 14 December 2022, the Tribunal issued the following directions:

> 1. On the current record, the Tribunal considers that Claimants should have the opportunity for their preliminary injunction application to be heard and not mooted. Absent Respondent's identification of "compelling business reasons" for it to enter into the proposed settlement agreement before the preliminary injunction application to be heard, the Tribunal therefore directs Respondent not to enter into the proposed settlement agreement at this time. However, the Tribunal further considers that this restraint on Respondent shall be conditioned on Claimants' acceptance — to be immediately indicated to Respondent (copying the Tribunal) that (a) Respondent may inform ████ of the imposition of the restraint by this Tribunal; and (b) Respondent may inform ████ of the hearing (see below) regarding the preliminary injunction application.

> 2. Respondent may submit a brief by 12 noon New York time on 22 December 2022, or choose to appear orally before the Tribunal on that date, in which Respondent may seek to show reasons why the TRO should be lifted. If Respondent seeks to make a written submission or appearance on 22 December, it shall notify the contents of its submission or intended oral pleading to Claimants by 12 noon New York time on 21 December 2022, so that Claimants may, if they choose, make a reply submission or oral pleading immediately following that of Respondent. The Tribunal, on the basis of such submission or pleading, may reconsider the imposition of the TRO.

Further, in the event that the TRO remained in place, the Tribunal gave Respondent a choice of two scheduling options for a preliminary injunction hearing.

39.     On 14 December 2022, Claimants requested the Tribunal to address the point in Respondent's letter of 12 December regarding the disclosure of OAEO material to Respondent's client.

40.     The same day, 14 December 2022, Respondent replied to Claimants' correspondence regarding the disclosure of OAEO material.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   UNASSIGNED

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 03/13/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 53 of 165

41.     The Tribunal invited Claimants to file a letter in support of their
        OAEO position by 10 am (DC time) on 15 December 2022, with Re-
        spondent to respond by 7 pm (NY time) on 15 December 2022.

42.     On 15 December 2022, the Tribunal requested the Parties to confirm
        that they had no objection to the appointment of Ms. Letizia Santin
        as Administrative Secretary.  The same day, both Parties confirmed
        they had no objection.

43.     On 15 December 2022, both Claimants and Respondent filed corre-
        spondence on their OAEO position, pursuant to the Tribunal's 14
        December directions.

44.     Also on 15 December 2022, the LCIA circulated the Statement of In-
        dependence and Consent to Appointment as Administrative Secre-
        tary signed by Ms. Santin.

45.     The Tribunal denied Claimants' OAEO application on 16 December
        2022.   The Tribunal further directed the Parties *"to discuss and seek
        to agree, as soon as possible, an appropriate confidentiality regime in rela-
        tion to the use of all information and documents disclosed in this arbitra-
        tion."*

46.     On 18 December 2022, the Tribunal issued Procedural Order No. 1a
        (**"PO1a"**) on the appointment of the Administrative Secretary.

47.     On 19 December 2022, Respondent requested clarifications from the
        Tribunal on the procedure to be applied in the event Respondent
        wanted to challenge the TRO.  The Tribunal responded the same
        day, with the requested explanations.

48.     On 20 December 2022, Respondent informed the Tribunal of its in-
        tention to challenge the TRO at a hearing.  Respondent also re-
        quested that the Tribunal order Claimants to disclose two categories
        of documents (**"Respondent's Disclosure Application"**).  The Tri-
        bunal invited Claimants to reply on the same day.

49.     Claimants responded to Respondent's Disclosure Application with
        a letter dated 20 December 2022.  Also on 20 December 2022, Re-
        spondent replied to Claimants' letter of 20 December.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 54 of 165

50.   On 21 December 2022, Claimants requested leave to reply to Respondent's correspondence dated 20 December 2022 and submitted their reply simultaneously. The Tribunal accepted Claimants' reply and stated that it did not wish to receive any further submission on Respondent's Disclosure Application.

51.   On 21 December 2022, pursuant to the Tribunal's email of 19 December 2022, Respondent filed the outline of Respondent's primary talking points for 22 December TRO hearing. Later on 21 December 2022, Respondent sent the following letter to the Tribunal:

> [...] we wish to advise the Tribunal that given the current state of Sysco's negotiations other than with ████████, it is willing to moot the need for a TRO by representing that it will not execute any other settlement before 7 February 2023. Accordingly, as Sysco is prepared to remove any imminent threat of potential settlements other than with ████████, there is no basis for a continued TRO or the imposition of a schedule that prevents Sysco from adequately presenting its defense to the preliminary injunction application with respect to ██████ or any other potential settlement counter-party. We respectfully request that such TRO be lifted immediately, and we would proceed tomorrow solely with respect to ████████.

52.   Subsequently, on 21 December 2022, Respondent informed the Tribunal that the 22 December TRO hearing could be cancelled. Respondent also sent the Tribunal a proposed schedule for a hearing on Claimants' Third PI Request.

53.   On 22 December 2022, the Tribunal asked the Parties for a timetabling conference.

54.   On 22 December 2022, a timetabling conference was held by videoconference. Among the persons who attended the conference were the following:

-   Laurence Shore, Tribunal President

-   J. William Rowley KC, Co-Arbitrator

-   John J. Kerr, Jr., Co-Arbitrator

-   Letizia Santin, Administrative Secretary

12

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

- Derek Ho, Counsel for Claimants

- Christopher Goodnow, Counsel for Claimants

- Travis Edwards, Counsel for Claimants

- Dustin Graber, Counsel for Claimants

- Liz Snodgrass, Counsel for Claimants

- Katherine Shen, Counsel for Claimants

- Jonathan Molot, Burford Capital Limited

- Jeffrey A. Rosenthal, Counsel for Respondent

- Brian Byrne, Counsel for Respondent

- Christopher P. Moore, Counsel for Respondent

- Lina Bensman, Counsel for Respondent

- Paul Kleist, Counsel for Respondent

- Patrick Swiber, Counsel for Respondent

- Katerina Wright, Counsel for Respondent

55.     Following the 22 December conference, the Tribunal issued timeta-
        ble directions for Claimants' Third PI Request and Respondent's
        Disclosure Application.

56.     On 23 December 2022, Respondent filed a further letter, together
        with Exhibits A and B, in support of its Disclosure Application (per
        the Tribunal's directions).

57.     On 26 December 2022, Claimants filed a reply to Respondent's letter
        of 23 December 2022 on the Disclosure Application.

58.     On 27 December 2022, Respondent filed correspondence in reply to
        Claimants' 26 December letter and requested that the Tribunal not
        "consider anything new raised for the first time by Burford in its rejoinder
        letter."

59.     On 30 December 2022, the Tribunal issued its ruling on Respond-
        ent's Disclosure Application.

        i.      Request No. 1 seeking documents "concerning Burford's decision
                to withhold consent to Sysco's proposed settlements with ████
                ████ and ████, including documents reflecting information

13

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    UNASSIGNED

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 03/13/2023

about any other settlements with those defendants." The Tribunal denied "the second clause of this general request ("including documents reflecting information about any other settlements") as overbroad." As to the first part ("documents concerning Burford's decision to withhold consent"), the Tribunal ordered as follows: "Claimants shall produce documents concerning Claimants' decision to date to withhold consent to the proposed settlements (see Bogart Witness Statement at paragraph 39), including documents that discuss the reasons for Claimants' decision. Documents already in Respondent's hands (because sent to Respondent by Claimants) of course need not be produced. Responsive documents that contain information subject to confidentiality agreements or legal privilege shall be produced on a redacted basis."

ii.   Request No. 1 (Subpart a). The Tribunal ordered that "Claimants shall produce to Respondent's outside counsel of record in these proceedings and to its relevant experts retained in these proceedings (for their eyes only) the documents that they relied on in support of the allegations in paragraphs 11 and 96 of their PI Application, including any documents in their possession, custody or control that contradict the assertions in these two paragraphs. The Tribunal will then consider, based on any further information regarding privilege or work product or confidentiality, whether Respondent's counsel shall be permitted to disclose the documents to Respondent. Respondent's counsel shall, however, be permitted to disclose paragraphs 11 and 96 to Respondent, unless these paragraphs are withdrawn from the PI Application. If Claimants decline to produce such documents for the reasons stated in their 26 December 2022 Letter and also fail to withdraw paragraphs 11 and 96 from the PI Application, the Tribunal will not expect any part of the PI Hearing (or further submissions of the Parties concerning the PI) to address the content of these allegations, since Respondent will not in that event have been able to test the assertions in the two paragraphs based on the underlying documents […]."

iii.   Request No. 1 (Subpart b) seeking production of "other documents concerning the value of the claims considered by Burford in making its decision." The Tribunal denied this Request for the following reasons: "This category is overbroad for the purposes of the PI

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG  Document 1-3  Filed 03/23/23  Page 57 of 165

RECEIVED NYSCEF: 03/13/2023

*Application. It is also insufficiently precise ("considered by Burford in making its decision" could refer to every document that Claimants possess)."*

iv.  Request No. 1 (Subpart c) seeking production of *"documents regarding the value of the claims that were available to Burford but that Burford elected not to consider in making its decision."* The Tribunal denied this request on the same grounds as Request No. 1 (Subpart b): overbreadth and imprecision.

v.  Request No. 2. The Tribunal ordered as follows: *"The Tribunal understands from Claimants' Rejoinder Letter that Claimants have made voluntary production (Exhibit A) to satisfy this request. If Respondent nonetheless views Exhibit A as an inadequate response, it may seek reconsideration from the Tribunal."*

vi.  Request No. 3 described in footnote 1 of Respondent's 20 December 2022 letter as follows: *"We annex hereto as Exhibit A some passages from Burford's 2021 Form 20-F filed with the U.S. Securities and Exchange Commission describing the documents Burford generates to evaluate potential investments, including its due diligence, statistical models, analytical tools, asset return models and targeted risk-adjusted returns. Burford presumably utilized this information in evaluating the proposed settlement, as well as its analysis of objective events to drive valuation change, as its securities filings also tout."* The Tribunal ordered as follows: *"The Tribunal notes, in relation to the final sentence in the above quotation, that Claimants in their Rejoinder Letter deny that Burford uses its investment models for the purpose of assessing appropriate settlement levels in these antitrust cases. Claimants also represent that they have not affirmatively relied on any such models in stating their case to the Tribunal that they reasonably withheld their consent. Since Respondent can only offer a presumption and Claimants, through counsel, have not only issued a denial but point to the absence of reliance on such models in their papers, the Tribunal determines, for the purposes of the PI Application, that this Request is denied."*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 58 of 165

60. On 6 January 2023, the Tribunal approved the Confidentiality Order circulated by the Parties, subject to any subsequent discussions as to paragraphs 8 and 9 of the same Order.

61. On 8 January 2023, Respondent filed a letter with the Tribunal regarding alleged deficiencies in Claimants' document production.

62. On 9 January 2023, the Tribunal invited Claimants to reply to Respondent's letter dated 8 January. Claimants replied with a letter dated 9 January 2023, accompanied by Exhibits A to N.

63. On 11 January 2023, Respondent requested that the Tribunal order Claimants to remove all redactions from the documents they produced. On the same day, Claimants responded to Respondent's request concerning the removal of the redactions from the documents produced, and Respondent provided further correspondence in support of its position.

64. On 11 January 2023, the Tribunal issued its Order on Document Production, subject to further consideration of the Parties' 11 January submissions and anything further that the Parties wished to add regarding confidentiality agreements.

   i. Category one. The Tribunal ordered as follows: "*The Tribunal determines that at this stage of the arbitral proceedings, Respondent has not demonstrated that Claimants are withholding responsive documents under this production category. However, the Tribunal observes that while probabilistic models are not due to be produced, there is a distinction between the models themselves and data generated by the models that may have played a role in Claimants' decision to withhold consent. Accordingly, Claimants shall confirm by 13 January 2023, that they have produced documents and not redacted information that contain data generated by the models that played a role in the decision to withhold consent.*"

   ii. Category two. The Tribunal ordered as follows: "*The Tribunal is concerned that Claimants now contend that their production does not withhold or redact documents or information that Claimants previously said they would not produce because privilege/confidentiality precluded them from producing. Accordingly, the Tribunal determines*

16

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 03/13/2023

> *in relation to this category, that Claimants shall confirm, by 13 January 2023, that they have produced all responsive documents and they have not redacted responsive information. If Claimants are unable to issue such a confirmation, they shall explain why they cannot do so. In particular, in that event, Claimants shall identify what documents, if any, have been withheld."*

    iii.    Category three. The Tribunal ordered as follows: *"The Tribunal determines that, in view of the rulings set out above and the circumstances of this PI phase of the arbitration, Respondent's log and/or OAEO and/or in camera review proposals are denied."*

65.     On 11 January 2023, Claimants filed a letter received from Respondent, in which Respondent requested Claimants' consent to the proposed settlement agreements between Respondent and ████ ████████ .

66.     On 12 January 2023, Claimants filed a further letter on the Confidentiality Agreement.

67.     On the same day, 12 January 2023, Respondent submitted a further letter regarding the 11 January 2023 Tribunal's Order on Document Production. Respondent also filed a letter in response to Claimants' correspondence of 11 January 2023.

68.     On 13 January 2023, the Tribunal invited Claimants to reply *"only on the question of clarification of the ruling dated 11 January 2023."*

69.     On 13 January 2023, Claimants submitted a letter to request the Tribunal's assistance in managing the arbitration proceedings and in maintaining the status quo pending the outcome of the hearing on Claimants' Third PI Request. Claimants also provided a letter on the question of clarification of the 11 January 2023 ruling, in accordance with the Tribunal's directions. Claimants filed a further letter regarding the Tribunal's requests for confirmation in its 11 January 2023 ruling. Respondent filed a letter in response to Claimants' request for the Tribunal's assistance in managing the proceedings and in maintaining the status quo.

17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 60 of 165

NYSCEF DOC. NO. 5                                              RECEIVED NYSCEF: 03/13/2023

70.  On 15 January 2023, the Tribunal issued the following directions on the matters raised by the Parties in their previous correspondence:

> The Tribunal sees no need to clarify, supplement, or otherwise amend any of its previous directions, rulings and orders, including those regarding confidentiality agreements. If Respondent so wishes, it may of course present arguments in its PI submissions concerning (a) inability to check data (allegedly) generated by models against the models that are not subject to production orders; and (b) confidentiality constraints.

> The Tribunal sees no need to take action on the matters raised by Claimants in their emails dated 11 January 2023 EST (L. Snodgrass) and 13 January 2023 (L. Snodgrass).

71.  On 17 January 2023, Respondent filed its Opposition to Claimants' Application for Interim and Conservatory Measures ("**Respondent's Opposition**"), together with Factual Exhibits (R-18 to R-71), Legal Authorities (RL-22 to RL-129), the Witness Statement of Barrett G. Flynn and the Expert Reports of Professor Ali Yurukoglu, William J. Baer, Esq and Professor Maya Steinitz, together with accompanying Exhibits and Appendices.

72.  On 24 January 2023, Claimants filed their Reply to Respondent's Opposition to Claimants' Application for Interim and Conservatory Measures ("**Claimants' Reply**"), together with Factual Exhibits (C-63 to C-114), Legal Authorities (CLA-48 to CLA-105), the Witness Statements of Jonathan T. Molot and Kelly M. Daley, the Reply Report of Professor Samuel Issacharoff and the Expert Reports of Michael P. Kenny, Esq., Professor Bruce A. Green and Professor Bradley Wendel, together with accompanying Exhibits and Appendices.

73.  On 26 January 2023, Respondent submitted a letter requesting that the Tribunal take certain actions concerning Claimants' Reply submission.

74.  On 27 January 2023, Claimants filed a response to Respondent's letter of 26 January 2023.

75.  On 29 January 2023, the Tribunal issued its ruling on Respondent's Application dated 26 January 2023:

18

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED
NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 61 of 165    INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/13/2023

The Tribunal considers that Claimants have not improperly withheld evidence and arguments until their Reply. While the Reply is lengthy, it is within the bounds of being responsive to a very lengthy opposition memorial filed by Respondent on 17 January 2023. Claimants' 27 January letter points to specific indicia of responsiveness, and the reasoning for the approach taken in Claimants' initial Application. While the Tribunal makes no comment on this stage regarding the approach taken by Claimants or Respondent, we note that these are matters to be addressed further in Respondent's Rejoinder and in the PI Hearing. Respondent's 26 January Application does not identify with specificity the allegedly non-responsive parts of Claimants' Reply memorial.

The Tribunal also issued PI hearing directions.

76. On 29 January 2023, Respondent filed a letter requesting that the Tribunal order Claimants to produce an unredacted version of one exhibit filed with Claimants' Reply dated 24 January 2023. The Tribunal invited Claimants to reply by 30 January 2023.

77. On 30 January 2023, Claimants filed a reply to Respondent's letter of 29 January 2023, in accordance with the Tribunal's directions.

78. On 31 January 2023, the Tribunal issued its ruling on Respondent's application of 29 January 2023 and denied Respondent's application: "[f]or purposes of this stage of the proceedings (i.e. the PI hearing), the Tribunal has determined to deny the application."

79. On 31 January 2023, Respondent filed its Rejoinder to Claimants' Application for Interim and Conservatory Measures ("**Respondent's Rejoinder**"), together with Factual Exhibits (R-72 to R-84), Legal Authorities (RL-130 to RL-153), a Second Witness Statement of Barrett G. Flynn and the Rebuttal Expert Reports of Professor Ali Yurukoglu, William J. Baer, Esq and Professor Maya Steinitz, together with accompanying Exhibits and Appendices.

80. On 2 February 2023, the Tribunal circulated a Virtual Hearing Protocol, and both Parties provided a list of factual and expert witnesses for cross-examination. The Tribunal requested that the Parties state the order in which they wanted to present their witnesses.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG  Document 1-3  Filed 03/23/23  Page 62 of 165

81.    Also on 2 February 2023, and pursuant to the Tribunal's directions, Respondent provided a list with the order in which it intended to present its witnesses.  Claimants did the same by separate email.

82.    On 3 February 2023, the Tribunal circulated hearing directions, in particular concerning the order of presentation of witnesses and sequestration of fact witnesses.  Respondent provided its list of participants attending the PI Hearing.  By separate email, Respondent designated Barrett Flynn as its party-representative and requested that Claimants designate their party-representative and circulate a new order of Claimants' witnesses.  Claimants replied to Respondent's email regarding the order of their witnesses.  Both Parties filed further correspondence on the same issue, dated 3 and 4 February 2023.

83.    On 3 February 2023, Claimants provided their list of participants attending the PI Hearing.

84.    On 4 February 2023, the Tribunal issued the following directions: "*In view of the entire text of the sequestration provision agreed by the Parties, and considering the purpose of sequestration, the Tribunal directs that Mr. Molot shall testify first among Claimants' fact witnesses.*"

85.    On 4 February 2023, Sysco sent a letter informing the Tribunal of a possible challenge to the Tribunal's TRO in the New York courts.

86.    On 4 February 2023, the Parties provided modifications to the Virtual Hearing Protocol, which the Tribunal accepted.

87.    On 5 February 2023, the Tribunal circulated a Hearing Timetable Guide and the text for witness affirmations.

88.    On 5 February 2023, Sysco informed the Tribunal that, due to time limitations, it would probably not call Professor Issacharoff and/or Professor Green for cross-examination.

89.    On 5 February 2023, Claimants sent a reply letter to Respondent's letter of 4 February 2023, regarding the possible challenge of the Tribunal's TRO ruling in the New York courts.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 63 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 03/13/2023

90.    The Preliminary Injunction Hearing was held remotely on 6 to 7 February 2023 ("**PI Hearing**".)

91.    The following persons participated in the PI Hearing:

    i.    For Claimants: the Kellogg, Hansen, Todd, Figel & Frederick P.L.L.C. firm (Derek Ho, Kylie Kim, Travis Edwards, Christopher Goodnow, Dustin Graber, Lisa Harger, Sean Sullivan, Kira Schumm, Kyler Wheeler) and the Three Crowns LLP firm (Liz Snodgrass, Jacob Omorodion, Katherine Shen, Kelly Renehan);

    ii.    For Respondent: the Cleary Gottlieb Steen & Hamilton LLP firm (Jeffrey Rosenthal, Lina Bensman, Christopher Moore, Brian Byrne, Paul Kleist, Patrick Swiber, Maria Manghi, Katerina Wright, Blair Kuykendall, Isabella Riishojgaard, Hani Bashour, Cathy Barron, Ronald Carroll, Kathryn Collar);

    iii.    Claimants' Witnesses and Party Representatives: Christopher Bogart, Kelly M. Daley, Jonathan T. Molot, Samuel Issacharoff, W. Bradley Wendel, Bruce A. Green, Michael P. Kenny, Rod Ganske (Assistant to Michael Kenny);

    iv.    Respondent's Witnesses and Party Representatives: Barrett Flynn, Maya Steinitz, Ali Yurukoglu, William J. Baer;

    v.    The Arbitral Tribunal: Laurence Shore, William J. Rowley KC, John J. Kerr Jr;

    vi.    The Administrative Secretary (Letizia Santin); and

    vii.    Opus 2 and IDRC (online service provider with transcript writers.)

92.    On 6 February 2023, the Parties made their opening oral statements, followed by the examination of all fact witnesses: Jonathan T. Molot, Christopher Bogart, Kelly M. Daley, and Barrett Flynn.

93.    After the first day of the PI Hearing, Sysco informed the Tribunal it did not wish to call Professors Issacharoff and Green for examination.  By separate email, Sysco sent the PowerPoint presentation of Respondent's Opening Statement.

21

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 64 of 165

94.     On 7 February 2023, expert witnesses were examined: Professor W. Bradley Wendel was examined first, followed by Mr. William J. Baer, Mr. Michael P. Kenny, Professor Maya Steinitz, and Professor Ali Yurukoglu.  After the examinations, the Parties made their closing arguments.

95.     After the second day of the PI Hearing, Sysco sent the PowerPoint presentation of its Closing Statement.

96.     On 10 February 2023, the Tribunal informed the Parties that it did not need further submissions regarding Claimants' PI Request.

## VI.     Brief Summary of the Parties' Positions[2]

### VI.A  Claimants' Application for Interim and Conservatory Measures and for an Immediate Temporary Restraining Order ("Claimants' PI Request")

97.     On 31 March 2022, the Parties entered into Amendment No. 1 to the Second Amended and Restated Capital Provision Agreement ("**CPA**").  Under the Second Amended CPA (dated 22 December 2020), Burford provided capital to Sysco to finance certain of its food antitrust claims in exchange for a percentage of Sysco's proceeds from those claims.  Importantly, the March 2022 amendment was the consequence, Claimants say, of Sysco's breach of the CPA. The amendment includes, *inter alia*, a new Section 5.3(b)(v), which states that Sysco "*shall provide immediate notice by email*" to Burford "*of any settlement offer made by the Adverse Party and shall not accept a settlement offer without Burford's prior written consent, which shall not be unreasonably withheld, [...]*."[3]

---

[2] The Tribunal includes this section as general background to what the Parties have submitted.  The salient arguments, legal and factual points, are discussed in the following section, "Analysis and Decision."

[3] Exhibit C-1; Claimants' PI Request, §§ 32 ff.

22

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 65 of 165

98.     Claimants allege that Sysco seeks to deprive Claimants of their con-
tractual right to consent before Sysco settles any of its antitrust
claims.

99.     In particular, Claimants contend that Sysco seeks to enter into pro-
posed settlements with ████ and ████ for an unreasonably
low amount.[4] Claimants state that based on their knowledge of the
antitrust cases – including from outside sources - the proposed set-
tlements would cause both Sysco and Burford to lose hundreds of
millions of dollars.[5]

100.    Claimants initially filed an Application for Interim and Conserva-
tory Measures on 7 October 2022 and later agreed to hold the Ap-
plication in abeyance as Sysco promised it would not execute any
settlements without Claimants' input.  However, Sysco broke its
pledge and is prepared to execute a settlement with ████.[6]
Claimants were therefore forced to renew their Application for In-
terim and Conservatory Measures and seek immediate relief with a
TRO.

101.    Claimants request an order that, until the Tribunal issues an award
addressing Claimants' claim for a permanent injunction, Sysco must
refrain from settling its claims in the antitrust cases without Claim-
ants' prior written consent.  Claimants also seek an order that Sysco
shall immediately provide an accounting of all settlement offers that
Sysco has received to date in connection with the food antitrust
claims, together with immediate, "as-they-happen" updates of that
accounting.[7]

102.    According to Claimants, once the settlements are executed, they
cannot be undone, and the harm they inflict would be particularly

---

[4] Claimants' PI Request, § 10.

[5] Id., § 11.

[6] Id., § 15.

[7] Id., § 2.

23

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

serious. Claimants' expert, Professor Issacharoff, supports this view.[8]

103. Sysco's food antitrust claims have survived all of the judicial mechanisms employed by US courts to filter out meritless claims.[9] The strength of Sysco and all other plaintiffs' claims is further demonstrated by parallel criminal proceedings.[10]

104. Sysco used the antitrust claims as collateral to obtain nearly USD 140 million in financing from Claimants.

105. Sysco is prepared to enter into settlements that, not only were Claimants never informed of,[11] but would render Claimants' investment worthless, as the sum agreed in settlements is well below the value of the claims and the potential sum that Sysco can recover.[12] Further, Sysco's settlements would also prejudice Sysco's claims against other defendants in the antitrust cases.[13]

106. The negotiation strategy is left to Sysco and its counsel, but the settlement amount should reflect no less than *"what the market has consistently been for other plaintiffs,"* namely, *"████"* ████████████████████ *"*[14]

107. As for the relevant test for the PI Request, the Tribunal should consider the LCIA Rules (Article 25.1(iii)) and applicable principles of international arbitration law and practice (in particular, Article 17(A)(1) of the UNCITRAL Model Law), and not the New York Rules applied by national courts, as they do not provide the applicable standard.[15]

---

[8] *Id.*, § 17; Issacharoff Report, §§ 45, 48.

[9] Claimants' PI Request, § 25; Issacharoff Report, § 28.

[10] Claimants' PI Request, § 26.

[11] *Id.*, §§ 42 ff; 46.

[12] *Id.*, § 40.

[13] *Id.*, §§ 50 ff.

[14] *Id.*, § 40; Exhibit C-19; Exhibit C-20.

[15] Claimants' PI Request, § 63.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

108.  In particular, Article 25.1(iii) of the LCIA Rules vests the Tribunal with the power to order the interim and conservatory measures sought by Claimants and grants the Tribunal broad discretion over the granting of provisional measures.[16]

109.  Pursuant to the relevant test, Claimants have established that the requested measures are necessary to preserve the status quo and prevent serious or irreparable harm. Claimants state that the proposed settlements will irreparably deprive Claimants of their right to participate in litigation decisions and the power to veto settlement agreements, and the loss Claimants will incur cannot be compensated by money damages.

110.  Claimants rely, *inter alia*, on *Wisdom Import Sales Co. v. Labatt Brewing Co.*, and *Oracle Real Est. Holdings I LLC v. Adrian Holdings Co. I, LLC*, to argue that the only available remedy to maintain the status quo is to enforce the veto right.[17] Other cases support their position that denial of a participation and veto right constitutes irreparable harm.[18]

111.  In addition, Claimants state that the proposed settlements with ▮▮ and ▮▮▮▮▮ will give third parties a contractual right to avoid joint-and-several liability and will revel confidential information protected by the CPA. "*Disclosing the existence of a litigation funder, even without identifying the name of the funder, violates the core purpose of the confidentiality provision because it creates the risk of significant negative effects to Sysco's claims defendants frequently exploit the disclosure of litigation funding arrangements to initiate satellite litigation over the discoverability of communications between the funder and the funded party, and over the enforceability of the terms of their litigation*

---

[16] *Id.*, § 62.

[17] *Id.*, §§ 66-67.

[18] *Id.*, § 68.

25

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          UNASSIGNED

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 03/13/2023

*funding arrangement.*"[19]  Claimants submit that New York Courts often find disclosure of information to third parties to be irreparable.[20]

112.    Moreover, the proposed settlements will give the other defendants in the antitrust cases access to Sysco's position, with resulting harm to Sysco's litigation position.[21]

113.    The prejudice to Claimants is imminent and serious, while there is no prejudice to Sysco in preserving the status quo.

114.    Claimants say they have established a *prima facie* case that Sysco's proposed settlements, without Claimants' prior consent, would constitute a clear breach of the CPA.[22]

115.    Claimants request that the Tribunal:

 i. order immediately that, until the Tribunal adjudicates this PI Request, Sysco refrain from executing the proposed settlement agreement with ███████ or any other settlement without Claimants' consent;

 ii. order that, until the Tribunal issues an award on Claimants' permanent injunction claim, Sysco refrain from settling its food-related antitrust claims without Claimants' consent;

 iii. order that Sysco provide an immediate accounting of all settlement offers that it has received to date as well as "as-they-happen" updates of that accounting to include all such settlement offers received; and

 iv. grant any further relief that the Tribunal deems appropriate.

---

[19] *Id.*, § 76.

[20] *Id.*; § 77.

[21] *Id.*, §§ 78 ff.

[22] *Id.*, §§ 91 ff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### VI.B  Respondent's Opposition to Claimants' Application for Interim and Conservatory Measures ("Respondent's Opposition")

116.  Sysco contends that Burford's PI Request should be denied and the TRO granted by the Tribunal on 14 December 2022 should be immediately dissolved.[23]

117.  Burford is now requesting information regarding the proposed settlements that it never requested before. Between March 2020 and January 2021 Sysco entered into various settlement agreements with certain defendants in the Broilers litigation. Burford never requested any information about these settlements beyond the monetary terms.[24]

118.  Further, throughout the negotiations of both the CPA and the Amendment to the CPA, Sysco made it clear to Burford that it was concerned about losing control of its antitrust claims. Burford repeatedly assured Sysco that Sysco would not waive control of its claims through entering into a funding relationship.[25] In particular, during the Amendment negotiations in early 2022, Burford assured Sysco it would not lose control of its antitrust claims, nor the ability to settle those claims, and Sysco took comfort from the fact that the Amendment did not alter or remove the CPA provisions that grant Sysco control over its claims.[26]

119.  For reasons entirely beyond Sysco's control, the antitrust proceedings have taken a downturn and these negative developments have altered Sysco's position and the value of its claims.[27]

120.  In any event, Sysco's proposed settlements are commercially reasonable, and Sysco always kept Burford informed throughout the

---

[23] Respondent's Opposition, § 2.

[24] *Id.*, § 2.

[25] *Id.*, § 37; Flynn WS, § 9.

[26] Flynn WS, § 17.

[27] Respondent's Opposition, § 40.

27

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.) Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 70 of 165 INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5                                                                    RECEIVED NYSCEF: 03/13/2023

negotiation process about the settlements, the negotiation strategies and the offers exchanged.[28]

121.    Claimants' PI Request should be decided in accordance with New York law.[29] In support of its position, Respondent claims that the CPA is clear in providing that ""*all matters arising out of or relating in any way whatsoever*" to the CPA, "*whether in contract, tort or otherwise,*" *shall be governed by New York law.*"[30] Since Claimants' PI Request arises out of and relates to the CPA, New York law, which is the Parties' express choice, shall apply.

122.    Under New York law, a party seeking a preliminary injunction must establish: (i) a "clear" or "substantial" likelihood of success on the merits; (ii) a "strong showing" of irreparable harm if the injunctive relief is not granted; and (iii) that the equities are balanced in its favor.[31] Moreover, New York's heightened standard applies in this case because the preliminary injunction sought by Claimants would provide Burford with substantially all of the relief that it is seeking,[32] and because the injunction would force Sysco to continue to litigate its claims.[33]  Under the New York heightened standard, Claimants' PI Request should be denied.

123.    Burford has not shown that it will suffer irreparable harm if the injunctive relief is not granted, and economic loss – as the only possible loss that Burford will suffer – does not constitute irreparable harm.[34]  Further, the consent right is purely economic and, therefore, does not constitute irreparable harm.

124.    Claimants cannot demonstrate that their claims have a likelihood of success on the merits.  The CPA does not give Burford a veto right

---

[28] *Id.*, §§ 41 ff. See also Flynn WS, §§ 21-39.

[29] Respondent's Opposition, §§ 55 ff.

[30] *Id.*, § 56.

[31] *Id.*, §§ 67 ff.

[32] *Id.*, § 69.

[33] *Id.*, §§ 72 ff.

[34] *Id.*, § 85; 86 ff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 71 of 165 INDEX NO.

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 03/13/2023

over the proposed settlements, as also demonstrated by the parol evidence,[35] and a contrary interpretation would violate law and public policy.[36] If a preliminary injunction contrary to public policy is issued, it will be unenforceable under New York law.[37]

125. Claimants' interpretation of the CPA not only would make the doctrine of champerty applicable, but it would also violate New York, which prohibits champerty.[38] Further, Claimants' interpretation violates the federal and New York policy encouraging the settlement of civil suits and would violate New York public policy protecting the right of a client to control the litigation.

126. The proposed settlements are the result of extensive negotiations and are not only commercially reasonable but also the best result that Sysco could have obtained. There is no basis for Sysco to expect to obtain higher settlement offers in the future, and a comparison between the proposed settlements with Sysco and other settlements obtained in similar cases demonstrates the reasonableness of Sysco's agreements (████████████████████████████ ██████.)

127. Contrary to Claimants' position, Sysco claims that Burford has failed to prove that it has not unreasonably withheld consent, both from a qualitative (*i.e.*, the value of Sysco's claims, which is overestimated by Burford) and a quantitative point of view (*i.e.*, the evidence filed by Burford to support its position.) Instead, Burford has not used proper documentation such as internal analytical tools, in-house due diligence and financial models to evaluate Sysco's proposed settlements.[39]

128. A balance of equities favors Sysco's position. While Claimants' potential harm would only be economic, Sysco will be seriously

---

[35] *Id.*, §§ 111 ff.

[36] *Id.*, §§ 118 ff. See also Steinitz Report.

[37] Respondent's Opposition, § 123.

[38] *Id.*, §§ 126 ff.

[39] *Id.*, §§ 213 ff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK (See below.)    UNASSIGNED

Case 1:23-cv-02489-PGG  Document 1-3  Filed 03/23/23  Page 72 of 165

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 03/13/2023

harmed if the PI Request is granted, as the proposed agreements will be probably withdrawn, and Sysco will be forced to continue to litigate.[40]

129.   Finally, Respondent argues that Claimants' PI Request was not adequately supported by documentation and witness evidence and Burford cannot belatedly file such evidence with the Reply.

130.   For these reasons, Sysco requests that *"Burford's Application for Interim and Conservatory Measures and for an Immediate Temporary Restraining Order be denied."*[41]

### VI.C   Claimants' Reply to Opposition to Claimants' Application for Interim and Conservatory Measures ("Claimants' Reply")

131.   In reply, Claimants argue that Sysco's Opposition mischaracterizes crucial facts, namely (i) the Parties' negotiation of the 2022 Amendment to the CPA;[42] (ii) the fact that Sysco withheld material information from Claimants regarding the proposed settlements (particularly regarding ███████████) and did not inform Burford of the negotiations with ██████ and ██████;[43] (iii) the developments in the antitrust litigations;[44] and (iv) Claimants' efforts to seek preliminary injunctive relief.[45]

132.   As for the legal standard to be applied, Claimants argue that Respondent has misinterpreted the Parties' choice of law in the CPA and disregarded the arbitration agreement establishing the legal standard for preliminary injunction (in particular Section 29(f) of the CPA.)

---

[40] *Id.*, § 227.

[41] *Id.*, § 242.

[42] Claimants' Reply, §§ 34 ff; See also Daley WS.

[43] Claimants' Reply, §§ 44 ff.

[44] *Id.*, §§ 72 ff.

[45] *Id.*, §§ 78 ff.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 73 of 165

NYSCEF DOC. NO. 5                                      RECEIVED NYSCEF: 03/13/2023

133. Under the LCIA Rules, arbitral tribunals have broad discretion in granting any appropriate remedy or relief and, in exercising their discretion, tribunals do not apply the same principles as courts, but refer to international arbitration principles and practices.

134. Even if New York law were to apply, the heightened standard claimed by Respondent would not be triggered.

135. The PI Request is necessary to preserve the status quo. The TRO is also consistent with arbitral practice, the LCIA Rules and New York law.

136. The PI Request is necessary to prevent serious or irreparable harm. It is not true, as Respondent contends, that Burford will suffer no harm that would warrant injunctive relief. According to Claimants, Sysco has misstated the standard of harm applicable to this case and it is wrong in asserting that Burford cannot suffer irreparable harm because it has an economic interest. Claimants argue that New York courts also regularly grant injunctions to protect financial interests.

137. The proposed settlements will give the other defendants in the antitrust cases a contractual right to avoid joint-and-several liability that cannot be undone.

138. In addition, and as explained by Professor Issacharoff, if Claimants were to lose their participation right, money cannot fully compensate this loss. Professor Issacharoff observes that the proposed settlement will irreparably alter the settlement market and affect Sysco's ability to settle other cases with other defendants. Even with the inclusion of ███████████, this risk will not be mitigated.[46]

139. Respondent's interpretation of the Amendment to the CPA is wrong; the parol evidence filed by Respondent cannot overcome the plain language of the CPA,[47] which is the starting point of contract

---

[46] *Id.,* § 114.

[47] *Id.,* §§ 120 ff.

31

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 74 of 165

interpretation under New York law.[48]  The CPA grants Claimants a limited veto right to withhold consent from a settlement that Sysco wishes to accept. Accordingly, Respondent cannot accept a settlement offer without Burford's prior written consent.

140.  The presumption against illegality under New York law invoked by Respondent is inapplicable in the present case.[49]  The consent provision does not violate New York champerty law, as demonstrated by Professor Wendel's Expert Report, and the policy encouraging the settlement cannot prevail over the contractual rights granted to the Parties, as shown by Professor Green.[50]  As for Respondent's argument regarding professional conduct rules and ethical policies, these rules and policies do not pertain to this case.[51]

141.  The burden to prove that Burford acted unreasonably when it objected to Sysco's proposed settlements is on Respondent, which has failed to demonstrate it, as shown by Claimants' expert Mr. Kenny. The new factual arguments presented with Respondent's Opposition were never disclosed to Burford prior to the filing of the Opposition and, in any event, do not support Sysco's allegation that Burford unreasonably withheld its consent.

142.  The consent provision was agreed by the Parties because of Sysco's breaches of the CPA.  Sysco cannot be permitted to continue breaching the CPA.  Respondent's alleged harm of continuing to litigate the antitrust claims cannot justify the denial of PI Request.

143.  For the foregoing reasons, Claimants request "*that the Tribunal grant the relief requested in Paragraph 104 in Claimants' PI [Request].*"[52]

---

[48] *Id.*, § 117.

[49] *Id.*, §§ 122 ff.

[50] *Id.*, §§ 135 ff. See also Wendel Expert Report and Kenny Expert Report.

[51] Claimants' Reply, §§ 137 ff.

[52] *Id.*, § 189.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### VI.D Respondent's Rejoinder to Claimants' Application for Interim and Conservatory Measures ("Respondent's Rejoinder")

144. Claimants abused their procedural rights and filed a completely new Application under the guise of a Reply. Among other things, the facts described in the Reply have been completely re-written and new experts submitted their expert reports even if Burford knew from the outset that the law and public policy regarding a litigation funder's ability to control a claim were the key issues in dispute.[53] In light of this, Sysco reserves all of its rights.[54]

145. Contrary to Claimants, Respondent maintain its position that the PI Request not only is subject to New York law as the substantive law of the CPA, but also to the New York's heightened PI standard.

146. Claimants' PI Request relates to the merits, as it is evident from a comparison between the relief sought in the PI Request and the relief in the Request for Arbitration – which are identical – and the fact that the PI Request raises numerous substantive issues.[55] Therefore, Claimants' reliance on Section 29(f) of the CPA is misplaced and New York law, which is the substantive law of the CPA, must apply for deciding Claimants' PI Request.

147. Under New York's heightened standard, Burford has, in fact, failed to make a strong showing of the irreparable harm it would suffer.[56] The only harm that Burford is likely to suffer is only economic, and therefore, it does not constitute irreparable harm.

148. As for Burford's argument that the PI Request is appropriate either to prevent irreparable harm or to preserve the Tribunal's effective jurisdiction, Sysco argues that Burford failed to submit any New

---

[53] Respondent's Rejoinder, § 15 ff.

[54] Id., § 21.

[55] Id., § 29.

[56] Id., §§ 45 ff.

33

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b[d][3][i]) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

York case endorsing this alternative standard.[57] In any event, Burford's alleged harms are entirely speculative.

149. Even if the Tribunal were to find that Burford has shown that it suffered irreparable harm, Burford has still failed to demonstrate any likelihood of success on the merits under any standard.[58] Burford's interpretation of the CPA is untenable, as Burford is asking the Tribunal to transform its limited consent right into an absolute right to veto Sysco's proposed settlements. Both the Parties' agreement and the parol evidence show that Burford has no such veto right. Additionally, and as already shown in Respondent's Opposition, Burford's interpretation is contrary to New York law and the public policies of all relevant jurisdictions, as demonstrated by Professor Steinitz.[59]

150. Burford, in its Reply, is trying to shift the burden of proof, which falls on Burford. Unlike Sysco – which has shown the reasonableness of the proposed settlements - Burford has never met this burden and therefore failed to prove its case. Burford's refusal to consent to the proposed settlements is the outcome of an unreasonable process and a breach of Burford's obligation to deal with Sysco in good faith.

151. By negotiating the proposed settlements, Sysco has maximized its realistic prospects of recovery, which can be demonstrated by a comparison with settlements entered into by other claimants in the antitrust cases with a position comparable to Sysco. Burford could not rebut Sysco's evidence, especially regarding ██████████ ██.[60] Further, ████████████████████████████████ ████████████████████████████████████████ is untenable.[61]

---

[57] *Id.*, § 52.

[58] *Id.*, §§ 78 ff.

[59] *Id.*, §§ 92 ff. See also Steinitz Rebuttal Report.

[60] Respondent's Rejoinder, §§ 110 ff. See also Yurukoglu Rebuttal Report.

[61] Respondent's Rejoinder, §§ 121 ff.

34

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

152. Respondent asserts that Claimants have discussed at length in their Reply the conversations with Mr. Gant as a significant factor in Burford's decision to withhold consent. However, Claimants have never disclosed the content of such conversations, and in any event, Burford's characterization of Mr. Gant's statements raises serious ethical concerns and violates the most fundamental principles of the CPA.

153. By forcing Sysco to renounce to the proposed settlements and continue to litigate, Burford is improperly seeking to impose a commercially unreasonable result.[62]

154. Finally, and contrary to Claimants' position, the balance of equities favors Sysco; the PI Request will cause significant harm to Sysco, if granted.[63]

155. For the foregoing reasons, Sysco requests "*that Burford's* [PI Request] *be denied with prejudice*" and that Sysco is awarded fees and costs.[64]

## VII.   The Tribunal's Analysis and Decision

### VII.A The Applicable Preliminary Injunction Standard

156. Three principal issues divide the Parties: (a) does the New York law or instead an international arbitral practice standard apply to this PI Request; (b) if the New York law standard applies, should it be the heightened standard; and (c) what is the appropriate definition of the "irreparable harm" element in the applicable standard (New York or international)?

---

[62] *Id.*, §§ 137 ff.

[63] *Id.*, §§ 139 ff.

[64] *Id.*, § 146.

35

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED

NYSCEF DOC. NO. 5

*VII.A.1 New York law versus international practice*

157.   Burford contends that this Tribunal should apply *"factors commonly considered by international arbitral tribunals in determining whether it is appropriate to order"* the interim relief that Burford seeks.[65]   Those factors include the risk of serious or irreparable harm, the balance of prejudice, and a preliminary consideration of merits issues.[66]   Burford emphasizes that the preliminary consideration of merits issues requires that the Tribunal avoid pre-judging the merits but ensure that *"granting the relief is reasonable in the circumstances."*[67]

158.   Burford further emphasizes that the Tribunal has the discretion to *"weigh these factors and even precisely how to formulate them."*[68]   In particular, such discretion is not restricted by the New York law standard, pursuant to the terms of the CPA:[69]

- New York law governs the contract but not the arbitration agreement or arbitration procedure.
- CPA Section 29(f) provides that New York City is the seat of arbitration and the U.S. Federal Arbitration Act governs the arbitration agreement and proceedings.
- Accordingly, New York law *"does not govern the procedural question of what standard the Tribunal should apply in determining the PI Application."*
- The Federal Arbitration Act does not specify the standard for relief, and the Tribunal has wide discretion under the LCIA Rules and the terms of CPA Section 29(b) to grant provisional relief that it deems appropriate.
- Appropriate relief is based on principles and practices derived for and in international arbitration.   These principles

---

[65] Claimants' Opening Submission, Tr. 1/13.

[66] *Ibid.*

[67] *Ibid.*

[68] *Ibid.*

[69] Claimants' Reply, pp. 33-35.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 79 of 165

INDEX NO. RECEIVED NYSCEF: 03/13/2023

and practices focus on preservation of the status quo and either prevention of serious or irreparable harm or preservation of the Tribunal's effective jurisdiction.[70]

159.  Sysco's opposing position is that the CPA unambiguously selects New York law and a New York seat. The provisions referring to the LCIA Rules and the Federal Arbitration Act are boilerplate, and both the Rules and the Act are silent on the PI standard. Sysco adds that "*the only legal regime mentioned in the contract that supplies the standards is New York law, so there's no reason to throw out New York law because of some irreconcilable provision that claimants claim somehow overrides it.*"[71] Sysco adds that Burford concedes that international standards do not, in any event, deviate from New York law; for example, UNCITRAL Model Law Article 17A "*adopts not the serious harm standard but the same irreparable harm requirement*" under New York law.[72]

160.  Sysco's papers also argue that because (in Sysco's view) the PI Request is a claim on the merits, New York law and the New York standard for injunctive relief must apply, pursuant to the Section 28 of the CPA: "*Burford does not even argue that something other than New York law should apply if the requested relief could decide the ultimate issue in dispute.*"[73]

161.  However, as indicated above, Sysco contends that even if the Tribunal concludes that the PI Request is a proper interim relief application and the question of the applicable standard is a procedural question, the Tribunal should nonetheless apply New York law. Sysco adduces the following reasons:[74]

  •  In the absence of guidance from the Federal Arbitration Act, there is no basis to apply anything other than New York law.

---

[70] *Ibid.*, p. 39.

[71] Respondent's Opening Submission, Tr. 1/29.

[72] *Id.*, Tr. 1/38.

[73] Respondent's Rejoinder, p. 12.

[74] *Id.*, pp. 14-16.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   UNASSIGNED

NYSCEF DOC. NO. 5                                          RECEIVED NYSCEF: 03/13/2023

- The New York seat and the United States nationality of all the Parties reinforce the idea that where the Federal Arbitration Act is silent, the appropriate legal source is not international principles – which are not found in the Federal Arbitration Act – but New York law.

- The LCIA Rules provide no support for Burford's position, since the LCIA Rules are not only silent on the standard to apply for interim relief but also require the Tribunal to apply the law chosen by the Parties.

- Moreover, where the Federal Arbitration Act is silent on an issue, arbitral tribunals are not accorded "unfettered discretion," "*but should look to the law of the seat* [here, New York law] *to fill in the gaps.*" This is an approach commented on in *International Commercial Arbitration in New York*, which observes that while arbitrators need not apply the procedures or standards for preliminary relief that the courts apply, arbitrators often do so. Where the Parties have selected New York law and a New York seat and are all based in the United States, there "*is no principled reason* [...] *to apply any lesser or more flexible international standard at this stage; if Burford cannot articulate a credible claim for injunctive relief now under New York law, how could it possibly establish such a claim later?*"

162.  The Tribunal considers that, in exercising its discretion on the standard of preliminary injunctive relief applicable to this arbitration – discretion that is expressly provided for in Section 29(b) of the CPA[75] – New York law provides the appropriate elements. The Tribunal agrees with Sysco that silence or the lack of guidance on the standard leads, in the circumstances of this dispute, to the New York law standard rather than international principles. This is not because the Tribunal views the PI Request as being "a claim on the merits" or that the contractual references to the U.S. Arbitration Act and the LCIA Rules are mere "boilerplate" or that all Parties are in

---

[75] Under Section 29(b), the Tribunal's discretion as to conservatory measures authority is not expressly confined. However, the Tribunal observes that mandatory law at the seat of arbitration provides a boundary.

38

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the United States. Rather, the Tribunal considers that two overriding considerations point to adoption of the New York standard.

(i)      The first arises from the terms of CPA Section 29(f): "*The seat, or legal place, of arbitration shall be New York, New York. Notwithstanding the terms of Section 27 (Governing Law), the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder. The language to be used in the arbitral proceedings shall be English.*" Since New York serves as the seat of arbitration, it should not come as a surprise to the Parties that, where the Federal Arbitration Act is silent on a procedural matter and the applicable institutional arbitration rules are similarly silent, procedures applied by the courts at the seat would be preferred to another set of *ad hoc* arbitration rules or international practice (inevitably, a slippery standard to grasp). New York courts are of course highly sophisticated, have a massive and lengthy experience in matters of interim injunctive relief, and the New York law standard for a preliminary injunction is highly developed and offers sound guidance for arbitral tribunals. The fact that judges rather than arbitrators have developed this standard does not militate against the use of the standard by arbitrators. Moreover, even if the New York law standard is regarded as more rigorous than international practice, and New York courts have acknowledged that in arbitrations seated in New York a less rigorous standard for such relief may be enforceable, the circumstances of this PI Request, which features a request to preliminarily enjoin Sysco's ability to conclude litigation in the U.S. courts, supports application of a U.S. standard – *i.e.*, the standard applied by the courts at the seat of arbitration.

(ii)     Second, while the Tribunal does not accept Sysco's contention that the PI Request is a claim on the merits, the Tribunal considers that, in exercising its discretion on selection of the standard, there is some force in Sysco's position, quoted above, that "*if Burford cannot articulate a credible claim for injunctive relief now under New York law, how could it possibly establish such a claim later?*" The point here is that the linkage

39

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

between the preliminary injunction on the one hand and, on the other, the declaration and permanent injunction (the actual merits claim) that Burford ultimately seeks under New York law is sufficiently strong that application of the New York law standard to the former phase is justified. Burford's foundational position in this arbitration is that it is entitled to prior-consent protection as a matter of contract interpretation under New York law. That position suggests, in the absence of any guidance under the LCIA Rules, the appropriateness of applying the New York law preliminary injunction standard when Burford seeks to preliminarily preserve its self-described "partial veto" right.

163.  For these reasons, the Tribunal concludes that the New York law preliminary injunction standard shall apply to the assessment of Burford's PI Request: "[t]o obtain a preliminary injunction, the moving party has the burden of showing 1) irreparable harm _and_ 2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation _and_ a balance of hardships tilting decidedly towards the plaintiff."[76]

      _VII.A.2 Is the Heightened Standard Applicable?_

164.  In _Tom Doherty Associates, Inc. v. Saban Entertainment, Inc._, 60 F.3d 27, 33-34 (2d Cir. 1995),[77] the Second Circuit stated that while a party seeking injunctive relief ordinarily must show the elements as stated above (paragraph 163):

      However, we have required the movant to meet a higher standard where (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.

165.  The _Tom Doherty_ Opinion further explains that:

---

[76] _Jayaraj v. Scappini_, 66 F. 3d 36, 38 (2d Cir. 1995) (RL-66) [emphasis in the original].

[77] Exhibit CLA 51; RL-101.

40

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 83 of 165   INDEX NO.
RECEIVED NYSCEF: 03/13/2023

- The typical preliminary injunction is prohibitory and gener-ally seeks only to maintain the status quo pending a trial on the merits, while a mandatory injunction is said to alter the status quo by requiring a positive act. The latter calls for the movant to demonstrate a greater likelihood of success.

- The prohibitory-mandatory distinction is not without ambi-guities.

- *"Confusion in breach of contract cases as to whether an injunction is mandatory or prohibitory may stem from the meaning of "status quo."*[78] *A plaintiff's view of the status quo is the situation that would prevail if its version of the contract were performed. A de-fendant's view of the status quo is its continued failure to perform as the plaintiff desires. To a breach of contract defendant, any in-junction requiring performance may seem mandatory."*

- Preliminary relief that requires a defendant to do more than what is required by a contract arguably alters the status quo and is mandatory, calling for the heightened standard.

- The heightened standard also applies where an injunction of either type will provide the movant with substantially "all the relief sought." However, this term, read literally, ap-pears to describe any injunction where the final relief for the plaintiff would simply be a continuation of the preliminary relief. The Court observes that the literal approach is hard to justify, as it means that the mere fact that the plaintiff would get no additional relief if it prevails at the merits trial could deprive it of interim relief. **Accordingly, the term must be supplemented** *"by a further requirement that the effect of the order, once complied with, cannot be undone. A height-ened standard can thus be justified when the issuance of an injunc-tion will render a trial on the merits largely or partly meaningless, either because of temporal concerns, say, a case involving the live televising of an event scheduled for the day on which preliminary relief is granted or because of the nature of the subject of the litiga-tion, say, a case involving the disclosure of confidential infor-mation. The bottom line is that, if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a*

---

[78] The Tribunal discusses below further New York law on the meaning of "status quo."

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

*defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard of substantial, or clear showing of, likelihood of success to obtain preliminary relief. Otherwise, there is no reason to impose a higher standard.*" (Emphasis added.)

> o   In *Tom Doherty*, the Court stated that the requested injunction requires the defendant to "*give a license that will continue to allow "the plaintiff "to publish the one work in question*" even if the defendant ultimately prevails. The injunction thus gives the plaintiff rights "that cannot be undone," and the heightened standard applies."

166.  The Tribunal thus needs to consider two elements – (i) "status quo" and (ii) "all the relief sought"/"cannot be undone" – to determine whether the New York law heightened standard applies in this arbitration.

167.  Burford usefully cites case law on how to determine the status quo.[79] The instruction[80] is to consider "*the last, actual peaceable uncontested status which preceded the pending controversy.*" Guided by this instruction, the Tribunal concludes that the preliminary injunction sought by Burford is prohibitory in nature pursuant to New York law, and the requested relief seeks to maintain the status quo. On this "status quo" basis, the heightened standard does not apply:

- Sysco was pursuing litigation prior to the issue arising over Burford's withholding of consent to settlement.
- Moreover, Sysco not only continues to litigate the antitrust cases against ███████████, pursuant to its contractual obligations,[81] but also continues to receive money from Burford to fund the litigation. Sysco's Mr. Flynn acknowledged this during cross-examination,[82] stating that

---

[79] Claimants' Reply, pp. 37-38; see also Claimants' Closing Submissions, Tr. 2/210-213.

[80] Exhibits CLA-53, CLA-54 and CLA-55.

[81] Exhibit C-1, Section 7.

[82] Tr. 1/187-188.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

drawing an instalment payment from Burford to fund the litigation is "a normal transaction."

- As Burford's counsel stated in closing,[83] *"the status quo is what the parties were doing before this arbitration began. And what the parties were doing before this arbitration began is that Sysco was actually litigating the cases that it had gotten USD 140 million on against* ████ *and* ████ *and it was the one that wants to alter the status quo by extinguishing those cases by executing the settlement."*

- When asked by the Tribunal whether the litigation included settlement negotiations, Burford's counsel observed[84] that Burford does not seek to enjoin Sysco from entering into settlement negotiations and has no right to do so: *"I don't think the effect of the injunction would be to preclude Sysco from entering into settlement negotiations. Indeed, if they go back to the settlement table and Sysco is able to obtain a better deal we would certainly not mind […] I don't think that that fundamentally changes the fact that executing the settlements would be a fundamental change in the status quo, because that just not negotiation, that's actually extinguishing the claims that were the collateral for our investment."*

- Sysco does not advance a status quo position in its Rejoinder that effectively rebuts the points made by Burford.[85] Sysco insists that that the preliminary injunction would require Sysco to take affirmative steps and therefore the injunction is mandatory. As set out above, there is nothing in the injunction request that would require Sysco to act outside the CPA or to deviate from the actions it has consistently been taking and must take pursuant to the CPA – *i.e.*, litigate zealously by using the funds supplied by Burford.

---

[83] Tr. 2/211-212.

[84] Tr. 2/212-213.

[85] Respondent's Rejoinder, §§ 41-44.

43

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b[d][3][i]) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 86 of 165

RECEIVED NYSCEF: 03/13/2023

168. Sysco's position on "all the relief sought"/"cannot be undone"[86] is more substantive than its status quo position, but it relies on a reading of *Tom Doherty* that does not sufficiently meet the central point in the Opinion, described above: once a license was given to the plaintiff through the injunction, nothing could be done at trial to prevent the plaintiff from continuing to use the license to publish the work in question. That is, the injunction would give the plaintiff rights that "cannot be undone." Sysco contends that, in this arbitration, it is a "virtual certainty" that the "settlement dynamic" that presently operates *"will be altered in one direction or another if the Tribunal grants the relief sought by Burford."* Sysco further asserts that this *"Tribunal is not likely to issue a final award for at least two years, if not longer, during which time there can be no reasonable dispute that the Proposed Settlements will no longer be available in their present form because one side perceives its position to be stronger (if they are not resolved altogether by then)."* Thus, Sysco concludes, the preliminary injunction would provide Burford with *"substantially all of the relief that it seeks – to permanently block the Proposed Settlements without ever proving satisfaction of its conditions precedent at a final merits hearing following disclosure and proper submissions – and for this reason alone, the heightened standard applies."*

169. Sysco is right that Burford wrongly points to 7 February 2023 as a relevant date for assessing whether the settlement proposals will disappear.[87] However, Sysco's above-described "cannot be undone" analysis is flawed in several respects, and therefore does not justify the application of the heightened standard. First, while the "settlement dynamic" could well be altered in the following months, the notion that settlement offers will disappear – and may be more attractive than the current Settlement Proposals – if the preliminary injunction is granted has not been demonstrated by Sysco (Mr. Flynn's evidence on this point is simply not persuasive, and neither is Sysco's account in its Opposition brief, paragraph 70.)

---

[86] Respondent's Rejoinder, §§ 39-40.

[87] Claimants' Reply, § 90.

44

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Second, while there were previous timetabling discussions between the Parties and the Tribunal that envisaged an arbitral proceeding leading to an award possibly two years from now, those discussions took place before the TRO was issued.  Third, Burford's counsel correctly observed in his opening submission[88] that Burford sought expedited proceedings when bringing this dispute to the LCIA, "*in part in recognition of the fact that both parties have an interest in knowing what their rights are, and in having certainty around whether these settlements can go forward or not.*"

170.  This last point, Burford's counsel's argument that Burford initially sought expedited proceedings is, in the Tribunal's view, pertinent to the question of timing of the merits procedure.  As indicated at the conclusion of this Order, the Tribunal considers that a fast-track proceeding at the merits phase is feasible;[89] the merits phase need not entail the trial of an antitrust case. The Parties' procedural rights would need to be, and can be, fully protected in a fast-track process.

171.  Because the Tribunal plans to institute a fast-track timetable, Sysco's "cannot be undone" position lacks sufficient strength to trigger application of the heightened standard.  That is, if Burford does not prevail at the merits hearing, which the Tribunal will seek to hold in September 2023, Burford's consent right will not equate to limited veto right, and Sysco's ability to enter into a settlement will be unconstrained -- though it may still be liable in money damages to Burford.  Moreover, as indicated above and discussed further below, the issuance of a preliminary injunction would not prevent Sysco from continuing to engage in settlement negotiations and to potentially bring new and more attractive proposals to Burford.

---

[88] Tr. 1/22.

[89] Burford's counsel, in his closing submission, also stated (Tr. 2/187-188) that a final merits hearing does not need "*to be long in the future.* [...] [W]*e think that the narrow issue for resolution at a merits hearing is whether claimants have acted reasonably in light of the information that they had at the time of their decision.* [...] [W]*e are well down the road to a full vetting of that merits issue.*"

45

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 88 of 165

172.  For the foregoing reasons, the ordinary preliminary injunction standard under New York law, and not the heightened standard, shall apply to the PI Request lodged by Burford.

*VII.A.3 Irreparable Harm*

173.  Sysco makes the following points on the New York law definition of irreparable harm:[90]

- This element is the single most important prerequisite for the issuance of a preliminary injunction.
- The movant must establish this element at the outset before other requirements for an injunction will be considered.
- To establish irreparable harm, the movant must show that the harm alleged is not capable of being remedied by money damages.
- Where money damages may provide adequate compensation, a preliminary injunction should not be issued.
- Economic loss that is compensable by money damages does not constitute irreparable harm.
- The movant must also show that the harm alleged is likely and imminent, not remote or speculative.
- A finding of irreparable harm is not warranted based on the alleged difficulty of calculating damages.
- Each case cited by Burford for the proposition that courts regularly grant injunctions to protect what are ultimately financial interests in fact involves decidedly non-financial interests, such as loss of customers, loss of goodwill or business opportunities, major business disruption, artistic success, trade name confusion, and threats to reputation, misappropriation of trade secrets, disclosure of confidential information.
- None of Burford's cases found protection of financial interests to be a sufficient basis for granting injunctive relief.

---

[90] Respondent's Opposition, §§ 81-85; Respondent's Rejoinder, §§ 58-60; Opening Statement Slides, p. 13, citing Exhibits RL-64, RL-73.

46

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 5                                                                RECEIVED NYSCEF: 03/13/2023

174. Burford makes the following points on the New York law defini-
tion[91] (Burford's primary position is that international arbitral prac-
tice should be the guide, rather than New York law, but the Tribunal
has already rejected Burford's arbitral practice position and there-
fore does not address irreparable harm under Burford's primary po-
sition):

- Sysco's view of irreparable harm is notably narrow.
- Under New York law, a preliminary injunction will be de-
  nied on the ground of existence of an adequate remedy at
  law only when the legal remedy is as satisfactory as an in-
  junction.
- The only way to render a veto right truly viable is to enforce
  it.
- Where one party to a contract disregards the other party's
  right to veto certain transactions, the injury is irreparable as
  a matter of law.
- Denial of the right to participate in the management of a
  company constitutes irreparable harm.
- New York courts often hold that disclosure of confidential or
  proprietary information to third parties constitutes irrepara-
  ble harm.
- New York courts regularly grant injunctions to protect what
  are ultimately financial interests because a damages remedy
  would not be as satisfactory as an injunction preventing the
  harm in the first place.[92]
    - A licensee threatened with unlawful termination of a
      licensing agreement can show irreparable harm
      through loss of customers, goodwill or business op-
      portunities, even though these losses are financial in
      nature and could also be remedied by after-the-fact
      damages.

---

[91] Claimants' PI Request, §§ 66-85; Claimants' Reply, §§ 97-101; Claimants' Closing Sub-
mission, Tr. 2/193-196.

[92] As the Court in *Tom Doherty* put it (60 F. 3d at 38): *"These cases stand for the general prop-
osition that irreparable harm exists only where there is a threatened imminent loss that will very
difficult to quantify at trial."*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

    o   Misuse of trade secrets constitutes irreparable harm even though the victim can seek damages for their loss. The same is true for defamation, even though the victim could sue for damages for injury to reputation.

    o   There are many similar instances.[93]

    o   The law does not reduce every legal right to dollars and cents.

    o   The simple argument that financial harm is never irreparable is wrong.

    o   New York courts are particularly willing to find irreparable harm where the harm to the plaintiff will be felt *vis-à-vis* third parties.

175.    The Tribunal has reviewed all the case law submitted by the Parties but confines its comments here to certain Opinions that assist most directly in understanding the concept of "irreparable harm" under New York law and how the concept should be applied in the context of this case.

176.    Sysco adduces several cases in which New York courts emphasize that the "irreparable harm" element is a very high bar. For example, in *Ahmad v. Long Island University*, 18 F. Supp. 2d 245 (E.D.N.Y. 1998),[94] the Court notes that in order to obtain the extraordinary remedy of a preliminary injunction, the movant must prove that the injury it will suffer is likely and imminent, not remote or speculative, and is not capable of being fully remedied by money damages. Thus, in the specific circumstance of termination of employment, the District Judge Spratt (Eastern District of New York) observed that irreparable injury can only be established by a clear demonstration that the terminated employee has little chance of securing future employment, has no personal or family resources, has no private unemployment insurance, is unable to finance a loan privately, is ineligible for public assistance, and there are other compelling circumstances weighing heavily in favor of interim relief. The terminated employee must literally find himself being forced into the

---

[93] Claimants' Reply, § 101 and fn. 183.

[94] Exhibit RL-63.

48

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:22-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 91 of 165

streets or facing the specter of bankruptcy for a court to find irreparable harm. Moreover, even though the employee will suffer some loss of reputation, since the lawsuit ultimately seeks damages for discrimination, the employee cannot demonstrate that his alleged injury is not capable of being fully remedied by money damages. The state court (Appellate Division) reiterates this final point in *Family-Friendly Media, Inc. v. Recorder Television Network*, 74 A.D.3d (N.Y. App. Div.2d Dep't 2010):[95] economic loss *"which is compensable by money damages does not constitute irreparable harm."*

177.   Again, in the employment context, and predating *Ahmad*, the Second Circuit (*Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995))[96] has stated that if monetary damages may provide adequate compensation, there can be no preliminary injunction.

178.   Outside the employment context, New York courts have been adamant in emphasizing the general proposition that irreparable harm is a certain and imminent harm for which a monetary award does not compensate. It exists where, but for the grant of equitable relief, *"there is a substantial chance that the parties cannot be returned to the positions they previously occupied."* See *Carson Optical, Inc. v. Alista Corporation*, 2019 WL 3729460 (E.D.N.Y. 2019).[97] While the courts have also observed that harm may be irreparable where *"the loss is difficult to replace or measure,"* the positions "previously occupied" are not necessarily to be taken literally: in *Ferraro v. Realty USA*, 209 WL 1098664 (N.D.N.Y. 2009),[98] the Northern District observed that the plaintiffs seeking to enjoin the sale of investment properties, not personal homes, *"have failed to show how monetary damages would not render them whole, if they were ultimately to succeed on the merits. [...] Plaintiffs have not proffered nor is it clear to this Court why money damages would not be adequate compensation."*

---

[95] Exhibit RL-64.

[96] Exhibit RL-66.

[97] Exhibit RL-67.

[98] Exhibit RL-72.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

179. Sysco relies on *Union Capital LLC v. Vape Holdings Inc.*, 2016 WL 8813991 (S.D.N.Y. 2016),[99] for the proposition that alleged difficulty in calculating damages does not warrant a finding of irreparable harm.[100] However, the Tribunal notes that *Union Capital* does nothing more than indicate that proposition by repeating a previous order for which the context and parties' arguments (and potentially relevant authority) are not given: SDNY Judge Sullivan simply states that for "*the reasons stated in its order denying Plaintiff's request for a temporary restraining order, the Court rejects Plaintiff's arguments that a finding of irreparable harm is warranted based on the alleged difficulty of calculating damages.*"

180. However, this question of the difficulty of calculating damages was previously addressed in some detail by SDNY Judge Conboy in *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989).[101] The Court notes (citing and quoting NY Jur.) the general rule that "[o]*rdinarily, the innocent party to a breached contract is entitled only to compensatory damages obtainable in an action at law,*" but also states that "*if, due to exceptional circumstances, an action at law cannot afford adequate relief, equity will specifically enforce the contract, if its terms are such that they do not impose upon the court any difficulty in enforcement, and the contract in other respects does not violate the rules pertaining to actions for specific performance, and there are no facts and circumstances connected with the inception or continuance of the contract which would render it contrary to equity to require its specific performance.*"

181. The plaintiff in *USA Network* conceded that the issue was not corporate life or death but argued the "ripple effect" or consequential damages of the defendant's actions, which it contended "*will have a real but incalculable effect on its status and performance in the industry vis a vis other cable systems operators, advertisers and program suppliers.*"

---

[99] Exhibit RL-73.

[100] Tr. 2/238.

[101] Exhibit RL-68.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

In this regard, the Court acknowledged that "*if the court were convinced that USA* [the plaintiff] *would suffer the so-called ripple effect injuries to any significant degree, injunctive relief would, perhaps, be appropriate. Where damages are theoretically available but, because of the nature of the injury are not measurable with a reasonable degree of accuracy or are otherwise impractical, the legal remedy is inadequate.*" The court added that it "*must be emphasized, however, that almost every contract breach will generate some consequential damages that are difficult to calculate.*" Judge Conboy quoted previous Seventh and Second Circuit authority in explaining that the "*irreparability that comes from the difficulty of proving damages is not of the same order as that which comes from the uncollectibility of a damage judgment.* [. . .] *Consequently, the necessity in many cases of making an informed, perhaps rough, approximation of damages does not render the legal remedy inadequate. It is only where damages are <u>clearly</u> difficult to assess and measure that equitable relief is appropriate.*" (emphasis in the original.)

182. The Court in *USA Network* found that the plaintiff was unable to make the required showing of ripple effect damages. However, the Tribunal considers that this Second Circuit case does diminish the reliability of Sysco's insistence on the flat proposition that the difficulty in calculating damages will not support a finding of irreparable harm. Based on *USA Network*, if Burford has demonstrated that damages are clearly difficult to assess and measure and the existence of ripple effect damages, Burford can be found to have satisfied the irreparable harm element of the New York law preliminary injunction test.

183. Many cases relied on by Burford appear to be less pertinent to the PI Request than *USA Network*.[102] While Burford's counsel[103] points to findings of irreparable harm in circumstances where there are disputes among commercial entities for what may *ultimately* be considered financial losses, the issue always remains whether monetary damages at trial will constitute adequate compensation. A

---

[102] Exhibit RL-68.

[103] Tr. 2/194-195.

51

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 94 of 165   INDEX NO.

number of cases cited by Burford discuss circumstances that are, for the most part, substantially different from those of the present dispute and therefore do not assist in providing guidance to this Tribunal on the critical question of whether, absent the relief sought by Burford, Burford would be able to obtain adequate compensation if it prevails at a merits trial. Certain of Burford's cases, however, do provide useful general analyses of the irreparable harm element, and, together with *USA Network,* inform the Tribunal's assessment of the PI Request. *USA Network* remains singularly important in outlining the potential significance of "ripple effect" damages, which is effectively the "third-party harms" position advanced by Burford and its expert, Professor Issacharoff.

184. Among the cases relied on by Claimants that illustrate the above points, including those which are more helpful in providing irreparable harm guidance in the context of the PI Request, the Tribunal briefly discusses the following:

(i)    CLA 17: *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101 (2d Cir. 2003).
       The court found the breach itself to constitute a non-compensable injury, and therefore the compensable damages that might flow from the breach did not negate the existence of any irreparable harm. The breach concerned denial of the plaintiff's right to exercise a minority veto and thereby preserve the balance of power in the parties' joint venture. While the existence of a veto right suggests a potential comparison to the present dispute, the court's holding was specific and narrow: *"We hold only that the denial of bargained-for minority rights, standing alone, may constitute irreparable harm for purposes of obtaining preliminary injunctive relief where such rights are central to reserving an agreed-upon balance of power . . . in corporate management."* The right to participate in the management of a company is only distantly analogous to the veto right claimed by Burford in this arbitration. However, see below the discussion of *Empresas Cablevision,* an Opinion

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

by S.D.N.Y. Judge Rakoff, which extends the holding in *Wisdom Import* to denial of a veto right in circumstances that are much closer to the present arbitration.

(ii)    CLA 18: *CanWest Global Communications Corp. v. Mirkaei Tikshoret Ltd.*, 9 Misc.3d 845 (2005).

This case also concerns loss of a right to participate in the management of a company, where the counterparty has proceeded to fire key employees and change the direction of the company. Again, these circumstances are distant from those in the present arbitration.

(iii)    CLA 16: *Gerald Modell Inc. v. Morgenthau*, 196 Misc.2d 354 (2003).

Since this case concerns possession of jewelry and a possessory lien, it is not comparable to the present arbitration.

(iv)    CLA 12: *Willis of New York, Inc. v. DeFelice*, 299 A.D.2d 240 (2002).

*Willis of New York* potentially bears on the present case, in that the court states that a loss of business (due to solicitation of plaintiff's clients) may be impossible, or very difficult, to quantify, in the absence of an injunction, and therefore the necessary showing of irreparable harm has been made out. This Opinion casts doubt, at very least, on Sysco's position that difficulty in calculating damages cannot support an irreparable harm claim.

(v)    CLA 13: *Invesco Institutional (N.A.), Inc. v. Deutsche Inv. Management*, 74 A.D.3d 696 (2010).

*Invesco* adopts the *Willis of New York* "impossible or very difficult to quantify" basis for irreparable harm, though in the trade secret context, which is very distant from the present arbitration.

(vi)    CLA 14: *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999).

*North Atlantic* is also a trade secret case, which stands for the proposition that a loss of trade secrets cannot be measured in

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

money damages – again, this is distant from the circumstances of the present arbitration.

(vii)   CLA 42: *Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp.2d 616.

While Burford relies heavily on this case, the context – a bargained-for right to corporate control is only tangentially related to the present claimed-for limited veto right over settlement.

(viii)  CLA 43: *Empresas Cablevision, S.A.B. de C.V. v. JPMorgan Chase*, 680 F. Supp.2d 625 (S.D.N.Y.).

As noted above, Judge Rakoff relies on and extends *Wisdom Import* in a manner that is relevant to the present arbitration. The pertinent passage is as follows:

*"For the foregoing reasons, the Court concludes that plaintiff has shown a likelihood of success on the merits of its claim that JP Morgan breached its implied covenant of good faith and fair dealing under the Credit Agreement. Further, the Court finds that Cablevisión has shown a likelihood of irreparable harm if preliminary injunctive relief is not granted. Cablevisión has made such a showing here because the aforementioned features of the Participation Agreement emasculate Cablevisión's right to veto assignments of the loan, and this sort of injury is irreparable as a matter of law. See Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 114 (2d Cir. 2003). When a party has "expressly negotiated for and received the right to veto certain transactions with which it disagreed before those transactions commenced, a right that is irretrievably lost upon breach, and may not be compensable by non-speculative damages," "the only way to render* [such a] *provision truly viable is to enforce it." Id.; see also, e.g., CDC Group PLC v. Cogentrix Energy, Inc.,* 354 F.Supp.2d 387, 393-94 (S.D.N.Y. 2005) (applying *Wisdom Import Sales* to find irreparable harm in defendant's efforts to sell majority interest in subsidiary to a third party in violation of a letter agreement barring such a sale for seven years). Moreover, independent of this legal doctrine, there is as a factual matter a strong likelihood of irreparable harm arising from Inbursa's ability to seek and

54

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.) UNASSIGNED

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 97 of 165 INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 03/13/2023

obtain Cablevisión's confidential business information un-
der the Credit Agreement and then use it to Cablevisión's
detriment. *See, e.g., Muze, Inc. v. Digital-on-Demand, Inc.*, 123
F.Supp.2d 118, 130-31 (S.D.N.Y. 2000) (unauthorized use of
proprietary information for competitive advantage held to
cause irreparable harm).

(ix)     CLA 51: *Tom Doherty Associates, Inc. v. Saban Entertainment,
Inc.*, 60 F.3d 27 (2d Cir. 1995).

The Tribunal discussed *Tom Doherty* above, for the guidance
it provides on the heightened standard. In terms of the ir-
reparable harm element, *Tom Doherty* is important, as the
Second Circuit provides a description of New York cases that
stand, when a party is threatened with the loss of a business,
*"for the general proposition that irreparable harm exists only where
there is a threatened imminent loss that will be very difficult to
quantify at trial"* – again casting doubt on one of Sysco's pri-
mary propositions that difficulty in calculating damages can-
not serve as a basis for satisfying the irreparable harm ele-
ment. The Second Circuit adds, in another potentially rele-
vant passage to this arbitration, that it would be unfair to
deny an injunction to the plaintiff on the ground that money
damages are available, only to confront the plaintiff at the
merits trial with the rule that damages must be based on
more than mere speculation.

(x)      CLA 59: McKinney's CPLR § 6301. Grounds for preliminary
injunction and temporary restraining order.

The hornbook discussion in McKinney's provides the useful
reminder that an order on a preliminary injunction does not
establish the "law of the case." McKinney's also provides for
examples of New York court cases in which the holdings are:
(a) the legal remedy of damages may be inadequate if the
damages cannot be easily measured or promptly attained;
and (b) to be adequate, the legal relief should be as practica-
ble and efficient as an equitable remedy.

(xi)     CLA 60: *Orange & Rockland Utilities, Inc. v. Amerada Hess
Corp.*, 67 Misc.2d 560 (1971).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK (See below.) UNASSIGNED
NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 98 of 165

INDEX NO.
RECEIVED NYSCEF: 03/13/2023

This case concerns a public utility and is too remote from the circumstances of the present arbitration to be useful to the Tribunal.

(xii)  CLA 61: *Asa v. Pictometry Intern. Corp.*, 757 F.Supp.2d 238 (S.D.N.Y. 2010).

This case concerns unauthorized use of a trademark, possible major disruption of a business, and the risk of disclosure and dissemination of trade secrets; like *Orange & Rockland*, it is clearly too remote to be of use in this arbitration.

185.  For the foregoing reasons, the Tribunal declines to follow the central propositions advanced by either side on the question of the definition of the irreparable harm element, and instead determines that certain New York court Opinions discussed above – in particular, *USA Network* (RL-68), *Empresas* (CL-43), and *Tom Doherty* (CL-5) – provide the relevant guidance for understanding and applying this element of the preliminary injunction test.

### VII.B  Has The PI Request Satisfied the New York Law Ordinary PI Standard?

*VII.B.1 Has Burford Shown that it will suffer irreparable harm absent the requested injunction?*

186.  Burford's irreparable harm case may be summarized as follows:[104]

- Absent an injunction, Sysco will execute the settlement agreements, thereby mooting Burford's ability to have its "consent" case heard and turning the arbitration into a damages case.

- An injunction is therefore necessary to preserve the status quo.

- A remedy at law (*i.e.*, recovery of damages) would not be as satisfactory as an injunction, preventing harm in the first place (the harm being the loss of Burford's consent veto).

- The consent veto cannot readily be reduced to damages, just as

---

[104] See, *e.g.*, Claimants' Reply, pp. 38-64; Tr. 2/192-197, 209-210.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-PGG Document 1-3 Filed 03/23/23 Page 99 of 165

RECEIVED NYSCEF: 03/13/2023

issue of trade secrets cannot readily be reduced to damages, *"even though the victim can seek damage for their loss."*

- Burford bargained for the right to participate in the conduct of Sysco's claims as a consequence of Sysco's prior breach of the anti-assignment provisions of the CPA. Money damages could not fully remedy the loss of that participatory right. The fact that the purpose of the consent right is protection of Burford's monetary interests does not mean that money damages can fully compensate for the loss of the consent veto.

- Moreover, financial harm can be considered irreparable harm.

- Courts are particularly willing to find irreparable harm where the harms to the plaintiff will be felt *vis-à-vis* third parties.

- Because of the defendants' Judgement Sharing Agreement ("JSA") in the *Broilers* litigation, the settlements would give the other JSA defendants a contractual right to avoid joint-and-several liability that could not be undone. Giving Burford a damages claim against Sysco could not adequately remedy the third-party harm.

- The settlements would irreparably alter the settlement market. As Professor Issacharoff describes it, the settlements would have the effect of setting the baseline expectation for settlement values, and the ripple effect of the settlements on the portfolio of potential settlements could not be repaired through money damages at trial.

  o That is, apart from the cascading effects of settlement on the claims against ▮▮▮▮ and ▮▮▮▮ and the other JSA defendants, the entire settlement market would be harmed.

  o Where there are harms that go beyond the contract between the parties and have large external effects, New York law recognizes the difficulty in quantifying such harms and accepts the appropriateness of a preliminary injunction.

- The existence of the ▮▮▮▮▮▮ in the proposed settlements can

57

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-RGG  Document 3  Filed 03/23/23  Page 100 of 165

easily be circumvented and therefore does nothing to diminish the harms posed by the Sysco settlement proposals.

o   Further, Mr. Baer, Sysco's expert, described the ▮▮▮ ▮▮▮ as a "comfort paragraph";[105] he had to accept that  ▮▮. He could not identify a circumstance in which there might be ▮▮▮▮▮▮▮▮▮▮.

o   In any event, if Sysco settles at an undervalued amount, its leverage in other cases will be diminished.

187.   Sysco's argument against the existence of irreparable harm runs as follows:[106]

- Economic loss that is compensable by money damages does not constitute irreparable harm.

- Further, the alleged injuries must be imminent and not speculative.

- Burford is a litigation funder; its only interest is maximizing the return on its investment. It is a passive provider of external capital. Its entitlement and its interest start and end with money. Therefore, there can be no viable claim of irreparable harm.

- The only harm that Burford can conceivably suffer from the settlements would be a reduction in the economic value of the claims that might have been obtained absent those settlements. But it is axiomatic that economic loss does not constitute irreparable harm.

- Burford's attempt to recast part of its harm as non-economic is unavailing. The JSA joint-and-several liability issue, giving the JSA defendants access to the settlement positions, the deprivation of the so-called "right to participate" – these are still only

---

[105] Tr. 2/58.

[106] See, e.g., Respondent's Opposition, pp. 37-46; Respondent's Rejoinder, pp. 25-33; Tr. 1/38-40.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED
Case 1:23-cv-02489-RGG  Document 1-3  Filed 03/23/23  Page 101 of 165  INDEX NO.
NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 03/13/2023

economic, and could be fully compensated through monetary damages.

   ○  If Sysco 

   ○  Any impact of the JSA is a reality all plaintiffs have to live with, now and forever in the future.

   ○  In any event, Sysco's speculative JSA disadvantage through reduction of settlement leverage is, at most, purely economic and compensable with monetary damages.

- Burford's claim that the knock-on effect of the settlements would make it difficult to calculate harm is not demonstrated – Burford has refused to produce its models purporting to value claims. Moreover, any other claims that Burford has invested in are ones for which Burford has already calculated the expected future value. Even if Burford could establish difficulty in calculation, the irreparable harm element would not be met: courts have repeatedly held that economic harm does not transform into non-economic harm just because damages may be difficult to calculate.

- Burford's alleged prior consent right is purely monetary. Burford's business does not concern participating in management of a company, or the like. Its only participation "right" is recovery of money. Again, the harm would be purely economic.

- Burford's attempt to rely on cases such as *Orange & Rockland Utilities* underscores that the courts focus on non-financial interests in assessing whether irreparable harm exists.

- Burford's alleged harm is speculative. Burford can do no more than hope that Sysco will either obtain better settlements in the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

future or obtain a better outcome at trial. This is inherently spec-
ulative. Further, Burford's theories are self-contradictory. After
arguing that the settlements would create a benchmark that
other defendants would rely on, Burford now argues that the
benchmark is illusory, ███████████████████████████
████████████████████████████████████████. But this
means that Burford's benchmark concern no longer applies, and
that is the only knock-on concern that Burford identifies regard-
ing the settlements. Burford can only offer conjecture that set-
tlements with other defendants would necessarily be worse if
Sysco enters into the proposed settlements.

188. As discussed in Section VII.A above, in the context of this arbitra-
tion and the competing positions of the Parties regarding the irrep-
arable harm element, *USA Network*, *Empresas* and *Tom Doherty*
Opinions provide a useful framework for evaluating the positions.

189. The Tribunal has already observed that under New York law eco-
nomic harm may constitute irreparable harm in certain circum-
stances, and difficulty in calculating damages may support an irrep-
arable harm assessment.

190. The Tribunal, by a majority, determines that, absent preliminary in-
junctive relief, a merits trial at which Burford could only obtain
damages would not afford Burford adequate relief. Further, it
would not be contrary to equity to enforce, at least on a preliminary
basis, specific performance of Burford's prior consent right (see be-
low the section on *prima facie* case on the merits). The principal con-
siderations that lead the Tribunal majority to reach this conclusion
are expressed most clearly and persuasively in Professor Issa-
charoff's two expert reports, where he explains the "ripple effect"
of the settlements on the entire portfolio of the Parties' protein anti-
trust cases. 

███, Professor Issacharoff's Second Report, at paragraphs 5-10,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) UNASSIGNED

NYSCEF DOC. NO. 5

persuasively demonstrates that a settlement that undervalues Sysco's claims would undermine Sysco's settlement position in other cases, ███████████████████████████, and customary contractual damages would not constitute adequate compensation.[107]

191.   Here, the Tribunal, by a majority, considers that Burford has met its burden of showing that Sysco's proposed settlements would in fact affect the settlement market, and if the proposed settlements undervalued the claims, the ripple effect would be adverse and irreparable to Burford's interests.  Further, Burford has shown that the complexities associated with this ripple effect would be extremely difficult to quantify at trial. Sysco's argument that quantification should not be regarded as difficult because Burford has modelled the expected value of claims that it invests is flawed on at least two grounds (i) customary contractual damages are highly unlikely to cover speculative future damages claims involving third parties; and (ii) modelling investment decisions is not equivalent to modelling settlement values in an uncertain and to some degree non-

---

[107] Paragraphs 5-10 of Issacharoff 2nd are lengthy, and the Tribunal refers to them without quoting them here. By way of thumbnail summary, Professor Issacharoff comments that: (i) Sysco's experts do not contest the fact that the proposed settlements will affect the settlement market; (ii) Sysco's experts accept the core proposition that the settlement market conditions the value of all outstanding claims; (iii) however, they misstate the scope and effect of ████████████████████████████████████████████████████████

████████; (v) so, ██████ and the settling plaintiffs can easily circumvent ██████; (vi) as for the baseline referred to by Sysco's experts arising from other settlements, we do not know what that baseline is on a global basis; (vii) thus, ████████████████████████████████████; (viii) even assuming that the baseline has already been set for the chicken market, an undervalued settlement with ██████ would be a signal to the settlement market and would affect Sysco's ability to settle other cases; and (ix) if other plaintiffs have settled at undervalued levels, this would support Professor Issacharoff's opinion rather than detract from it. See also the cross examination of Mr. Flynn (Tr. 1/247-252) where Mr. Flynn accepted, *inter alia*, (i) ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 104 of 165   INDEX NO.

transparent settlement market, and again would undoubtedly be re-
garded by the trial court as an exercise in speculation. Ms. Daley, on
cross-examination,[108] explained this last point as follows:

> Our calculations are on a risk-adjusted basis, so they are not
> – they are not static expectations of returns.  So, yes, if you
> just gave us that number at a point where the case was re-
> solving favourably, and there was no longer a risk of loss,
> then that number factors in a risk of loss that's no longer
> relevant at that point.  So it matters when something re-
> solves, it matters the context, it matters who else is resolv-
> ing at the time, has somebody gone to trial.  There are too
> many future unknowns, and then other market players will
> settle, and we will have no access to that information.  We
> have some limited access to information from our counter-
> parties, but we don't know what the whole market is get-
> ting.  So you can say that our best guess is our money dam-
> ages, but it's a guess, and my understanding is that's not
> how we calculate actual damages in litigation.

192.    Sysco's response to this is twofold: (a) it is speculation on Burford's
        part that Sysco could obtain a better settlement or at least do better
        at trial; and (b) if damages are speculative, Burford would rightly
        be denied such damages at trial.  The Tribunal refers to the section
        below, on "likelihood of success on the merits," for Burford's *prima
        facie* demonstration that its withholding of consent to the settlement
        proposals was not unreasonable, which replies to point (a).

193.    As to response (b), Judge Rakoff's *Empresas* Opinion strongly indi-
        cates that the inadequacy of non-speculative damages would also
        support equitable relief.  As set out above, in *Empresas* (citing a 2005
        S.D.N.Y. Opinion), the Court observed that where a party has ex-
        pressly negotiated for and received the right to veto certain transac-
        tions before those transactions commenced, a right that is irretriev-
        ably lost upon breach and may not be compensable by non-specu-
        lative damages, specific performance of the veto right is justified.
        While Burford's asserted veto right is not comparable to a right to
        participate in company management decisions, *Empresas* suggests

---

[108] Tr. 1/153-154.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

that it can nonetheless serve to justify preliminary equitable relief, if paired with inadequacy of non-speculative damages. The inadequacy of non-speculative damages in view of Professor Issacharoff's analysis is apparent. As the Second Circuit observes in *Tom Doherty*, it would be unfair to deny an injunction to the plaintiff on the ground that money damages are available, while confronting the plaintiff at the merits trial with the rule that damages must be based on more than mere speculation.

194. To summarize, the Tribunal, by a majority, considers that Burford has satisfied the irreparable harm element for the following reasons:

    i. Absent the injunction, Sysco will execute the settlement proposals, which would overturn the status quo and permanently deprive Burford of the ability to seek specific performance of its prior consent contractual right.

    ii. Absent the injunction, Burford, principally through its expert, Professor Issacharoff (whom Sysco chose not to cross-examine at the PI Hearing), has shown the likelihood of an adverse ripple effect (assuming an undervalued settlement) on the entire portfolio of protein antitrust cases in terms of Burford's interest in the value of those cases, which would include the involvement of third parties (the JSA defendants, for example).

    iii. At the merits trial, the breach of contract damages that Burford would conceivably be able to prove would not constitute adequate compensation for the harm suffered.

    iv. Under well-established New York law precedent, the above reasons justify preliminary injunctive relief.

195. Since the Tribunal finds, by a majority, that Burford has demonstrated the irreparable harm element of the preliminary injunction standard, the Tribunal now turns to the further two elements in the standard: *prima facie* case on the merits, and balance of equities.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (SEE BELOW) UNASSIGNED

NYSCEF DOC. NO. 5

Case 1:23-cv-02489-RGG  Document 1-3  Filed 03/23/23  Page 106 of 165  INDEX NO.

RECEIVED NYSCEF: 03/13/2023

*VII.B.2 Has Burford Demonstrated a Likelihood of Success on the Merits?*

196.    Amendment No. 1 to the Second Amended CPA[109] contains the following relevant provisions for purposes of analysing this element of the New York preliminary injunction standard:

i.    Section 6(e) states that Burford shall receive ██ and Sysco ██ of all remaining Proceeds (in relation to a judgment or award against or settlement with an Adverse Party in a Claim).

ii.   Section 7, headed "Maximization of Litigation Outcome; Non-Circumvention" (emphasis in the original), states as follows:

"(a) In addition to and without limiting the obligations of the Counterparty to the Capital Providers pursuant to Section 5.3(b) of the Existing Agreement, the Counterparty shall take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds.

(b) Section 5.3(b)(v) of the Existing CPA shall be amended and restated in its entirety as follows:

(v)      shall provide immediate notice by email to the Capital Providers of any settlement offer made by the Adverse Party and shall not accept a settlement offer without the Capital Providers' prior written consent, which shall not be unreasonably withheld, provided, however, that the Capital Providers (and their respective Affiliates) shall have no right to exercise control over the independent professional judgment of its Nominated Lawyers and shall not seek to impose a commercially unreasonable result with respect to settlement;

(c) The Counterparty shall not, directly or indirectly, by any acts or omissions circumvent, or attempt to circumvent, the obliga-

---

[109] Exhibit C-1.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

tions set forth in this paragraph 5 or in Section 5.3(b) of the Existing CPA or the intent of the transactions contemplated by the 2021 Amended CPA."

197.   Two recitals in the Second Amended CPA[110] may bear some relevance:

    i.   "WHEREAS, the Capital Providers are each passive providers of external capital and have not become owners of, partners in, or parties to the claims or any part thereof or acquired any rights as to their control or resolution: consequently, while the Capital Providers will receive certain information with respect to the Claims and consult with the Counterparty thereon, the Counterparty remains in full control of the assertion and resolution of the claims; and

    ii.   WHEREAS, the parties are sophisticated and are entering into this Agreement freely and entirely of their own volition following independent legal advice from experienced counsel, and do not believe that this Agreement or the transactions it contemplates are inconsistent with any relevant law or public policy."

    iii.   "Claim Resolution" is a defined term (see "Exhibit A") in Exhibit C-2; it "means either full and final settlement of a Claim or the entry of a final, non-appealable and enforceable award or judgement, in either case resolving with prejudice all aspects and elements of a Claim." However, this defined term does not appear in the recital quoted above.

    iv.   Section 5.3(b)(v) in Exhibit C-2 states that the Capital Providers (and their respective Affiliates) "shall have no right to exercise control over the independent professional judgment of the Counterparty and its Nominated Lawyers and shall not seek to coerce the Counterparty and its Nominated Lawyers with respect to settlement." The new Section 5.3(b)(v), quoted above,

---

[110] Exhibit C-2.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

only refers to the independent professional judgment of the Nominated Lawyers.

v.  The relevant authorities for the role of recitals in contractual interpretation under New York law are, *inter alia*, *Williams v. Barkley*, 165 N.Y. 48 (N.Y. 1900),[111] and (relying on *Williams*) *Jones Apparel Group v. Polo Ralph Lauren*, 16 A.D.3d 279 (2005).  These Opinions state generally that contract recitals indicate only background information and form no part of the operative part of the contract.  Where a recital is inconsistent with an operative covenant or promise and cannot be harmonized, the operative covenant or promise must prevail, if it is clear and unambiguous.  If the operative covenant or promise is ambiguous and the recital is clear, the recital would govern the construction.

198.  The initial question for the Tribunal is whether there is a *prima facie* basis for concluding that Section 7 of Exhibit C-1 (Amendment No. 1 to the Second Amended CPA) is unambiguous and provides Burford with a prior consent or limited veto right over the settlement proposals, such that Burford is entitled to prevent Sysco from entering into the proposed settlements.  This is also the initial hurdle for Burford establishing a likelihood of success on the merits of its claim.[112]

199.  Without pre-judging the subsequent merits determination of this issue, the Tribunal majority considers, on a preliminary basis, that Section 7 of Exhibit 1 unambiguously provides for the prior consent right or veto that Burford claims:

i.  Section 7(a) states that Sysco shall take reasonable and appropriate actions to maximize proceeds, giving priority to cash proceeds;

ii.  Section 7(b) states that Sysco shall immediately notify Burford of any settlement offer and Sysco "shall not accept a settlement

---

[111] Exhibit CLA-67.

[112] As quoted in paragraph 163 above (*Jayaraj v. Scappini*), this element is also described as "*sufficiently serious questions going to the merits.*"

66

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5                                                                  RECEIVED NYSCEF: 03/13/2023

Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 109 of 165

offer" without Burford's prior written consent, which shall not be unreasonably withheld.  As a *prima facie* matter, it is at least apparent that, on the basis of this language, Sysco cannot settle without Burford's prior consent. If there is a dispute whether consent has been unreasonably withheld, this can be the subject of an arbitration – but the plain meaning of the text at least indicates that Sysco must first decline to settle if Burford does not consent.

iii.    Section 7(b)(v) further states that Burford shall have no right to exercise control over the independent professional judgment of Sysco's lawyers and shall not seek the imposition of a commercial unreasonable settlement result, but this is not inconsistent with the previous clause, which establishes that Burford does have initial control over Sysco's ability to enter into a settlement agreement.  As between Sysco and its lawyers, Sysco can tell its lawyers to settle and Burford cannot tell Sysco's lawyers to settle or not settle – but Sysco can make and has made, as a *prima facie* matter, an agreement with Burford to cede to Burford the initial determination on whether to accept or reject a settlement offer.

iv.    Section 7(c) arguably reaffirms Sysco's obligation to adhere to Burford's prior consent right.

v.    Sysco's contractual construction argument is that the Section 7(b)(v) consent provision is simply a contractual obligation such that if Burford proves *"that we have entered into a settlement that we shall not have entered into by virtue of the contract, then my client has breached the contract, if they prove all these elements. And they have the remedies available under New York law for breach of a contract. That remedy is your expectation damages that you can prove [...]."*[113]

- However, as set out above, the Tribunal majority considers, at this stage of proceedings, that Sysco's reading of

---

[113] Tr. 1/30 (see also Respondent's Opposition, pp. 49-50: the CPA unambiguously provides that Sysco retains control over its claims).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

> Section 7(b)(v) and the CPA as a whole does not take into account the plain meaning of Section 7, and the arguable availability of specific performance as a remedy in relation to the consent provision in Section 7(b)(v).

200.  Since, as a *prima facie* matter, Section 7 of Exhibit C-1 is unambiguous, there is no need to refer to the "resolution of claims" recital in Exhibit C-2, quoted above, which, in referring to Sysco remaining in full control of resolution of claims, is arguably inconsistent with Section 7(b)(v) as an operative term in Exhibit C-1.

201.  Because the Tribunal majority concludes that Burford has shown, on a *prima facie* basis, that Section 7(b)(v) confers a prior consent or veto right on Burford, the Tribunal does not need to reach, and declines to address, the competing parol evidence adduced by the Parties concerning the meaning of this provision.

202.  However, determining the meaning of Section 7(b)(v) for preliminary injunctive purposes is only part of the decision that the Tribunal must make regarding the "likelihood of success" element of the standard for interim relief. Burford must still show, on a *prima facie* basis, that (i) CPA Section 7(b)(v) is enforceable as a matter of New York law and does not violate New York public policy; and (b) Burford's withholding of consent was not unreasonable.[114]

203.  The Tribunal expects to hear much more about the public policy issue at the merits stage. However, the battle of the experts (Wendel, Green, and Issacharoff for Burford and Steinitz for Sysco) at this stage leaves the Tribunal with making the determination that one set of professors has been more persuasive than the other in predicting what a New York court would do when faced with the questions

---

[114] For preliminary relief purposes, the Tribunal considers that Burford must demonstrate, *prima facie*, that its withholding of consent was not unreasonable; however, this requirement has no bearing on burden of proof issues at the merits stage. The Tribunal notes that it is unclear whether Sysco still pursues a "real-party-in-interest" challenge to the enforceability of the CPA (Respondent's Opposition, §§ 149-150). To the extent that Sysco maintains this position, the Tribunal majority considers that it has been successfully rebutted by Burford (Claimants' Reply, § 146; Issacharoff Second Report, §§ 20-22), for purposes of preliminary relief.

68

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

whether Burford's asserted consent right violates New York champerty law, or federal and state policy encouraging settlement of lawsuits, or public policy and legal ethics codes concerning a client's right to control litigation. With great respect for Professor Steinitz's scholarship, the Tribunal majority nonetheless considers that Burford's experts have successfully shown, at this preliminary stage, that it is likely that Burford's asserted consent right does not fall foul of any champerty or public policy or legal ethics barriers.[115] Professor Issacharoff's general statement in his Second Report identifies the foundational point: "*Every litigant has the autonomy to decide when and whether to settle. Every litigant also has the autonomy to contract that right away unless there is some legal or ethical barrier to doing so.*" Whatever remains of champerty does not appear to pose such a barrier and, as noted below, lawyers' ethical rules do not appear to be relevant given the language of Section 7(b)(v) (prohibiting exercise of control over counsel's independent professional judgment).

204. Professor Wendel, on cross-examination[116] explained that the "*really important thing that has to be protected in a litigation financing transaction is the fiduciary duties owed by counsel to the plaintiff.*" Professor Wendel also observed[117] that what funders are telling the market is that the attorney-client relationship will remain intact, with its integrity. Further,[118] as "*between a lawyer and client, the client has the exclusive authority to make settlement decisions,*" and Professor Wendel's further opinion is that if the funding agreement is with the

---

[115] As quoted above, a recital in the CPA states that the Parties are sophisticated and, having received independent legal advice from experienced counsel, "*do not believe that this Agreement or the transactions it contemplates are inconsistent with any relevant law or public policy.*" This recital is consistent with Section 29(k), which states that the Parties waive any claim or defense on the basis that the Agreement or contemplated transactions constitute champerty or contravene the public policy of any relevant jurisdiction. In view of the language of Exhibit C-1, Section 7(b)(v) – "*shall not accept a settlement offer without the Capital Providers' prior written consent*" – Sysco would at least have had reason to reassess champerty and public policy matters in March 2022 before signing Amendment No. 1 to the Second Amended CPA.

[116] Tr. 2/13.

[117] Tr. 2/26.

[118] Tr. 2/31-32.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

claim owner and not the law firm, "*there is not the same risk of impact on the lawyer's fiduciary duties to the client.*" As Professor Wendel elaborated,[119] "*it's certainly my opinion that a claim-owner can have a contract provision like the one with Burford and not run afoul of the concern that I was talking about earlier.*" Professor Wendel acknowledged that there is not a case on point, which is why an expert is needed. As he states in his Report,[120] his opinion, which no court has ruled on one way or the other, is that contractual delegation of control by the claim-owner to the investor is permissible.

205. On redirect examination,[121] Professor Wendel also explained that New York law has a very specific statutory definition of champerty. His further opinion is that Section 7(b)(v), as interpreted by Burford, does not come within that definition and therefore does not violate New York champerty law.

206. Professor Steinitz, on cross-examination[122] agreed that there is no New York court decision holding that a settlement consent right violates New York's champerty statute (she first limited her answer to the litigation funding context, but then said she was not aware of any case where a settlement consent right fact pattern has come before the court.) Professor Steinitz also accepted that she has opined that Burford's interpretation of Section 7(b)(v) violates the animating principles of the prohibition on champerty, but she did not know whether there is any indication in the legislative history of New York's champerty statute that settlement control was an animating principle.

207. Professor Steinitz also accepted[123] that a 2011 opinion from the New York City Bar Association states that a client may agree to permit a

---

[119] Tr. 2/34.

[120] Discussed at Tr. 2/37.

[121] Tr. 2/40.

[122] Tr. 2/128-147.

[123] Tr. 2/143-147.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-RGG  Document 3  Filed 03/23/23  Page 113 of 165  INDEX NO.

financing company to direct the strategy or other aspects of a law-
suit but, absent client consent, a lawyer may not permit the com-
pany to influence her professional judgment regarding strategy.
However, Professor Steinitz resisted the converse, which is that
with client consent, a lawyer may permit the company to influence
her decisions concerning settlement.  Her resistance was based on
the City Bar not being a regulator and not making a pronouncement
on what the law currently is.  She acknowledged that the document
was a formal opinion of the City Bar on the interpretation of New
York rules of professional conduct, but she reiterated that the City
Bar is not a regulator.

208.    Placing the experts' reports and examinations next to each other, in
particular those of Professor Wendel and Professor Steinitz, the Tri-
bunal majority concludes, on a *prima facie* basis, that Burford has
shown that it is likely that its interpretation of Section 7(b)(v) –
which, at present, has never in any analogous iteration been the sub-
ject of a New York court decision – would survive a challenge based
on champerty or public policy or legal ethics grounds.  Professor
Wendel has persuasively shown that the narrow New York law def-
inition of champerty would not capture Section 7(b)(v), and Profes-
sor Wendel and the New York City Bar have persuasively shown
that legal ethics rules pose no bar to Section 7(b)(v).  As for public
policy, Sysco has thus far not adduced an effective rebuttal to Pro-
fessor Issacharoff's opinion, quoted above, that every litigant has
the autonomy to contract away its right to decide whether to settle,
absent a legal or ethical barrier (no legal or ethical barrier having
been demonstrated by Sysco).  Accordingly, the Tribunal majority
finds that Burford's claim of likelihood of success on the merits on
the question of legal validity and enforceability of Section 7(b)(v) is
sufficiently shown.

209.    The remaining issue on this element of the New York preliminary
injunction standard is whether Burford has established, on a *prima
facie* basis, that its withholding of consent was not unreasonable.

210.    The pertinent points that Burford makes on this issue are summa-
rized at paragraph 148 of its Reply: (a) Burford's information was

71

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.



that the proposed settlements were significantly lower in value ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; (b) Sysco's exter-
nal counsel expressed the view that the value was too low; and (c)
the proposed amounts are below the floor that Sysco previously had
set.  Further, Burford contends that it correctly doubted that ▮▮
▮▮▮▮▮▮▮.

211.   The evidence on all of these points will of course need to be explored
in detail at the merits trial.[124]   However, the examinations of Ms.
Daley and Mr. Flynn at the PI Hearing[125] are helpful in assessing
whether, on this issue, Burford has met the requirements for injunc-
tive relief.

212.   Ms. Daley testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Ac-
cordingly, this was the settlement range that Burford considered to
be appropriate and which Sysco's proposed settlements fell well be-
low. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮.

213.   Ms. Daley also explained[126] how Burford factored in the criminal
antitrust cases into the valuation of claims, and she commented that
the individual acquittals affected timing expectations but did not
impair value.  She rejected the proposition that Burford knew, be-
fore commencing this arbitration, that ▮▮▮▮▮▮ class settlement

---

[124] Moreover, if evidence subsequent to September 2022 is determined to be relevant by
the Tribunal at the merits stage, the opinion evidence of Burford's expert, Mr. Kenny, *e.g.*,
will need to be considered. On cross-examination, Mr. Kenny stated that what he at-
tempted to do was to say, *"what would a diligent plaintiff attempt to do"* in circumstances
where *"there are USD 21.9 billion of purchases in a 11-year period where the judge has already
said direct purchasers have suffered injury."*

[125] Daley: Tr. 1/144-178; Flynn: Tr. 1/185-266.

[126] Tr. 1/158.

72

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.)

Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 115 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 03/13/2023

was for ▮▮▮ of sales, but the evidence on this point suffered from significant redactions.  Similarly, as to settlement of chicken claims, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

214.   Mr. Flynn acknowledged that in June 2022, he wrote to Ms. Daley that Sysco would not entertain settlements for ▮▮▮ at lower than ▮▮▮ (for chicken, pork, beef).  However, when Mr. Flynn approached ▮▮▮, his demand was only ▮▮▮.  He had difficulty[127] explaining how Sysco expected to achieve a ▮▮▮ resolution by only starting at ▮▮▮.  He further stated that when ▮▮▮ came back at ▮▮▮, he "pushed back" but could not identify Sysco's counteroffer, other than to say he needed ▮▮▮.  However, ▮▮▮ stayed at ▮▮▮ and it was then clear to Mr. Flynn that "we'd hit a wall."  Mr. Flynn also confirmed that he believed ▮▮▮ was an important part of the settlement with ▮▮▮.  However, he accepted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and such settlement arrangements (including commercial considerations) were common.

215.   Mr. Flynn accepted, in relation to ▮▮▮, that he told Burford that his floor was ▮▮▮, and he subsequently agreed to ▮▮▮. He acknowledged, after some hesitancy, that Ms. Daley expressed resistance to the ▮▮▮ figure.

216.   Mr. Flynn also provided some further background on the views of Sysco's external counsel, when that counsel stated in a meeting with Burford that he believed that the proposed Broilers settlement was too low.

217.   The Tribunal, by a majority, concludes that placing Ms. Daley's evidence next to Mr. Flynn's is sufficient for Burford to establish, on a



[127] Tr. 1/234.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   UNASSIGNED
Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 116 of 165   INDEX NO.

NYSCEF DOC. NO. 5                                                        RECEIVED NYSCEF: 03/13/2023

*prima facie* basis, that its withholding of consent to Sysco's settlement proposals was not unreasonable. . Further, ▉▉▉▉▉▉▉▉. Further, the ▉▉ ▉▉▉▉ settlement proposal was below the floor that Mr. Flynn had identified to Ms. Daley, and Mr. Flynn has not provided a reasonable explanation for going beneath the floor. Finally, even Sysco's outside counsel expressed the view that the Broilers settlement value was too low.

218.   Thus, the Tribunal finds, by a majority, that Burford has also satisfied all aspects of the "likelihood of success" element in the New York law preliminary injunction standard.

*VII.B.3 Balance of Equities*

219.   Sysco argues[128] that a balancing of the equities favors Sysco for the following reasons:

i.   If the injunction is granted, Sysco will have to continue litigating against its key suppliers in the hope, which is likely futile, that a higher settlement offer will appear, whereas any harm that Burford might suffer without an injunction would be economic and readily compensable with monetary damages.

ii.   Sysco is at daily risk of the settlement offers being withdrawn by ▉▉▉▉▉ and ▉▉, both of which have stated that if Sysco is enjoined, they will withdraw the offers and proceed to trial.

iii.   Sysco has a right, pursuant to public policy, not to be forced to continue to litigate against its will. Continuing to litigate in the coming months will entail engaging in discovery depositions that will inevitably create hostility between Sysco and its suppliers.

---

[128] Respondent's Opposition, pp. 107-114; Respondent's Rejoinder, pp. 69-72.

74

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.) INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 5 RECEIVED NYSCEF: 03/13/2023

Case 1:23-cv-02489-RGG Document 1-3 Filed 03/23/23 Page 117 of 165

iv. Burford's start-and-stop injunctive relief tactics and Burford's resistance to Sysco being able to inform ███████████ of these tactics have delayed an early resolution of this issue, thereby causing harm to Sysco's efforts to negotiate with ██████ and ██.

v. The reason that the Parties entered into the March 2022 amendment is irrelevant to any issue before the Tribunal, as is the "unclean hands" doctrine.

vi. Without good supplier relationships, Sysco cannot grow its business.

220. Burford weighs the balance very differently:[129]

i. Burford holds ███████████████ (██ of proceeds; funding the litigation) of the claims.

ii. Sysco's complaint about being forced to continue to litigate is nothing more than a complaint against the status quo – which does not weigh against maintaining the status quo. Sysco has been engaged in litigation for nearly five years.

iii. As a predicate matter, Sysco has no basis to complain about continuing to litigate: the consent provision (Section 7(b)(v)) was a remedy for Sysco's prior blatant breaches of the CPA's prohibition against assignment of claims to third parties. This was part of Sysco's strategy to appease its key business relationships at Burford's expense.

iv. Withdrawal of settlement offers would not materially affect Sysco: Burford holds ███ of the economic benefit of the claims, so ████████████████████████████████████████ ████████████████████████.

v. Sysco's belief that that the settlement offers will be withdrawn if an injunction is issued is not credible. ████████████████

---

[129] Claimants' Reply, pp. 85-88.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 118 of 165

███████████████████████████████████
████████████████████

vi.   Burford did not sleep on its rights. Sysco first told Burford that an application would be premature. Sysco has now switched positions and says the application is too late. Sysco's tactics are the problem here, not those of Burford.

221.   The Tribunal majority concludes, on the basis of the record to date, that equity favors Burford's preliminary injunction request.

222.   The first point that moves the scale in Burford's favor is the background to the March 2022 Amendment of the CPA. This is not a matter of "unclean hands," nor does it matter whether it is directly relevant to the interpretation of the CPA. Rather, the relevant point is that Sysco accepted a consent provision and relinquished ██████ ████████████████████ proceeds to Burford because of Sysco's disregard – which Sysco has not denied – of the assignment provision in the original CPA. Equity, here, is not about Sysco having been a "bad actor"; instead, as a matter of equity, Sysco's continuing the litigation to maximize proceeds that Burford largely will receive is consistent with decisions that Sysco previously made and an agreement (the March 2022 Amendment) it entered into as a consequence of those decisions.

223.   Second, as Burford observes, Burford, not Sysco, bears the direct economic risk of withdrawn settlement offers.

224.   Third, Burford is funding the litigation that an injunction would require Sysco to continue.

225.   Fourth, Sysco's principal point is that continuing the litigation will endanger its relationships with key suppliers. However, to the extent that is correct (given that the litigation has already spanned several years), that is why Sysco has little incentive to do anything other than settle for amounts that would not necessarily be "top dollar," particularly because Burford will receive ██ of any proceeds.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT BEEN REVIEWED BY THE COUNTY CLERK (See below.)   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5                                                                 RECEIVED NYSCEF: 03/13/2023

226.   Fifth, it is not apparent that an injunction will lead to the disappear-
       ance of settlement offers, particularly higher settlement offers, for
       the reasons given by Burford.

227.   Sixth, as set out above, absent the injunction, the irreparable harm
       to Burford has been demonstrated.

228.   Accordingly, the Tribunal, by a majority, finds that the "balance of
       equities" element of the New York preliminary injunction standard
       favors Burford.

## VIII.  Order

229.   For the foregoing reasons, the Tribunal, by a majority, finds that
       Claimants have satisfied the New York law standard for a prelimi-
       nary injunction.

230.   The Tribunal therefore ORDERS that:

    i.   Until the Tribunal adjudicates Claimants' claim for a permanent
          injunction or unless otherwise permitted by the Tribunal or un-
          less consented to in writing by Claimants, Respondent shall not
          enter into the two Proposed Settlements with ███████ and ████
          ██ .

    ii.  Pursuant to Section 7(b)(v) of Exhibit C-1, Respondent shall pro-
          vide immediate notice by email to Claimants of any settlement
          offer made by an Adverse Party.

    iii. The Parties are at liberty to apply for any clarification they may
          seek regarding this Order.

    iv.  This Order supersedes the TRO issued on 14 December 2022,
          which is vacated.

    v.   Costs are reserved.

231.   Further, the Tribunal directs the Parties to confer on possible dates
       for a case management conference ("**CMC**"), with the CMC prefer-
       ably to be held before the end of March 2023.  The Parties shall in-
       form the Tribunal by 15 March 2023 of such dates.  The Parties shall

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-RGG   Document 1-3   Filed 03/23/23   Page 120 of 165   INDEX NO.

also confer on a merits "fast-track" procedural timetable, to be discussed at the CMC. At the CMC, the Tribunal will want to hear from the Parties on, *inter alia,* issues such as burden of proof and the scope of evidence needed in the merits proceeding, in view of the ruling by Judge Carter in *IGT v. HIGH 5 GAMES, LLC,* 380 F. Supp. 3d 390 (S.D.N.Y. 2019).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 121 of 165

Date: 10 March 2023

Seat of Arbitration: New York, New York

_____          _____
J. William Rowley KC                              John J. Kerr, Jr.
Co-Arbitrator                                     Co-Arbitrator


_____
Laurence Shore
Presiding Arbitrator


This Order may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Date: 10 March 2023

Seat of Arbitration: New York, New York


_____          _____
     J. William Rowley KC                      John J. Kerr, Jr.
       Co-Arbitrator                             Co-Arbitrator



                         _Laurence Shore_
                           Laurence Shore
                          Presiding Arbitrator


This Order may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures were upon the same instrument.


This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See Below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 123 of 165

NYSCEF DOC. NO. 5

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/13/2023

## Dissent of John J. Kerr, Jr., Co-Arbitrator

1.  I disagree that the circumstances of this case warrant the issuance of a preliminary injunction preventing Sysco from agreeing to the Proposed Settlements.

2.  A party seeking a preliminary injunction under New York law is required to establish not only that the alleged harm is irreparable in the absence of an injunction, but also that the alleged threat of irreparable harm is not remote or speculative, but is actual and imminent. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.* 596 F.2d 70, 72 (2d Cir. 1979) (per curium); *USA Network v. Jones Intercable, Inc.*, 704 F.Supp. 488, 491 (SDNY 1989), *citing State of New York v. Nuclear Reg. Comm'n.* 550 F.2d 745 (2d Cir. 1977). Burford's claim in this case is for monetary damages it will suffer if Sysco enters into the Proposed Settlements. It is generally recognized that monetary damages by their nature are not irreparable. Here Burford contends that the prospect of a monetary award cannot be adequate compensation because its losses will be too difficult or impossible to calculate.

3.  Burford's claim for damages articulates two kinds of damages. The first is that the amounts of the Proposed Settlements are lower than the value of the antitrust claims in the two litigations at issue. Burford's damages would be the difference between the Proposed Settlements and what Burford contends should be the settlement amounts. The second is that if the Proposed Settlements are too low, they will have a ripple effect decreasing future settlements in cases where Burford is a litigation funder, ██████████████ ███████████████ Burford's damages would be the difference

1

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 124 of 165

between settlements in such cases and what the cases would have settled for but for the Proposed Settlements. These are the damages to which the test of irreparable harm must be applied.

4.      The first kind of damage can be readily calculated. ▬▬▬▬▬



▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. The Tribunal will have to weigh that market evidence, but the damage calculation is simple math. The second kind of damage is more challenging to calculate. There are two reasons. First, those settlements have not occurred. An unknown number of those cases may not settle and instead go to trial, and for those that do settle the amounts of the settlements will not be known until they occur, which could be years from now. In short, the alleged damages are remote. Second, many factors figure into a settlement, including the parties' particular situations, counsel's judgments about the strengths and weaknesses of a case, developments in the particular case including court rulings, the stage of the proceeding and so on. Proving causation – that the settlement amount in such cases is too low *because* of the Proposed Settlements here – will be a significant challenge. In those cases where Sysco is the plaintiff and Burford is the litigation funder, apparently a relatively small number of cases, both parties will have access to information about the settlements and Burford has the same ability to withhold consent to a settlement that it has here in this case. The damages calculation may be very similar to that in this case. ▬▬▬▬▬

These alleged damages in this second category are speculative. In my view, the damages alleged by Burford here, like the alleged damages examined by the court in *Tom Doherty*, are either easily calculable or are too remote and speculative to qualify as irreparable harm.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

5.    Because I find that Burford has failed to establish the essential element of irreparable harm, there is no need for me to assess whether Burford has established that it is likely to succeed on the merits of its claim at the merits hearing. However, I note that the evidence put forward by Sysco at the preliminary injunction hearing about the market rate for settlements of chicken antitrust claims against ▇▇▇▇▇▇ by large purchasers similar to Sysco was more robust and more compelling than the fragmentary and undocumented market evidence put forward by Burford. In addition, the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇. Burford will have to address this evidence to prevail on its claim at the merits hearing.

6.    With respect to the balance of the equities in this case, it is important to consider the impact of the requested injunction on the litigations pending in two U.S. federal courts. This Tribunal is being asked to enjoin the two settlements reached by the parties in those cases that would resolve those cases without a trial. Those parties have been litigating the cases for some three years, and, according to Sysco, there have been adverse developments in the protein antitrust cases that inform its judgement that the Proposed Settlements are reasonable. The requested injunction would have the effect (when considered together with the funding Agreement which requires Sysco to prosecute the cases until there is a settlement or a judgment) of compelling not only Sysco but the defendants in those cases to continue litigating against each other even though they are ready to execute the Proposed Settlements. Not only will the parties be compelled to continue litigating, but the federal courts will have to continue to devote judicial resources

3

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See Below.)   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 5                                              RECEIVED NYSCEF: 03/13/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 126 of 165

to these cases which may now go to trial notwithstanding the parties' desire to settle. The waste of resources is palpable. The alternative, to award compensatory damages to Burford in this arbitral proceeding if it is determined that its refusal to consent to these settlements was not unreasonable, avoids the need to compel the parties to continue litigating cases they have agreed to settle.

As indicated above, Burford's main damage claim can be readily calculated, and its secondary consequential damage claim is too remote and speculative to constitute irreparable harm for purposes of a preliminary injunction. To issue the requested injunction would unwisely involve this Tribunal in the federal court proceedings, a result that can and should be avoided if possible.

7.     I would deny the application for a preliminary injunction.

Date: 10 March 2023

_____

John J. Kerr, Jr.

Co-Arbitrator

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 127 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 03/10/2023

# Exhibit B

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.



Arbitration and ADR worldwide

# LCIA ARBITRATION RULES

effective 1 October 2014

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

### Article 24        Deposits

24.1    The LCIA Court may direct the parties, in such proportions and at such times as it thinks appropriate, to make one or more payments to the LCIA on account of the Arbitration Costs. Such payments deposited by the parties may be applied by the LCIA Court to pay any item of such Arbitration Costs (including the LCIA's own fees and expenses) in accordance with the LCIA Rules.

24.2    All payments made by parties on account of the Arbitration Costs shall be held by the LCIA in trust under English law in England, to be disbursed or otherwise applied by the LCIA in accordance with the LCIA Rules and invested having regard also to the interests of the LCIA. Each payment made by a party shall be credited by the LCIA with interest at the rate from time to time credited to an overnight deposit of that amount with the bank(s) engaged by the LCIA to manage deposits from time to time; and any surplus income (beyond such interest) shall accrue for the sole benefit of the LCIA. In the event that payments (with such interest) exceed the total amount of the Arbitration Costs at the conclusion of the arbitration, the excess amount shall be returned by the LCIA to the parties as the ultimate default beneficiaries of the trust.

24.3    Save for exceptional circumstances, the Arbitral Tribunal should not proceed with the arbitration without having ascertained from the Registrar that the LCIA is or will be in requisite funds as regards outstanding and future Arbitration Costs.

24.4    In the event that a party fails or refuses to make any payment on account of the Arbitration Costs as directed by the LCIA Court, the LCIA Court may direct the other party or parties to effect a substitute payment to allow the arbitration to proceed (subject to any order or award on Arbitration Costs).

24.5    In such circumstances, the party effecting the substitute payment may request the Arbitral Tribunal to make an order or award in order to recover that amount as a debt immediately due and payable to that party by the defaulting party, together with any interest.

24.6    Failure by a claiming or cross-claiming party to make promptly and in full any required payment on account of Arbitration Costs may be treated by the Arbitral Tribunal as a withdrawal from the arbitration of the claim or cross-claim respectively, thereby removing such claim or cross-claim (as the case may be) from the scope of the Arbitral Tribunal's jurisdiction under the Arbitration Agreement, subject to any terms decided by the Arbitral Tribunal as to the reinstatement of the claim or cross-claim in the event of subsequent payment by the claiming or cross-claiming party. Such a withdrawal shall not preclude the claiming or cross-claiming party from defending as a respondent any claim or cross-claim made by another party.

### Article 25        Interim and Conservatory Measures

25.1    The Arbitral Tribunal shall have the power upon the application of any party, after giving all other parties a reasonable opportunity to respond to such application and upon such terms as the Arbitral Tribunal considers appropriate in the circumstances:

        (i)       to order any respondent party to a claim or cross-claim to provide security for all or part of the amount in dispute, by way of deposit or bank guarantee or in any other manner;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

(ii)     to order the preservation, storage, sale or other disposal of any documents, goods, samples, property, site or thing under the control of any party and relating to the subject-matter of the arbitration; and

(iii)    to order on a provisional basis, subject to a final decision in an award, any relief which the Arbitral Tribunal would have power to grant in an award, including the payment of money or the disposition of property as between any parties.

Such terms may include the provision by the applicant party of a cross-indemnity, secured in such manner as the Arbitral Tribunal considers appropriate, for any costs or losses incurred by the respondent party in complying with the Arbitral Tribunal's order. Any amount payable under such cross-indemnity and any consequential relief may be decided by the Arbitral Tribunal by one or more awards in the arbitration.

25.2     The Arbitral Tribunal shall have the power upon the application of a party, after giving all other parties a reasonable opportunity to respond to such application, to order any claiming or cross-claiming party to provide or procure security for Legal Costs and Arbitration Costs by way of deposit or bank guarantee or in any other manner and upon such terms as the Arbitral Tribunal considers appropriate in the circumstances. Such terms may include the provision by that other party of a cross-indemnity, itself secured in such manner as the Arbitral Tribunal considers appropriate, for any costs and losses incurred by such claimant or cross-claimant in complying with the Arbitral Tribunal's order. Any amount payable under such cross-indemnity and any consequential relief may be decided by the Arbitral Tribunal by one or more awards in the arbitration. In the event that a claiming or cross-claiming party does not comply with any order to provide security, the Arbitral Tribunal may stay that party's claims or cross-claims or dismiss them by an award.

25.3     The power of the Arbitral Tribunal under Article 25.1 shall not prejudice any party's right to apply to a state court or other legal authority for interim or conservatory measures to similar effect: (i) before the formation of the Arbitral Tribunal; and (ii) after the formation of the Arbitral Tribunal, in exceptional cases and with the Arbitral Tribunal's authorisation, until the final award. After the Commencement Date, any application and any order for such measures before the formation of the Arbitral Tribunal shall be communicated promptly in writing by the applicant party to the Registrar; after its formation, also to the Arbitral Tribunal; and in both cases also to all other parties.

25.4     By agreeing to arbitration under the Arbitration Agreement, the parties shall be taken to have agreed not to apply to any state court or other legal authority for any order for security for Legal Costs or Arbitration Costs.

### Article 26     Award(s)

26.1     The Arbitral Tribunal may make separate awards on different issues at different times, including interim payments on account of any claim or cross-claim (including Legal and Arbitration Costs). Such awards shall have the same status as any other award made by the Arbitral Tribunal.

26.2     The Arbitral Tribunal shall make any award in writing and, unless all parties agree in writing otherwise, shall state the reasons upon which such award is based. The award shall also state the date when the award is made and the seat of the arbitration; and it shall be signed by the Arbitral Tribunal or those of its members assenting to it.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 131 of 165

NYSCEF DOC. NO. 7

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

# Exhibit C

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 132 of 165

# IN THE LONDON COURT OF
# INTERNATIONAL ARBITRATION

**GLAZ LLC, POSEN INVESTMENTS LP, and KENOSHA INVESTMENTS LP,**

Claimants,

v.

**SYSCO CORPORATION,**

Respondents.

---

## REQUEST FOR ARBITRATION

---

Derek T. Ho
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

*Attorney for Claimants*

September 9, 2022

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)      INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 7                                                           RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 133 of 165

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  PARTIES TO THIS ARBITRATION ..................................................................... 3

    A.  Claimants........................................................................................................ 3

    B.  Respondent ..................................................................................................... 4

III.  THE DISPUTE RESOLUTION AGREEMENT, THE PLACE AND SEAT OF THE ARBITRATION, THE GOVERNING LAW, AND THE LANGUAGE OF THE ARBITRATION ....................................................................................................... 4

    A.  The Arbitration Agreement .......................................................................... 4

    B.  The Seat of the Arbitration........................................................................... 6

    C.  Governing Law ............................................................................................... 6

    D.  The Language of Arbitration ........................................................................ 6

IV.  THE ARBITRAL TRIBUNAL .............................................................................. 6

V.  FACTUAL AND LEGAL ALLEGATIONS .......................................................... 7

    A.  Sysco's Food Antitrust Claims..................................................................... 7

    B.  Claimants' Investments in Sysco's Claims ................................................. 9

    C.  Sysco's First Violation of Claimants' Consent Rights............................. 10

    D.  ███████████████ Settlement Proposals ........................................ 11

    E.  Sysco's Threatened Breach of Claimants' Consent Rights................... 12

VI.  CLAIMS FOR RELIEF ....................................................................................... 13

    A.  Request for Declaratory Judgment ........................................................... 13

    B.  Request for Permanent Injunction............................................................ 13

    C.  Breach of Contract ...................................................................................... 14

VII.  PRAYER FOR RELIEF ..................................................................................... 14

VIII.  PAYMENT OF REGISTRATION FEES ......................................................... 15

IX.  CONFIRMATION OF DELIVERY OF THE REQUEST TO ALL OTHER PARTIES ................................................................................................................ 16

EXHIBITS................................................................................................................. 17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG    Document 1-3    Filed 03/23/23    Page 134 of 165

Claimants Glaz LLC (f/k/a Roslindale LLC) ("Glaz"), Posen Investments LP ("Posen"),

and Kenosha Investments LP ("Kenosha") (collectively, the "Claimants"), hereby submit this

Request for Arbitration against Respondent Sysco Corporation ("Sysco") pursuant to Article 1

of the Arbitration Rules of the London Court of International Arbitration effective as of October

1, 2014 ("LCIA Rules").

## I.    INTRODUCTION

1.     This arbitration stems from Sysco's threat to deprive Claimants of their express

contractual right to consent before Sysco settles any of its U.S. antitrust claims against suppliers

of chicken, beef, and pork.  Sysco has once before admitted to breaching Claimants' contractual

rights.  In 2021, after taking nearly $150 million in cash from Claimants to finance its antitrust

claims, Sysco assigned away a large portion of Claimants' collateral to third parties in a flagrant

breach of its contractual obligations.  To resolve that earlier dispute, the Claimants and Sysco

amended their agreement to alter the economic entitlements and provide Claimants with the

consent right that is the subject of this current dispute.  The consent right was uniquely designed

to protect Claimants' substantial investment in Sysco's food antitrust claims going forward.

However, Sysco now says that it intends imminently to execute settlements without Claimants'

consent.

2.     The issue is straightforward.  According to Section 5.3(b)(v) of the litigation

funding agreement that governs the parties' relationship, Sysco "shall not accept a settlement

offer without the Capital Providers' prior written consent, which shall not be unreasonably

withheld" (the Claimants are referred to in the agreement as the "Capital Providers").  Ex. 1

(Amendment No. 1 to Second Amended and Restated Capital Provision Agreement (Mar. 31,

2022)) § 5.3(b)(v); *see also* Ex. 2 (Second Amended and Restated Capital Provision Agreement

(Dec. 22, 2020)) ("Original CPA") (collectively, "Amended CPA").

3.     Last week, Sysco informed Claimants that they had received settlement offers

from two suppliers – ████████████████ and ████████████████

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

███ . In each case, the proposed settlement amount was a pittance: less than one percent of Sysco's total purchases. Sysco told Claimants that it was inclined to accept the proposed settlements, even though they were far below what other plaintiffs had been able to obtain on a volume-adjusted basis.

4.    Through outside counsel, on September 7, Claimants sent Sysco a letter asking for Sysco's agreement that it would not settle without their consent. They also sought additional information from Sysco necessary for them to evaluate the settlements. Claimants requested a response by 5:00 p.m. on September 8, 2022. *See* Ex. 3 (Letter from D. Ho to B. Flynn (Sept. 7, 2022)). On the afternoon of September 8, Sysco notified Claimants that it had retained outside litigation counsel. Ex. 4 (Email from B. Flynn to D. Ho (Sept. 8, 2022)). Later on September 8, Claimants' outside counsel asked Sysco's outside counsel for a time to discuss the issue. Sysco's outside counsel indicated that they were unavailable until 4:00 p.m. the next day, September 9, 2022. Ex. 5 (Email from L. Bensman to D. Ho (Sept. 8, 2022)). Claimants' outside counsel accepted the invitation for a telephone call on 4:00 p.m. but asked for assurance that Sysco would not execute the settlements in the meantime; Sysco did not respond. Ex. 6 (Email from D. Ho to L. Bensman (Sept. 8, 2022)). In a final effort to defuse the situation, Claimants' outside counsel called Sysco's outside counsel on the evening of September 8 asking for a substantive response by no later than that evening, but none was forthcoming.

5.    Pursuant to the arbitration agreement in the Amended CPA, Claimants now bring this request for arbitration – and the accompanying applications for emergency and interim measures – to prevent Sysco from entering into the proposed settlements without Claimants' consent and from irreparably harming Claimants' interests. Claimants ask that this Arbitral Tribunal declare Sysco's attempt to force these settlements through without Claimants' approval in violation of their contractual rights, and to permanently enjoin Sysco from executing any settlement without following the rights and procedures established in Section 5.3(b)(v) of the Amended CPA.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 03/10/2023

## II.    PARTIES TO THIS ARBITRATION

### A.    Claimants

6.    Glaz is a limited liability company organized under the laws of Delaware.  Glaz is an indirect subsidiary of Burford Capital Limited, a Guernsey corporation that is publicly traded on the London Stock Exchange and the New York Stock Exchange and focuses on litigation finance.

7.    Glaz's address is:

Glaz LLC
251 Little Falls Drive
Wilmington, DE 19808
Attn:  Manager
Telephone:  (302) 636-5400
Email Address:  info@litfinsolutions.com

8.    Posen is a limited partnership organized under the laws of Delaware.  Posen is an indirect subsidiary of Burford Capital Limited.

9.    Posen's address is:

Posen Investments LP
251 Little Falls Drive
Wilmington, DE 19808
Attn:  Manager
Telephone:  (302) 636-5400
Email Address:  info@litfinsolutions.com

10.    Kenosha is a limited partnership organized under the laws of Delaware.  Kenosha is an indirect subsidiary of Burford Capital Limited.

11.    Kenosha's address is:

Kenosha Investments LP
251 Little Falls Drive
Wilmington, DE 19808
Attn:  Manager
Telephone:  (302) 636-5400
Email Address:  info@litfinsolutions.com

12.    Claimants are here represented by the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.  All correspondence in this arbitration should be addressed to:

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 137 of 165

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 03/10/2023

Derek T. Ho
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7931
Email: dho@kellogghansen.com

**B.      Respondent**

13.      Sysco is a corporation organized under the laws of Delaware.

14.      Sysco's address is:

1390 Enclave Parkway
Houston, TX 77077
Attn: Eve McFadden
Telephone: (281) 584-1390
Email Address: eve.mcfadden@corp.sysco.com

**III.   THE DISPUTE RESOLUTION AGREEMENT, THE PLACE AND SEAT OF THE ARBITRATION, THE GOVERNING LAW, AND THE LANGUAGE OF THE ARBITRATION**

**A.      The Arbitration Agreement**

15.      This arbitration is initiated pursuant to the arbitration agreement found at Section 29 of the Original CPA (entered into by and among Sysco and Claimants), which provides as follows:

(a) Any and all of the following shall (to the exclusion of any other forum except as set forth herein) be referred to and finally resolved by arbitration under the LCIA Arbitration Rules (2014) of the London Court of International Arbitration (the "Rules" and the "LCIA"), which Rules are deemed to be incorporated by reference into this clause: any dispute, controversy or claim arising out of or in connection with (i) this Agreement (including this Section 29); (ii) any other Transaction Document; (iii) any relationship or interaction between the Counterparty, on the one hand, and any Capital Provider(s), on the other hand; or (iv) a claim or assertion by any other Person of any right arising out of or in connection with this Agreement (including this Section 29) or any other Transaction Document, including, as to all such disputes, claims and controversies, any question regarding (x) the existence, arbitrability, validity or termination of this Agreement (including this Section 29) or any other Transaction Document, (y) any relationship or interaction between the above identified parties, or (z) the obligation of any Person to arbitrate any such dispute.

(b) Except as otherwise specifically provided in this Agreement (including this Section 29) or any other Transaction Document, (i) the arbitral tribunal (the "Tribunal") shall have the exclusive power to grant any remedy or relief that it deems appropriate, whether provisional or final, including but not limited

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

to emergency relief, injunctive relief and/or any other interim or conservatory measures or other relief permitted by the Rules (collectively, "Conservatory Measures"), and any such measures ordered by the Tribunal shall, to the extent permitted by applicable law, be deemed to be a final award on the subject matter of such measures and shall be enforceable as such in any court of appropriate jurisdiction; and (ii) prior to the formation or expedited formation of the Tribunal (under Article 5 or 9A of the Rules), the provisions of Article 9B of the Rules shall apply to any request for Conservatory Measures.

. . .

(d) Any request for arbitration or response thereto submitted to the LCIA may be delivered by any means (including email) set forth in Section 18 (Notices) or any other means that is reasonably likely to achieve actual service.

(e) The number of arbitrators shall be three. Subject to Article 8 of the Rules, each party to the arbitration shall nominate one arbitrator and the two arbitrators nominated by the parties shall, within ten (10) days of the nomination of the second party-nominated arbitrator, agree upon and nominate a third arbitrator who shall act as Chairman of the Tribunal. If no agreement is reached within ten days or at all, the LCIA Court shall select and appoint a third arbitrator to act as Chairman of the Tribunal.

(f) The seat, or legal place, of arbitration shall be New York, New York. Notwithstanding the terms of Section 27 (Governing Law), the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder. The language to be used in the arbitral proceedings shall be English.

(g) In addition to the confidentiality requirements imposed on the parties by Article 30 of the Rules, each party is obligated to keep confidential the existence and content of any arbitral proceedings initiated hereunder and any rulings or award except (i) to the extent that disclosure may be required of a party to fulfill a legal duty, protect or pursue a legal right, or enforce or challenge an award in bona fide legal proceedings before a state court or other judicial authority, (ii) with the consent of all parties, (iii) where needed for the preparation or presentation of a claim or defense in such arbitral proceedings, (iv) where such information is already in the public domain other than as a result of a breach of this clause (g), or (v) by order of the Tribunal upon application of a party.

Ex. 2 (Original CPA) § 29.

16.     The claims herein fall within the scope of the arbitration agreement because they involve a dispute "arising out of or in connection with" the Amended CPA. *Id.* § 29(a). Specifically, Claimants' request for declaratory relief concerning Claimants' right to consent to any settlement agreement fall squarely within the scope of the Amended CPA, which explicitly

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)         INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 7                                                                                    RECEIVED NYSCEF: 03/10/2023

provides that Sysco "shall not accept a settlement offer without the Capital Providers' prior written consent, which shall not be unreasonably withheld." *Id.* § 5.3(b)(v). Similarly, the Claimants' request for a permanent injunction barring Sysco from entering into settlement agreements with either ██████████ arises out of the same provision.

### B.  The Seat of the Arbitration

17.  Pursuant to Section 29 of the Original CPA, as set out above, the legal seat of arbitration is New York, New York.

### C.  Governing Law

18.  Section 28 of the Original CPA provides that:

> Except as set forth otherwise in Section 29, this Agreement shall be construed in accordance with, and this Agreement and all matters arising out of or relating in any way whatsoever to this Agreement (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York (without reference to any conflict of law principles or choice of law doctrine that would have the effect of causing this Agreement to be construed in accordance with or governed by the law of any other jurisdiction).

19.  Section 29 of the Original CPA provides that, "[n]otwithstanding the terms of Section 2[8] (Governing Law), the U.S. Federal Arbitration Act shall govern the interpretation, application and enforcement of this Section 29 and any arbitration proceedings conducted hereunder."

### D.  The Language of Arbitration

20.  Under Section 29 of the Original CPA, the language of the arbitration shall be English.

## IV.  THE ARBITRAL TRIBUNAL

21.  Section 29(e) of the Original CPA provides for three arbitrators. Following Article 8 of the LCIA Rules, "each party to the arbitration shall nominate one arbitrator and the two arbitrators nominated by the parties shall, within ten (10) days of the nomination of the second party-nominated arbitrator, agree upon and nominate a third arbitrator who shall act as

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 140 of 165

Chairman of the Tribunal." If there is no agreement within ten days, "the LCIA Court shall select and appoint a third arbitrator to act as Chairman of the Tribunal." *Id.*

22.     Pursuant to Section 17, Claimants nominate Gary Born as arbitrator. To the best of Claimants' knowledge, Mr. Born is independent of the parties involved in this arbitration. Mr. Born's contact details are as follows:

> Gary Born
> 49 Park Lane
> London W1K 1PS
> United Kingdom
> Telephone: +44(0)20 78721020
> Facsimile: +44 (0)20 7645 2424
> Email Address: gary.born@wilmerhale.com

## V.     FACTUAL AND LEGAL ALLEGATIONS

### A.     Sysco's Food Antitrust Claims

23.     Respondent Sysco is a broadline wholesale distributor. A core component of its business is purchasing various food products from suppliers – including animal proteins like chicken, beef, and pork – and then reselling them to customers such as restaurants, schools, healthcare facilities, and hospitality businesses.

24.     Over the past decade, numerous antitrust lawsuits have been filed against suppliers of chicken, beef, and pork, alleging that the suppliers in each of these industries conspired to raise the prices of those products.

25.     In 2016, a class action complaint was filed against dozens of chicken supply companies, including ███████████████. *See In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-8637 (N.D. Ill.). Plaintiffs allege that chicken suppliers conspired to restrict the collective output of the chicken industry for nearly a decade, agreed to manipulate multiple chicken price indices, and worked to rig bids and fix prices over many contract negotiations with restaurants, purchasing cooperatives, and distributors – all in violation of Section 1 of the Sherman Act. Sysco eventually filed its own "direct action" complaint in the litigation. *See*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 7                                                                 RECEIVED NYSCEF: 03/10/2023



*Sysco Corp. v. Tyson Foods, Inc., et al.*, Case No. 1:18-cv-700 (N.D. Ill.).  Defendants' motions to dismiss the plaintiffs' claims have been denied.



29.    ▮▮▮▮▮▮ has entered into multiple class-wide settlements in the chicken antitrust multidistrict litigation, including the direct purchasers, end-user consumers, and commercial and institutional indirect purchasers.  Similarly, ▮▮▮▮ has entered into class settlements with the commercial and institutional indirect purchasers, direct purchasers, and end-user consumers.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

30. In addition to the broiler chicken litigation, Sysco has claims against suppliers of beef and pork, ███████████████████████████ for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. *See In re Pork Antitrust Litigation*, Case No. 18-cv-1776 (D. Minn.); *In re Cattle & Beef Antitrust Litigation*, Case No. 20-cv-1319 (D. Minn.).

31. In the beef litigation, the court last year granted in part and denied in part the defendants' motion to dismiss, finding that the Plaintiffs plausibly pleaded that Defendants conspired to suppress the price of fed cattle and drive up the price of beef in order to realize sky-high margins. ████████████████████████████████████████ ████████████████████████████. Similarly, in the pork litigation, while several defendant groups succeeded on a motion to dismiss, the majority of claims survived because plaintiffs' amended complaints adequately plead parallel conduct, and because Plaintiffs adequately plead a continuing violation such that the claims are not time barred. Several defendants and classes have begun to receive final approval of settlements – including Smithfield Foods with commercial and institutional indirect purchasers and direct purchasers, and the JBS defendants with the consumer indirect purchasers.

**B.    Claimants' Investments in Sysco's Claims**

32. Between 2019 and 2021, Claimants provided millions of dollars to Sysco to finance its antitrust claims relating to its purchases of broiler chickens, pork products, beef products, turkey products, and Keurig single-serving coffee pods. ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████. In return, Sysco agreed to provide the Capital Providers an entitlement to a certain percentage of the return on these claims.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## C.    Sysco's First Violation of Claimants' Consent Rights

33.    In return for Claimants' agreement to invest in its claims, Sysco agreed not to assign those claims to third parties without Claimants' consent.  Specifically, Section 5.3(b)(viii) of the Amended CPA provides that Sysco "shall not dispose of, transfer, encumber or assign, nor otherwise create, incur, assume, or permit to exist any Adverse Claim with respect to, all or any portion of such Claim (or any interest therein) or any Proceeds thereof (or any right to such Proceeds)" "*other than with the prior written consent of the Capital Providers*."  Ex. 2 (Amended CPA) § 5.3(b)(viii) (emphasis added).    That provision was critical to Claimants, as any assignment would diminish the value of Sysco's claims and, in turn, the collateral for Claimants' investment.

34.    Over the course of the following year, in clear breach of that provision, Sysco repeatedly assigned away claims representing nearly 30% of the value of its claims in the chicken cases, in addition to significant portions of its beef and pork claims.  Sysco neither notified the Claimants of its intent to enter into the assignment agreements nor sought Claimants' consent to these assignments. These assignments gave away a substantial portion of the collateral for the Claimants' investment, with the Capital Providers getting nothing of value in return.   The Claimants did not find out about Sysco's actions until after the fact, in late 2021.

35.    Upon being confronted with its plainly unlawful assignments, Sysco conceded that it had violated the CPA and agreed to amend the CPA to provide economic restitution for Sysco's breaches.  First, to compensate the Claimants for the reduction in Sysco's claims caused by these unlawful assignments, Sysco agreed to increase the percentage of the proceeds from the remaining claims to which Claimants are entitled.

36.    Second, Sysco agreed to give Claimants a right to consent to any settlement between Sysco and the defendants.  Specifically, the Amended CPA provides that Sysco "shall not accept a settlement offer without the Capital Providers' prior written consent, which shall not be unreasonably withheld."  Ex. 1 (Amended CPA) § 5.3(b)(v).  Claimants' right to consent

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

is subject to the further proviso that Claimants shall not exercise control over the independent judgment of any outside counsel, and that they will not "seek to impose a commercially unreasonable result with respect to settlement." *Id.*

37.     The new right to consent to any settlement was specifically bargained-for in light of Sysco's breach and was, therefore, critical to Claimants.  Because the Amended CPA drastically reduced Sysco's economic stake in the relevant litigation claims in order to compensate Claimants for Sysco's unlawful assignments, Claimants were concerned that Sysco would lack adequate incentive to pursue the litigation vigorously.  That concern was especially acute given that Sysco has ongoing commercial relationships with the defendants in these cases and would be tempted to prioritize its commercial interests over the parties' joint interest in obtaining the best possible litigation result.

**D.**            ███████████ **Settlement Proposals**

38.     Claimants concerns were well founded.  In late August, 2022, Sysco notified Claimants that it had received settlement offers from ███████████ that it intended to accept.  Sysco has only provided Claimants with limited information about the settlements' terms, but what it has provided paints a compelling picture that the proposed settlements significantly undervalue Sysco's chicken, pork, and beef claims.

39.     The proposed settlement with ██████ would release all of Sysco's broiler chicken-related claims at issue in the litigation for ██████.  This amounts to a recovery of ███████████████ of Sysco's broiler chicken purchases from ██████ during the relevant period.

40.     The proposed settlement with ██████ would release all of Sysco's chicken-, beef-, and pork-related claims for a total of ██████.  Sysco has represented to Claimants that this breaks down into ███████ for broiler chicken-related claims against ██████ and ███████ for Sysco's beef and pork claims against ███████████.  Like with ██████, the ███████ allocated to the broiler chicken claims amount to ██████

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 145 of 165

Sysco's ████████ in unassigned broiler chicken purchases during the relevant period. The amount allocated to beef and pork would also release Sysco's pork and beef claims against ██ for a very low percentage of purchases.

41.     In pure economic terms, a recovery of ████████████████ is minuscule for antitrust claims that have survived a motion to dismiss, that are supported by substantial evidence and likely to survive summary judgment, and that have spawned multiple criminal indictments by the Department of Justice ████████████████. Indeed, ██ ████████████████████████████████████████ ████████████████████.

42.     Moreover, the proposed settlements will significantly reduce the value of Sysco's claims against the remaining defendants, because Sysco intends to agree that the settlements will be "Qualified Settlements" under the Judgment Sharing Agreement ("JSA") that most suppliers (including ████████████) have entered into in connection with the *Broilers* litigation. By agreeing to a Qualified Settlement, Sysco would be giving up the right to joint and several liability – a key feature of federal antitrust law – against the remaining signatory defendants and would have to reduce any future court judgment against any of those pursuant to a formula set forth in the JSA.

43.     Moreover, under the JSA, the signatories (including both ████████████) are required to promptly provide each other with full copies of all settlement agreements with any plaintiff. As a result, other signatory defendants will be aware of the terms of Sysco's settlements, which will impair Sysco's negotiating leverage with those remaining defendants and potentially create a very low ceiling for future settlements.

**E.     Sysco's Threatened Breach of Claimants' Consent Rights**

44.     For these and other reasons, Claimants promptly raised serious concerns with the proposed settlements with Sysco's in-house counsel. In telephone calls on Friday, September 2, and Tuesday, September 6, 2022, Sysco asserted that Claimants were *required* to give their

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b[d][3][i]) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 146 of 165

consent to any settlement that Sysco believed to be reasonable, and that Sysco could enter into a settlement without Claimants' consent if Claimants refused to provide it. Sysco also stated that it was nearing the end of its negotiations with ███████████, and that it would be ready to execute the settlements imminently.

45.     On September 7, 2022, Claimants sent a formal letter to Sysco notifying it that they objected to the settlements and requesting that Sysco confirm by September 8 at 5:00 p.m. Eastern that Sysco would not execute either of the proposed settlements without Claimants' consent. Claimants also requested additional information from Sysco relevant to their ongoing evaluation of the settlements. After Sysco failed to respond by that deadline, Claimants filed this arbitration.

## VI.    CLAIMS FOR RELIEF

### A.    Request for Declaratory Judgment

46.     Claimants repeat, re-allege, and incorporate herein by reference each of the allegations set forth in paragraphs 1 through 45 as if set forth in full herein.

47.     An actual, justiciable controversy has arisen and now exists between Plaintiffs and Defendant concerning Claimants' right to consent to any settlement agreement pursuant to Section 5.3(b)(v) of the Amended CPA.

48.     Claimants seek a declaration that Sysco's execution of the proposed settlements with ██████████ without Claimants' consent would constitute a violation of the Amended CPA.

49.     Such a declaration is necessary and appropriate at this time so that the parties can determine their rights and duties under the Amended CPA.

### B.    Request for Permanent Injunction

50.     Claimants repeat, re-allege, and incorporate herein by reference each of the allegations set forth in paragraphs 1 through 45 as if set forth in full herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

51.    Section 5.3(b)(v) of the Amended CPA provides that Sysco "shall not accept a settlement offer without the Capital Providers' prior written consent, which shall not be unreasonably withheld." Sysco's execution of the proposed settlements without Claimants' consent would constitute a material breach of Section 5.3(b)(v). Claimants thus seek an injunction prohibiting Sysco from executing the proposed settlements with ███████████ ███ without the Capital Providers' consent, in violation of the Amended CPA.

    **C.**    **Breach of Contract**

52.    Claimants repeat, re-allege, and incorporate herein by reference each of the allegations set forth in paragraphs 1 through 45 as if set forth in full herein.

53.    Claimants and Respondent are parties to the Amended CPA.

54.    Section 5.3(b)(v) of the Amended CPA provides that Sysco "shall not accept a settlement offer without the Capital Providers' prior written consent, which shall not be unreasonably withheld." The Amended CPA further provides: "In addition to and without limiting the obligations of the Counterparty to the Capital Providers pursuant to Section 5.3(b) of the Existing Agreement, the Counterparty shall take such actions as are reasonable and appropriate to maximize the Proceeds received from each Claim, giving priority to cash Proceeds." Amended CPA § 7(a).

55.    In the event that Sysco has already executed the proposed settlements, its execution of those settlements constitutes a breach of the Amended CPA. That breach will cause Claimants damages, including but not limited to the compensation Sysco would have received had its claims against ███████████████ been prosecuted to their fullest extent and/or settled at a rate that more accurately values the claims.

**VII.    PRAYER FOR RELIEF**

56.    Claimants respectfully request an award granting the following relief:

    A.    A declaration that Sysco's execution of the proposed settlements with ███████████████ without Claimants' consent would constitute a

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 7

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 148 of 165

RECEIVED NYSCEF: 03/10/2023

violation of the Amended CPA.

      B.    An injunction prohibiting Sysco from executing the proposed settlement

agreements with ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ without

Claimants' consent;

      C.    An award of all legal costs and fees that Claimants incurred in this

arbitration and related proceedings; and

      D.    Such other and further relief as the Arbitral Tribunal may deem just and

proper.

57.    For the avoidance of any doubt, and subject to Article 22.1(i) of the LCIA Rules,

Claimants reserve their right to:

      A.    Raise any and all further claims arising out of or in connection with the

disputed matters described in this Request or otherwise arising between

Claimants and Respondents;

      B.    Amend and/or supplement the relief sought herein;

      C.    Produce such factual or legal arguments or evidence (including witness

testimony, expert testimony, and other documents) as may be necessary

to present its case or rebut any case which may be put forward by

Respondents; and

      D.    Seek emergency, interim, and provisional measures before this Arbitral

Tribunal or any competent national court.

## VIII.  PAYMENT OF REGISTRATION FEES

58.    Pursuant to the Schedule of Costs and in accordance with Article 1.1(vi) of the

LCIA Rules, Claimants are sending an advance payment of UK £1,950 with the current Request

for Arbitration to the Registrar.  Claimants acknowledge that this payment is non-refundable and

shall be credited to its portion of the advance on costs.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 149 of 165

## IX.   CONFIRMATION OF DELIVERY OF THE REQUEST TO ALL OTHER PARTIES

59.     Pursuant to Article 1.1(vii) of the LCIA Rules, Claimants are delivering copies of the request (including all accompanying documents) to all other parties to the arbitration at the postal and email addresses set out in Section II above.


Respectfully submitted,

Derek T. Ho
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900 (Telephone)
(202) 326-7999 (Facsimile)
dho@kellogghansen.com

*Attorney for Claimants*                                September 9, 2022

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 150 of 165

NYSCEF DOC. NO. 7                                                        RECEIVED NYSCEF: 03/10/2023

## EXHIBITS SUBMITTED WITH THE REQUEST FOR ARBITRATION

| Exhibit | Exhibit number |
|---|---|
| Amendment No. 1 to Second Amended and Restated Capital Provision Agreement (Mar. 31, 2022) | 1 |
| Second Amended and Restated Capital Provision Agreement (Dec. 22, 2020) | 2 |
| Letter from D. Ho to B. Flynn (Sept. 7, 2022) | 3 |
| Email from B. Flynn to D. Ho (Sept. 8, 2022) | 4 |
| Email from L. Bensman to D. Ho (Sept. 8, 2022) | 5 |
| Email from D. Ho to L. Bensman (Sept. 8, 2022) | 6 |
| ███████████████████████████ | 7 |

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See Below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 151 of 165

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 8

RECEIVED NYSCEF: 03/10/2023

# Exhibit D

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 8                                                                      RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 152 of 165

| From: | Shore, Laurence |
|---|---|
| To: | Liz Snodgrass; Rosenthal, Jeffrey A.; jkerr@stblaw.com |
| Cc: | Ho, Derek T.; William Rowley KC; Bensman, Lina; Swiber, Patrick; Doris Smith; Santin, Letizia; Wright, Katerina; LCIA Casework |
| Subject: | [EXTERNAL] Re: LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments LP, and Kenosha Investments LP v Sysco Corporation [IMAN-3CDMS.FID110020] |
| Date: | Wednesday, December 14, 2022 11:31:36 AM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image11e3b1.PNG |
| | imagecbb3e9.PNG |
| | imagecacb3d.PNG |
| | image782f9d.PNG |
| | image1f90a1.PNG |

All Counsel,

Having considered Claimants' 12 December 2022 Application, Sysco's 12 December 2022 Letter, and Claimants' 13 December 2022 Email, and the balance of prejudice in granting or denying Claimants' TRO application, the Tribunal issues the following directions:

1. On the current record, the Tribunal considers that Claimants should have the opportunity for their preliminary injunction application to be heard and not mooted. Absent Respondent's identification of "compelling business reasons" for it to enter into the proposed settlement agreement before the preliminary injunction application to be heard, the Tribunal therefore directs Respondent not to enter into the proposed settlement agreement at this time. However, the Tribunal further considers that this restraint on Respondent shall be conditioned on Claimants' acceptance — to be immediately indicated to Respondent (copying the Tribunal) that (a) Respondent may inform ▇▇▇▇ of the imposition of the restraint by this Tribunal; and (b) Respondent may inform ▇▇▇▇ of the hearing (see below) regarding the preliminary injunction application.

2. Respondent may submit a brief by 12 noon New York time on 22 December 2022, or choose to appear orally before the Tribunal on that date, in which Respondent may seek to show reasons why the TRO should be lifted. If Respondent seeks to make a written submission or appearance on 22 December, it shall notify the contents of its submission or intended oral pleading to Claimants by 12 noon New York time on 21 December 2022, so that Claimants may, if they choose, make a reply submission or oral pleading immediately following that of Respondent. The Tribunal, on the basis of such submission or pleading, may reconsider the imposition of the TRO.

3. In terms of a schedule for hearing the preliminary injunction application, if the TRO remains in place, the Tribunal considers that Respondent should have a choice:

Option 1

(a) Respondent's opposition, due 23 December, with witness statements/expert reports due 29 December, as long as they were fully summarized in the 23 December brief;

(b) Claimants' Reply due 4 January 2023;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 8                                                      RECEIVED NYSCEF: 03/10/2023

(c) Hearing on 9 January 2023.

Option 2

(a) Opposition due 16 January 2023.

(b) Reply due 31 January 2023.

(c) Hearing on 7 February 2023.

In the event that the TRO is lifted, the Tribunal considers that the following schedule would be appropriate:

(i)
Respondent's Opposition due 28 December 2022;

(ii)
Reply due 5 January 2023;

(iii)
Hearing on 9 January 2023.

Larry Shore
For the Tribunal

**BonelliErede**
with LOMBARDI

via Barozzi 1
20122 Milano. Italia



Milan | Rome | Genoa | Brussels | London | Cairo | Addis Ababa | Dubai

Questo messaggio, con gli eventuali allegati, contiene informazioni riservate.
This email and any files transmitted with it are confidential.

On 13 Dec 2022, at 16:56, Shore, Laurence <Laurence.Shore@belex.com> wrote:

Received. Thank you.

The Tribunal will come back to the Parties shortly.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 8                                                        RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 154 of 165

No further submissions are needed at this stage.

Larry Shore
For the Tribunal

---

**From:** Liz Snodgrass <Liz.Snodgrass@threecrownsllp.com>
**Sent:** martedì 13 dicembre 2022 15:26
**To:** Rosenthal, Jeffrey A. <jrosenthal@cgsh.com>; Shore, Laurence
<Laurence.Shore@belex.com>; jkerr@stblaw.com
**Cc:** Derek Ho <dho@kellogghansen.com>; William Rowley KC
<wrowley@twentyessex.com>; Bensman, Lina <lbensman@cgsh.com>; Swiber, Patrick
<pswiber@cgsh.com>; Doris Smith <dsmith@twentyessex.com>; Santin, Letizia
<Letizia.Santin@belex.com>; Wright, Katerina <kawright@cgsh.com>; LCIA Casework
<casework@lcia.org>
**Subject:** RE: LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments LP, and
Kenosha Investments LP v Sysco Corporation [IMAN-3CDMS.FID110020]

⚠ EXTERNAL EMAIL

Dear Members of the Tribunal,

We write briefly to reply to Sysco's response to Claimants' Application for a Temporary
Restraining Order and to address Claimants' request that the unredacted Application
for Interim and Conservatory Measures be designated "Outside Attorney's Eyes Only."

The TRO Application is premised on a concern, heightened by Sysco's statements and
actions in recent days, that Sysco is imminently poised to execute a settlement
agreement with ▮▮▮▮ without Claimants' consent. The Claimants have asked the
Tribunal to grant the TRO without delay in view of the urgency of the situation. Sysco
objects to the suggestion that the Tribunal could do so *ex parte*, on the basis that the
Rules contemplate the grant of interim measures "after giving all other parties a
reasonable opportunity to respond to such an application," and then proposes a
leisurely briefing schedule to address this request for urgent interim relief.

Sysco's objections about this application occurring "*ex parte*" are wrong on two fronts.
First, this is not an *ex parte* application; Sysco has been notified of it. Second, Sysco
has indeed responded, through a seven-page letter. There can be no claim here that
Sysco has not received notice and been heard on the Application for a TRO. And in fact,
Mr Rosenthal's letter only confirms the factual predicate for the TRO Application. He
says, "The fact that Burford's three-month delay will soon result in the Third
Application being moot is of no moment." We respectfully suggest that this admission
should be decisive of the TRO Application. It is plain by reference to its own statements
that Sysco is poised to act, and if it does then the Tribunal will lose the ability to
address either the Application for Interim Measures or the Application for a TRO. That
is the paradigmatic situation in which such a hold-the-ring injunction should issue and a

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)   INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 03/10/2023

prompt briefing schedule be set to address the underlying Application.

With respect to Mr Rosenthal's other submissions, which do not go to the question whether a TRO should issue now to preserve the status quo and the Tribunal's ability to adjudicate the pending Application for Interim and Conservatory Measures, Claimants will reply in full in their Reply on that Application, but very briefly:

- The suggestion that Claimants have somehow forfeited their right to preserve the subject matter of this arbitration by holding their interim measures application in abeyance is premised on an utter mischaracterization of the parties' prior interactions. It would be a manifest injustice for the Tribunal to moot Claimants' pending claims based on that false narrative. The Claimants' current application was motivated by two recent developments: (i) Sysco's belated disclosure on 2 December of the draft settlement agreement, which revealed terms that were materially more prejudicial than Sysco previously indicated; and (ii) Claimants' efforts thereafter to engage with Sysco about the terms of the draft agreement being rebuffed, contrary to the representations Sysco had made in October that it would so engage. By then, of course, Sysco had already indicated — at the CMC and in communications directly with Claimants — that it was going to finalize the settlement imminently. Claimants did not "sleep on their rights" – they renewed their application promptly after it became clear that Sysco was intending to proceed with the settlement without Claimants' consent, and that the promise to confer with Claimants had been mere track-covering.

- The balance of the equities here also is critical. Claimants have a clear right under the parties' CPA – negotiated to resolve Sysco's prior breaches of the agreement – not to have Sysco settle its cases without Claimants' prior consent. Sysco has not carried (and we submit cannot carry) its burden to show that Claimants are exercising that right unreasonably: ███████████████████
  ██████████████████████████████████████████████████
  ████████████████████████
  ███████████. And the record is – at this stage – uncontroverted that permitting that settlement to proceed and be shared with all of the other defendants that have entered into a judgment sharing agreement will irreparably harm Sysco's claims against the remainder of the defendants. For its part, apart from a conclusory line in Mr Rosenthal's letter, Sysco has offered no reason why the settlement must be concluded before Claimants can be heard on their request for an injunction. Indeed, the snail's pace of Sysco's negotiations with ██████ — which began months ago, in April — belies any suggestion that time is of the essence.

The proper course here is clear: the Tribunal should preserve the status quo for enough time as necessary to be able to consider Claimants' renewed interim measures

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)  INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 156 of 165

application. We do not consider the briefing schedule that Mr Rosenthal proposes to reflect reasonable expedition in dealing with a situation he now himself describes as urgent, but the Claimants will not be prejudiced by acceding to that request if the TRO is granted. For our part, having prepared the previous Application for Interim Relief in approximately 10 days and having prepared the renewed application in the interval between last week's CMC and yesterday, we would have thought a similar period would be appropriate for receiving Sysco's Response to the Application for Interim and Conservatory Measures.

With respect to the request for OAEO designation, we finally note Mr Rosenthal's indication, at footnote 7 of his letter, that "Absent a persuasive explanation from Claimants or an injunction issued by the Tribunal barring us from doing so, we intend to share the full and unredacted version of Burford's Third Application with our client tomorrow." Claimants included a request that very limited information in the Application remain protected while the parties negotiate a comprehensive confidentiality regime for this arbitration, as Sysco agreed to do at the CMC, in light of the potential harm caused by the disclosure of settlement details to the market for settlements and out of an abundance of caution with regard to the confidentiality interests of third parties. Given Sysco's indication that it intends to take matters into its own hands absent the issuance of formal relief by the Tribunal, Claimants request that the Tribunal immediately issue an order barring Sysco's outside counsel from sharing the unredacted version of the Application for Interim and Conservatory Measures with Sysco.

Respectfully submitted,

Liz Snodgrass
*Partner*

**THREE CROWNS**

T: +1 202 540 9492
M: +1 202 679 6911
liz.snodgrass@threecrownsllp.com

**From:** Rosenthal, Jeffrey A. <jrosenthal@cgsh.com>
**Sent:** Tuesday, December 13, 2022 12:06 AM
**To:** Shore, Laurence <Laurence.Shore@belex.com>; jkerr@stblaw.com
**Cc:** Derek Ho <dho@kellogghansen.com>; William Rowley KC <wrowley@twentyessex.com>; Bensman, Lina <lbensman@cgsh.com>; Swiber, Patrick <pswiber@cgsh.com>; Doris Smith <dsmith@twentyessex.com>; Santin, Letizia <Letizia.Santin@belex.com>; Wright, Katerina <kawright@cgsh.com>; Liz Snodgrass <Liz.Snodgrass@threecrownsllp.com>; LCIA Casework <casework@lcia.org>
**Subject:** RE: LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments LP, and Kenosha Investments LP v Sysco Corporation

Dear Members of the Tribunal,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 157 of 165

As promised, attached is Sysco's brief letter responding procedurally with respect to Burford's request for a TRO, along with cited exhibits.

Respectfully,

Jeffrey Rosenthal

———

**Jeffrey A. Rosenthal**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: mconiglio@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2086 | M: +1 917 696 7377
jrosenthal@cgsh.com | clearygottlieb.com

------------------------------------------------

**From:** Shore, Laurence <Laurence.Shore@belex.com>
**Sent:** Monday, December 12, 2022 11:39 AM
**To:** jkerr@stblaw.com
**Cc:** Rosenthal, Jeffrey A. <jrosenthal@cgsh.com>; Ho, Derek T. <dho@kellogghansen.com>; William Rowley KC <wrowley@twentyessex.com>; Bensman, Lina <lbensman@cgsh.com>; Swiber, Patrick <pswiber@cgsh.com>; Doris Smith <dsmith@twentyessex.com>; Santin, Letizia <Letizia.Santin@belex.com>; Wright, Katerina <kawright@cgsh.com>; Liz Snodgrass <Liz.Snodgrass@threecrownsllp.com>; LCIA Casework <casework@lcia.org>
**Subject:** Re: LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments LP, and Kenosha Investments LP v Sysco Corporation

Same.
LS

Sent from my iPhone

<image001.png>

via Barozzi 1
20122 Milano. Italia

<image002.png>
<image003.png>
<image004.png>
<image005.png>

Milan | Rome | Genoa | Brussels | London | Cairo | Addis Ababa | Dubai

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED
NYSCEF DOC. NO. 8

RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 158 of 165

*Questo messaggio, con gli eventuali allegati, contiene informazioni riservate.*
*This email and any files transmitted with it are confidential.*

On 12 Dec 2022, at 17:29, Kerr, John J. <jkerr@stblaw.com> wrote:

⚠ **EXTERNAL EMAIL**

I acknowledge receipt of Claimants' application and Respondent's email.

JJK

**From:** Rosenthal, Jeffrey A. <jrosenthal@cgsh.com>
**Sent:** Monday, December 12, 2022 11:21 AM
**To:** Ho, Derek T. <dho@kellogghansen.com>; Shore, Laurence
<Laurence.Shore@belex.com>; William Rowley KC
<wrowley@twentyessex.com>; Kerr, John J. <jkerr@stblaw.com>
**Cc:** Bensman, Lina <lbensman@cgsh.com>; Swiber, Patrick
<pswiber@cgsh.com>; Doris Smith <dsmith@twentyessex.com>; Santin,
Letizia <Letizia.Santin@belex.com>; Wright, Katerina
<kawright@cgsh.com>; Liz Snodgrass
<Liz.Snodgrass@threecrownsllp.com>; LCIA Casework
<casework@lcia.org>
**Subject:** RE: LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments
LP, and Kenosha Investments LP v Sysco Corporation

*** External Email ***

Dear Members of the Tribunal,

We have not yet had an opportunity to review Claimants' Third
Application for Interim Measures, which appears simply from opening the
attachment that it is much different than a mere reinstatement of their
Second Application that had been held in abeyance, which itself was
substantially different from Claimants' First Application.

We will obviously not have a substantive response today or anytime soon
to a new Application we have not yet even read, but we will respond very
briefly by letter today to Claimants' request that this Tribunal enter a
Temporary Restraining Order on an ex parte basis without waiting for a
complete response from Respondent.

Respectfully,

Jeffrey Rosenthal

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 159 of 165

---

Jeffrey A. Rosenthal
Cleary Gottlieb Steen & Hamilton LLP
Assistant: mconiglio@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2086 | M: +1 917 696 7377
jrosenthal@cgsh.com | clearygottlieb.com

---

**From:** Ho, Derek T. <dho@kellogghansen.com>
**Sent:** Monday, December 12, 2022 11:01 AM
**To:** Shore, Laurence <Laurence.Shore@belex.com>; William Rowley KC
<wrowley@twentyessex.com>; jkerr@stblaw.com
**Cc:** Bensman, Lina <lbensman@cgsh.com>; Swiber, Patrick
<pswiber@cgsh.com>; Doris Smith <dsmith@twentyessex.com>; Santin,
Letizia <Letizia.Santin@belex.com>; Wright, Katerina
<kawright@cgsh.com>; Rosenthal, Jeffrey A. <jrosenthal@cgsh.com>; Liz
Snodgrass <Liz.Snodgrass@threecrownsllp.com>; LCIA Casework
<casework@lcia.org>
**Subject:** LCIA Arbitration No: 225609 - Glaz LLC, Posen Investments LP,
and Kenosha Investments LP v Sysco Corporation

Dear Members of the Tribunal,

Attached is Claimants' renewed Application for Interim and Conservatory Measures in
relation to the proposed, and now evidently imminent, settlement with ███████ The
relevant exhibits and declarations can be found at the link below.

Together with that application, as you will see, Claimants also request an immediate
temporary injunction ("TRO") to stop Sysco from settling the pending antitrust cases
until such time as the Tribunal can rule on Claimants' revived application for interim
measures.  We submit that there is sufficient urgency – based on the discussion of
this matter at the recent CMC and recent *inter partes* communications – that the
Tribunal should issue the TRO immediately, without waiting for a response from
Sysco, and that there is authority for so doing as discussed in the application.  Should
the Tribunal be so inclined, it could seek separate, rapid briefing on the TRO after it is
issued, or it could leave the TRO in place pending briefing on the interim measures
application.  In any case, a TRO is necessary to protect Claimants from the violation of
their rights that Sysco has indicated is imminent and to preserve the Tribunal's ability
to rule on both this Application for Interim and Conservatory Measures and the claim
for a permanent injunction that is the subject matter of this arbitration.

The Application makes reference to commercially sensitive information at paragraphs
11 and 96 of the brief. █████████████████████████████████████████████████
███████████████████████████████████████████. The parties have
not yet consulted on a confidentiality protocol for this arbitration, but we propose

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

that this information be designated Outside Attorney's Eyes Only (OAEO). To facilitate that, we attach two versions of the Application, one designated OAEO and another with this information redacted that can be provided to Sysco.

Claimants intend to file a further interim measures application concerning Sysco's threatened breaches of its confidentiality obligations under the parties' agreement as soon as possible in the coming days. We proceed with this renewed Application in respect of settlement now and have spent the weekend preparing the request for a TRO following a without prejudice meeting between counsel for Sysco and Burford's Chief Investment Officer on Friday that did not alleviate Claimants' concerns that settlement is imminent.

Claimants can meet whatever briefing schedule the Tribunal wishes to establish for these applications, and we appreciate the Tribunal's immediate attention.

Link for exhibits/declarations: https://kellogghansen.kiteworks.com/w/f-19765815-6c08-489f-a22c-13eb1f7d61b1

Respectfully submitted,

**Derek T. Ho**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC**
1615 M Street, NW | Suite 400 | Washington, DC 20036
Tel: (202) 326-7931 | Fax: (202) 326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

**WARNING:** This email was sent from outside the firm, so do not click on any links or open any attachments unless you recognise the sender's address and are sure it's safe to do so.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Three Crowns (US) LLP is a limited liability partnership registered in the State of Delaware with offices at Washington Harbour, 3000 K Street NW, Suite 101, Washington, DC 20007-5109, United States. The attorneys practising from the Washington DC office are regulated by the District of Columbia Bar. The word "partner" in connection with the Three Crowns trading name denotes a member of Three Crowns (Services) LLP or a general partner of Three Crowns (US) LLP, or a consultant or employee of one of them with equivalent standing and qualifications. Further regulatory information can be found in the Legal and Regulatory Notices which appear on the Three Crowns website. This email (and any attachments) is confidential and may also be legally privileged. If you are not the intended recipient, please immediately notify the sender, then delete it from your system. You should not copy it or use it for any purpose.

**WARNING:** This email was sent from outside the firm, so do not click on any links or open any attachments unless you recognise the sender's address and are sure it's safe to do so.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See Below.) INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 03/10/2023

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 162 of 165

Print Form

**SUPREME COURT OF THE STATE OF NEW YORK**

UCS-840C
J/2011

**COUNTY OF** New York _____ x

GLAZ LLC, POSEN INVESTMENTS LP, and KENSOSHA INVESTMENTS

_____ Plaintiff(s)/Petitioner(s)

-against-

SYSCO CORPORATION, Respondent.

_____ Defendant(s)/Respondent(s)
                                                        x

Index No. _____

RJI No. (If any) _____

**COMMERCIAL DIVISION**
**Request for Judicial Intervention Addendum**

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☐ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☒ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

$ _____

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

_____

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

_____

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) AND (c).**

Dated: 03/10/2023 _____

_____
SIGNATURE

Thomas E.L. Dewey
_____
PRINT OR TYPE NAME

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

1 of 1

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 163 of 165   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 9                                                          RECEIVED NYSCEF: 03/10/2023

## REQUEST FOR JUDICIAL INTERVENTION

**SUPREME** COURT, COUNTY OF **NEW YORK**

UCS-840
(rev 11/24/2022)

Index No: _____     Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| **CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet. | IAS Entry Date |
| GLAZ LLC, POSEN INVESTMENTS LP, and KENSOSHA INVESTMENTS LP, Petitioners, | |
| Plaintiff(s)/Petitioner(s) | Judge Assigned |
| -against- | |
| SYSCO CORPORATION, Respondent. | RJI Filed Date |
| Defendant(s)/Respondent(s) | |

**NATURE OF ACTION OR PROCEEDING**   Check only one box and specify where indicated.

| COMMERCIAL | MATRIMONIAL |
|---|---|
| O Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.) | O Contested |
| O Contract | *NOTE: If there are children under the age of 18, complete and attach the* |
| O Insurance (where insurance company is a party, except arbitration) | *MATRIMONIAL RJI ADDENDUM (UCS-840M).* |
| O UCC (includes sales and negotiable instruments) | *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).* |
| O Other Commercial (specify): _____ | **REAL PROPERTY**   Specify how many properties the application includes: _____ |
| *NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d),* | O Condemnation |
| *complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).* | O Mortgage Foreclosure (specify):   O Residential   O Commercial |
| **TORTS** | Property Address: _____ |
| O Adult Survivors Act | *NOTE: For Mortgage Foreclosure actions involving a one to four-family,* |
| O Asbestos | *owner-occupied residential property or owner-occupied condominium,* |
| O Environmental (specify): _____ | *complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).* |
| O Medical, Dental or Podiatric Malpractice | O Partition |
| O Motor Vehicle | *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).* |
| O Products Liability (specify): _____ | O Tax Certiorari (specify):   Section:_____ Block:_____ Lot:_____ |
| O Other Negligence (specify): _____ | O Tax Foreclosure |
| O Other Professional Malpractice (specify): _____ | O Other Real Property (specify): _____ |
| O Other Tort (specify): _____ | **OTHER MATTERS** |
| **SPECIAL PROCEEDINGS** | O Certificate of Incorporation/Dissolution [see *NOTE* in COMMERCIAL section] |
| O Child-Parent Security Act (specify): O Assisted Reproduction O Surrogacy Agreement | O Emergency Medical Treatment |
| ⦿ CPLR Article 75 – Arbitration   [see *NOTE* in COMMERCIAL section] | O Habeas Corpus |
| O CPLR Article 78 – Proceeding against a Body or Officer | O Local Court Appeal |
| O Election Law | O Mechanic's Lien |
| O Extreme Risk Protection Order | O Name Change/Sex Designation Change |
| O MHL Article 9.60 – Kendra's Law | O Pistol Permit Revocation Hearing |
| O MHL Article 10 – Sex Offender Confinement (specify): O Initial O Review | O Sale or Finance of Religious/Not-for-Profit Property |
| O MHL Article 81 (Guardianship) | O Other (specify): _____ |
| O Other Mental Hygiene (specify): _____ | |
| O Other Special Proceeding (specify): _____ | |

**STATUS OF ACTION OR PROCEEDING**   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | O | O | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | O | O | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | O | O | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**   Check one box only and enter additional information where indicated.

| | |
|---|---|
| O Infant's Compromise | |
| O Extreme Risk Protection Order Application | |
| O Note of Issue/Certificate of Readiness | |
| O Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____ | |
| O Notice of Motion   Relief Requested: _____ | Return Date: _____ |
| O Notice of Petition   Relief Requested:   Confirm/Disapprove Award/Report | Return Date: 03/27/2023 |
| O Order to Show Cause   Relief Requested: _____ | Return Date: _____ |
| O Other Ex Parte Application   Relief Requested: _____ | |
| O Partition Settlement Conference | |
| O Poor Person Application | |
| O Request for Preliminary Conference | |
| O Residential Mortgage Foreclosure Settlement Conference | |
| O Writ of Habeas Corpus | |
| O Other (specify): _____ | |

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 164 of 165   INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 9

RECEIVED NYSCEF: 03/10/2023

**RELATED CASES** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Un-Rep | Parties List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined For each defendant, indicate if issue has been joined. | Insurance Carriers For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Glaz LLC  Role(s): Petitioner | Thomas E.L. Dewey, Dewey, Pegno & Kramarsky LLP, 777 Third Avenue, 29th Floor, New York, NY 10017 (212) 943-9000 tdewey@dpklaw.com  Derek T. Ho, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M Street, N.W. Suite 400, Washington, DC 20036, (202) 326-7900 dho@kellogghansen.com | ○ YES  ○ NO |  |
| ☐ | Name: Posen Investments LP  Role(s): Petitioner | Thomas E.L. Dewey, Dewey, Pegno & Kramarsky LLP, 777 Third Avenue, 29th Floor, New York, NY 10017 (212) 943-9000 tdewey@dpklaw.com  Derek T. Ho, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M Street, N.W. Suite 400, Washington, DC 20036, (202) 326-7900 dho@kellogghansen.com | ○ YES  ○ NO |  |
| ☐ | Name: Kenosha Investments LP  Role(s): Petitioner | Thomas E.L. Dewey, Dewey, Pegno & Kramarsky LLP, 777 Third Avenue, 29th Floor, New York, NY 10017 (212) 943-9000 tdewey@dpklaw.com  Derek T. Ho, Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M Street, N.W. Suite 400, Washington, DC 20036, (202) 326-7900 dho@kellogghansen.com | ○ YES  ○ NO |  |
| ☐ | Name: Sysco Corporation  Role(s): Respondent | Jeffrey A. Rosenthal, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, (212) 225-2000 jrosenthal@cgsh.com  Lina Bensman, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 (212) 225-2000 lbensman@cgsh.com  Christopher P. Moore, Cleary Gottlieb Steen & Hamilton LLP, 2 London Wall Place, London EC2Y 5AU 4420-7614-2200 cmoore@cgsh.com | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |
| ☐ | Name:  Role(s): | | ○ YES  ○ NO |  |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.

Dated: __03/10/2023__

Signature

2514602
Attorney Registration Number

Thomas E.L. Dewey
Print Name

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

2 of 3

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See Below.)

NYSCEF DOC. NO. 9

Case 1:23-cv-02489-PGG   Document 1-3   Filed 03/23/23   Page 165 of 165

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/10/2023

## Request for Judicial Intervention Addendum

UCS-840A (7/2012)

Print Form

**Supreme** COURT, COUNTY OF **New York**    Index No: _____

For use when additional space is needed to provide party or related case information.

**PARTIES:**    For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in "Attorneys" space.

| Un-Rep | Parties:<br>List parties in caption order and indicate party role(s) (e.g. defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants:<br>Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| ☐ | Glaz LLC <br>*Last Name* <br>*First Name* <br>*Primary Role:* Petitioner <br>*Secondary Role (if any):* | Snodgrass *Last Name*    Elizabeth *First Name* <br>Three Crowns LLP *Firm Name* <br>3000 K Street, N.W., Suite 101 *Street Address*    Washington *City*    District of Colu *State*    20007 *Zip* <br>+1 (202) 540-9492 *Phone*    *Fax*    liz.snodgrass@threecrownsllp.com *e-mail* | ○YES<br>◉NO | |
| ☐ | Posen Investments LP <br>*Last Name* <br>*First Name* <br>*Primary Role:* Petitioner <br>*Secondary Role (if any):* | Snodgrass *Last Name*    Elizabeth *First Name* <br>Three Crowns LLP *Firm Name* <br>3000 K Street, N.W., Suite 101 *Street Address*    Washington *City*    *State*    20007 *Zip* <br>+1 (202) 540-9492 *Phone*    *Fax*    liz.snodgrass@threecrownsllp.com *e-mail* | ○YES<br>◉NO | |
| ☐ | Kenosha Investments LP <br>*Last Name* <br>*First Name* <br>*Primary Role:* Petitioner <br>*Secondary Role (if any):* | Snodgrass *Last Name*    Elizabeth *First Name* <br>Three Crowns LLP *Firm Name* <br>3000 K Street, N.W., Suite 101 *Street Address*    Washington *City*    *State*    20007 *Zip* <br>+1 (202) 540-9492 *Phone*    *Fax*    liz.snodgrass@threecrownsllp.com *e-mail* | ○YES<br>◉NO | |
| ☐ | *Last Name* <br>*First Name* <br>*Primary Role:* <br>*Secondary Role (if any):* | *Last Name*    *First Name* <br>*Firm Name* <br>*Street Address*    *City*    *State*    *Zip* <br>*Phone*    *Fax*    *e-mail* | ○YES<br>○NO | |
| ☐ | *Last Name* <br>*First Name* <br>*Primary Role:* <br>*Secondary Role (if any):* | *Last Name*    *First Name* <br>*Firm Name* <br>*Street Address*    *City*    *State*    *Zip* <br>*Phone*    *Fax*    *e-mail* | ○YES<br>○NO | |
| ☐ | *Last Name* <br>*First Name* <br>*Primary Role:* <br>*Secondary Role (if any):* | *Last Name*    *First Name* <br>*Firm Name* <br>*Street Address*    *City*    *State*    *Zip* <br>*Phone*    *Fax*    *e-mail* | ○YES<br>○NO | |

**RELATED CASES:**    List any related actions. For Matrimonial actions, include any related criminal and/or Family Court cases.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.